**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**IN SEATTLE**

| | |
|---|---|
| WESTRIDGE TOWNHOMES OWNERS ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>GREAT AMERICAN ASSURANCE COMPANY, a foreign insurance company, as successor to AGRICULTURAL INSURANCE COMPANY; GREENWICH INSURANCE COMPANY, a foreign insurance company,<br><br>Defendants. | No.<br><br>COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES<br><br>**JURY DEMANDED** |

Plaintiff Westridge Townhomes Owners Association (the "Association") alleges as follows:

## I. PARTIES

1. The Association is a non-profit corporation organized under the laws of Washington. The members of the Association are owners of units that comprise Westridge Townhomes Condominium, located in Kent, Washington.

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

2. On information and belief, Defendant Great American Assurance Company ("Great American") is a corporation organized under the laws of the State of New York, with its principal place of business in Ohio. On information and belief, Agricultural Insurance Company ("Agricultural"), which issued some of the insurance policies at issue in this case, is now known as Great American Assurance Company.

3. On information and belief, Defendant Greenwich Insurance Company ("Greenwich") is a corporation organized under the laws of Delaware, with its principal place of business in Connecticut.

## II. JURISDICTION & VENUE

4. Subject matter jurisdiction is proper under 28 U.S.C. § 1332(a)(1) because Defendants are citizens of different states than Plaintiff, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred here, and under §§ 1391(b)(1), (c)(2), and (d), because Defendants are subject to the Court's personal jurisdiction with respect to this action.

## III. THE INSURANCE POLICIES

6. Agricultural issued a series of property insurance policies to the Association under policy numbers CPP3991966; CPP3995131; and CPP5628683.

7. The Agricultural policy number CPP3991966 is attached as **EXHIBIT A**.

8. Greenwich issued two property insurance policies to the Association under policy numbers ACG3395131 and ACG3328683.

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

9. The Greenwich policy number ACG3395131 is part of the same document that was "effected" by Agricultural under policy number CPP3995131, though the document says it "shall be construed as a separate contract between the insured and each of the insurers." The document identified both by Greenwich policy number ACG3395131 and by Agricultural policy number CPP3995131 is attached as **EXHIBIT B**.

10. The Greenwich policy number ACG3328683 is part of the same document that was "effected" by Agricultural under policy number CPP5628683, though the document says it "shall be construed as a separate contract between the insured and each of the insurers." The document identified both by Greenwich policy number ACG3328683 and by Agricultural policy number CPP5628683 is attached as **EXHIBIT C**.

11. **EXHIBITS A, B,** and **C** ("the Policies") each insure Westridge Townhomes Condominium ("the Condominium") against "all risks of direct physical loss or damage from any external cause except as hereinafter excluded."

## IV. FACTUAL BACKGROUND

12. The Association recently discovered damage at the Condominium that it believed was covered by the Policies, and therefore submitted insurance claims to Great American and Greenwich on April 28, 2016. Copies of the Association's April 28, 2016 notices are attached as **EXHIBITS D** and **E**.

13. Great American and Greenwich received the notices on, respectively, May 2, 2016 and May 4, 2016. Proof of receipt of the notices is attached as **EXHIBITS F** and **G**.

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

14. Great American did not acknowledge the Association's claim within ten working days or commence an investigation into the Association's claim within 30 days of receiving the Association's April 28, 2016 notice.

15. Greenwich did not acknowledge the Association's claim within ten working days or commence an investigation into the Association's claim within 30 days of receiving the Association's April 28, 2016 notice.

16. With its initial claim letters, the Association sent a "Tolling Agreement"—an agreement that any applicable statutory or contractual limitation periods would be tolled while the respective insurers investigated the Association's claims.

17. Although the Association requested that Great American execute the Tolling Agreement, Great American refused.

18. The Condominium is suffering from direct physical loss or damage from external causes that are not excluded by the Policies.

19. Neither Greenwich nor Great American has acknowledged that any damage at the Condominium is covered by any of the Policies.

## V. CAUSES OF ACTION

21. The allegations of the preceding paragraphs are incorporated herein by reference.

22. An actual controversy exists between the Association and Defendants concerning the rights and obligations of the parties under the Policies. The Association is entitled to a declaration regarding these rights and obligations, including declarations that (a) the Policies cover damage at the Condominium; and (b) Great American is liable for the

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

obligations of Agricultural under the Policies.

23. Great American and Greenwich owe contractual duties to the Association under the Policies.

24. Great American and Greenwich have breached those duties, proximately causing damage to the Association in an amount to be proven at trial.

25. Under WAC 284-30-360, Great American and Greenwich had an obligation to acknowledge receipt of notice of the Association's claim within ten working days.

26. Under WAC 284-30-370, Great American and Greenwich had an obligation to commence an investigation into the Association's claims within 30 days.

27. Under WAC 284-30-330(2), Great American and Greenwich had an obligation to "acknowledge and act reasonably promptly upon communications with respect to" the Association's claims.

28. Under WAC 284-30-330(3), Great American and Greenwich had an obligation to "adopt and implement reasonable standards for the prompt investigation" of the Association's claims.

29. Great American's and Greenwich's failure to timely acknowledge or act upon the Association's claim or to commence an investigation within 30 days constitute violations of WAC 284-30-330(2), 330(3), 360 and 370, which in turn constitute a breach of the Washington Consumer Protection Act, RCW 19.86.020.

## VI. RELIEF REQUESTED

1. A declaration as to the rights and obligations of the parties;

2. An award of money damages in an amount to be proven at trial;

HARPER | HAYES PLLC
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

3. An award of pre- and post-judgment interest as allowed by law;

4. An award of attorney's fees and other costs and expenses of litigation pursuant to applicable statute, regulation, common law, or recognized ground in equity;

5. An award of punitive damages as allowed by applicable law; and

6. Such other and further relief as this Court deems just and proper.

## VII. JURY DEMAND

The Association demands a trial by jury pursuant to Fed. R. Civ. P. 38.

DATED this 29th day of June 2016.

HARPER | HAYES PLLC

By: s/*Todd C. Hayes*
Todd C. Hayes, WSBA No. 26361
Charles K. Davis, WSBA No. 38231
600 University Street, Suite 2420
Seattle, WA 98101
**Tel**. 206.340.8010
**Fax**. 206.260.2852
**Email**: todd@harperhayes.com
cdavis@harperhayes.com
Attorneys for Plaintiff

# Exhibit A



**AMERICAN CUSTOM INSURANCE SERVICES, INC.**
801 SOUTH FIGUEROA STREET, SUITE 700
LOS ANGELES, CA 90017
Telephone (213) 430-4300 • Fax (213) 683-8004
License No. 0B09730

**INSURED'S NAME AND MAILING ADDRESS:**

WEST RIDGE TOWNHOMES ASSOCIATION
1218 3RD AVENUE, SUITE 2300
SEATTLE, WASHINGTON 98101 REFER END. 9

PolicyNumber (s): CPP3991966 & FCP2291966

**PRODUCER NAME AND ADDRESS:**

SWETT & CRAWFORD
2121 6TH AVENUE #2500
SEATTLE, WASHINGTON 98121

PRODUCER CODE: 392787

| AUGUST 4, 1998 | AUGUST 4, 1999 | ONE | 12:01 A.M. |
|---|---|---|---|
| Inception (Month, Day, Year) | Expiration (Month, Day, Year) | Years | Standard Time at the address of the Insured |

| Amount of Insurance | Prepaid Term Premium Due at Inception |
|---|---|
| $6,525,000. | |

TOTAL AMOUNT DUE $ 8,375.00

| Amount | Description, Perils and Locations of Insured |
|---|---|
| $6,525,000. LOSS LIMIT PER OCCURRENCE AND ANNUAL AGGREGATE AS RESPECTS THE PERILS OF EARTHQUAKE AND FLOOD | DIFFERENCE IN CONDITIONS OF DIRECT PHYSICAL LOSS OR DAMAGE INCLUDING EARTHQUAKE AND FLOOD COVERING BUILDINGS, CONTENTS, BUILDING ORDINANCE AND BUSINESS INTERRUPTION/EXTRA EXPENSE AS PER FORM ATTACHED. |

**PRIMARY DEDUCTIBLE(S) OR UNDERLYING LIMITS:** AS PER ENDORSEMENT NO. 4

**WORDING OR FORMS ATTACHED:** DIC-1 (2/95); ACIS257 (12/97); ENDORSEMENT NO. 1 THRU 8; CP 04 05 11 85; CP 00 30 10 91

DATE OF ISSUE: 8/12/98

BY: Larry E. Keeler
Authorized Signature

IN CONSIDERATION OF THE PROVISIONS AND STIPULATIONS HEREIN OR ADDED HERETO AND OF the premium above specified, the Company(ies) identified on Schedule of Insurance, for the term of years specified above from inception date shown above at 12:01 A.M. (Standard Time) to expiration date shown above at 12:01 A.M. (Standard Time) at location of property involved, to an amount not exceeding the amount(s) above specified, does insure the INSURED named above and legal representatives, for any amounts which the INSURED may be entitled to recover under the circumstances defined herein or added hereto.

Assignment of this policy shall not be valid except with the written consent of the Company(ies) identified on Schedule of Insurance.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

SUB-A (01 98)

COMPANY COPY

# SCHEDULE OF INSURANCE

THIS INSURANCE IS EFFECTED WITH CERTAIN INSURANCE COMPANIES (HEREINAFTER CALLED THE "INSURERS").

THE LIABILITY OF EACH INSURER ON THIS CONTRACT WITH THE INSURED IS LIMITED TO THE PARTICIPATION AMOUNT SHOWN IN THE SCHEDULE BELOW. THE LIABILITY OF EACH INSURER FOR ANY LOSS OR LOSSES OR AMOUNTS PAYABLE IS SEVERAL AS TO EACH AND SHALL NOT EXCEED ITS PARTICIPATION PERCENTAGE SHOWN BELOW AND THERE IS NO JOINT LIABILITY OF ANY INSURER PURSUANT TO THIS CONTRACT. AN INSURER SHALL NOT HAVE ITS LIABILITY HEREUNDER INCREASED OR DECREASED BY REASON OF FAILURE OR DELAY OF ANOTHER INSURER, ITS SUCCESSORS, ASSIGNS, OR LEGAL REPRESENTATIVES.

THIS CONTRACT SHALL BE CONSTRUED AS A SEPARATE CONTRACT BETWEEN THE INSURED AND EACH OF THE INSURERS.

IN WITNESS WHEREOF, THE FOLLOWING COMPANY(IES) AND/OR UNDERWRITERS EXECUTE AND ATTEST THESE PRESENTS, AND SUBSCRIBE FOR THE AMOUNTS OF THE INSURANCE PROVIDED HEREUNDER AS SHOWN:

**INSURED'S NAME: WEST RIDGE TOWNHOMES ASSOCIATION**

| INSURERS AND ASSIGNED POLICY NUMBERS | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|
| AGRICULTURAL INSURANCE COMPANY<br>POL # CPP 3991966 | $ 3,915,000. | $ 5,025. |
| FRONTIER INSURANCE COMPANY<br>POL # FCP 2291966 | $ 2,610,000. | $ 3,350. |
| **TOTALS:** | **$ 6,525,000.** | **$ 8,375.** |

**THIS SCHEDULE FORMS A PART OF THE ORIGINAL FORM #SUB-A.**

COUNTERSIGNATURE DATE: 8/12/98 COUNTERSIGNED AT: LYNNWOOD, WASHINGTON

## CONDITIONS

1. **MISREPRESENTATION AND FRAUD:** This policy shall be void if the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the Insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

2. VALUATION: UNLESS OTHERWISE PROVIDED IN FORM ATTACHED, THIS COMPANY SHALL NOT BE LIABLE BEYOND THE ACTUAL CASH VALUE OF THE PROPERTY AT THE TIME ANY LOSS OR DAMAGE OCCURS AND THE LOSS OR DAMAGE SHALL BE ASCERTAINED OR ESTIMATED ACCORDING TO SUCH ACTUAL CASH VALUE WITH PROPER DEDUCTION FOR DEPRECIATION, HOWEVER CAUSED, AND SHALL IN NO EVENT EXCEED WHAT IT WOULD THEN COST TO REPAIR OR REPLACE THE SAME WITH MATERIAL OF LIKE KIND AND QUALITY.

3. **PAIR AND SET: IT IS UNDERSTOOD AND AGREED THAT, IN THE EVENT OF LOSS OR DAMAGE TO ANY ARTICLE OR ARTICLES WHICH ARE A PART OF A SET, THE MEASURE OF LOSS OR DAMAGE TO SUCH ARTICLE OR ARTICLES SHALL BE A REASONABLE AND FAIR PROPORTION OF THE TOTAL VALUE OF THE SET, GIVING CONSIDERATION TO THE IMPORTANCE OF SAID ARTICLE OR ARTICLES, BUT IN NO EVENT SHALL LOSS OR DAMAGE BE CONSTRUED TO MEAN TOTAL LOSS OF SET.**

4. **PARTS:** In case of loss or injury to any part of the insured property consisting, when complete for sale or use, of several parts, this Company shall only be liable for the insured value of the part lost or damaged.

5. **SUE AND LABOR:** In case of loss or damage, it shall be lawful and necessary for the Insured, his or their factors, servants and assigns, to sue, labor, and travel for, in and about the defense, safeguard and recovery of the property insured hereunder, or any part thereof without prejudice to this insurance, nor shall the acts of the Insured or this Company, in recovering, saving and preserving the property insured in case of loss or damage, be considered a waiver or an acceptance of abandonment; to the charge whereof this Company will contribute according to the rate and quantity of the sum herein insured.

6. **NOTICE OF LOSS:** The Insured shall as soon as practicable report to this Company or its agent every loss or damage which may become a claim under this policy and shall also file with the Company or its agent within ninety (90) days from the date of loss a detailed sworn proof of loss. Failure by the Insured to report the said loss or damage and to file such sworn proof of loss as hereinbefore provided shall invalidate any claim under this policy for such loss.

7. **DOUBLE RECOVERY:** No loss shall be paid hereunder if the Insured has collected the same from others.

8. **LABELS:** In case of loss affecting labels, capsules or wrappers, the loss shall be adjusted on the basis of an amount sufficient to pay the cost of new labels, capsules or wrappers, and reconditioning the goods.

9. **OTHER INSURANCE:** It is expressly agreed that this insurance shall not cover to the extent of any other valid and collectible insurance whether prior or subsequent hereto in date, and by whomsoever effected, directly or indirectly covering the same property, and this Company shall be liable for loss or damage only for the excess value beyond the amount of such other insurance.

10. **PAYMENT OF LOSS:** All adjusted claims shall be paid or made good to the Insured within sixty (60) days after presentation and acceptance of satisfactory proof of interest and loss at the office of this Company.

11. **REINSTATEMENT:** Unless this policy is issued on a reporting or readjustment basis, it is understood that the amount of insurance hereunder shall be reduced by the amount of any loss covered by this policy, but the Company and the Insured shall be deemed to have agreed that the full amount insured be reinstated automatically in the event of loss and that a pro rata additional premium is payable from the date of the loss.

12. **IMPAIRMENT OF CARRIER'S LIABILITY:** Any act or agreement by the Insured prior or subsequent hereto, whereby any right of the Insured to recover, the full value of, or amount of damage to, any property lost or damaged and insured hereunder, against any carrier, bailee or other party liable therefor, is released, impaired or lost, shall render this policy null and void, but this Company's right to retain or recover the premium shall not be affected. It is agreed, however, that the Insured may, without prejudice to this insurance, accept the ordinary bills of lading issued by carriers. This Company is not liable for any loss or damage which, without its consent, has been settled or compromised by the Insured.

13. **EXAMINATION UNDER OATH:** The Insured shall submit, and so far as is within his or their power shall cause all other persons interested in the property and members of the household and employees to submit, to examinations under oath by any persons named by the Company, relative to any and all matters in connection with a claim and subscribe the same, and shall produce for examination all books of account, bills, invoices, and other vouchers or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Company or its representatives and shall permit extracts and copies thereof to be made.

14. **APPRAISAL:** If the Insured and the Company fail to agree as to the amount of loss, each shall, on the written demand of either, made within sixty (60) days after receipt of proof of loss by the Company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for fifteen (15) days to agree upon such umpire, then, on the request of the Insured or the Company, such umpire shall be selected by a judge of a court of record in the state in which such appraisal is pending. The appraisers shall then appraise the loss, stating separately the actual cash value at the time of loss and the amount of loss, and failing to agree shall submit their differences to the umpire an award in writing of any two shall determine the amount of loss the Insured and the Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire the Company shall not be held to have waived any of its rights by any act relating to appraisal.

15. **BENEFIT OF INSURANCE:** This insurance shall not inure directly or indirectly to the benefit of any carrier or other bailee.

16. **SUBROGATION:** In the event of any payment under this policy the Company shall be surrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

17. **SUIT AGAINST COMPANY:** No suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the Insured of the occurrence which gives rise to the claim. Provided, however, that if by the laws of the State within which this policy is issued such limitation is invalid, then any such claims shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such State to be fixed herein.

18. **CANCELLATION:** This policy may be cancelled by the Insured by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Insured at the address shown in this policy or last known address written notice stating when not less than ten (10) days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date of cancellation stated in the notice either by the Insured or by the Company shall be equivalent to mailing. If the Insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premiums shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The Company's check or the check of its representative mailed or delivered as aforesaid shall be sufficient tender of any refund or premium due to the Insured.

Should this policy be on a reporting basis, the Insured agrees to furnish this Company with an accurate statement showing the total value covered hereunder by this policy between the date of its attachment up to and including the date of cancellation and further agrees to pay premium on this amount at the rate stated in the premium adjustment clause, if the premium thus determined exceeds the initial premium paid, the amount of such excess shall immediately become due and payable to this Company, or any unearned premium (being the amount by which the initial premium exceeds the premium due), shall be returned to the Insured.

**19. THIS COMPANY SHALL NOT BE LIABLE UNDER THIS POLICY FOR LOSS CAUSED BY OR RESULTING FROM:**
1. Fire and Lightning caused directly or indirectly, by:
   (a) Enemy attack by armed forces, including action taken by military, naval or air forces in resisting an actual or an immediately impending enemy attack, (b) invasion, (c) insurrection, (d) rebellion, (e) revolution, (f) civil war, (g) usurped power, (h) order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, providing that such fire did not originate from any of the perils excluded by this policy.
2. Any Peril other than Fire and Lightning caused, directly or indirectly, by:
   (a) Hostile or warlike action in the time of peace or war, including action in hindering, combating, or defending against an actual, impending, or expected attack by (a) any government or sovereign power (de jure or de facto,) or by any authority maintaining or using military, naval, or air forces, (2) military, naval, or air forces, or (3) an agent of any such government, power, authority, or forces, it being understood that any discharge, explosion, or use of any weapon of war employing nuclear fission or fusion shall be conclusively presumed to be such a hostile or warlike action by such a government, power, authority, or forces.
   (b) Insurrection rebellion, revolution, civil war, usurp power, or action taken by governmental authority in hindering, combating, or defending against such an occurrence.
3. Nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximately or remote, or be in whole or in part caused by, contributed to or aggravated by any of the perils insured against; however, subject to the foregoing and all provisions of this policy, direct loss by fire resulting from nuclear reaction, or nuclear radiation or radioactive contamination is insured against by this policy if the peril of fire is provided in the insuring conditions of the term(s) attached to this policy.

**20. TIME OF ATTACHMENT:** If coverages in this Policy replace coverages in other policies which terminate at noon on the inception date of this policy, this policy shall be construed to attach at noon (Standard Time) on its inception date as respects such replaced coverages only, instead of 12:01 A.M. (Standard Time).

**21. CONFLICT WITH THE STATUES:** Terms of this policy which are in conflict with the statues of the State wherein this policy is issued, are hereby amended to conform to such statutes.

**IN WITNESS WHEREOF,** the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Michael P. Fujii
President

Kenneth Wm. Woods
Chairman and Chief Executive Office

## DIFFERENCE IN CONDITIONS

1. **INSURING AGREEMENT --** THIS POLICY INSURES AGAINST ALL RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE FROM ANY EXTERNAL CAUSE EXCEPT AS HEREINAFTER EXCLUDED, WHILE ANYWHERE WITHIN THE FIFTY STATES OF THE UNITED STATES OF AMERICA AND THE DISTRICT OF COLUMBIA AS MORE FULLY SET FORTH IN PARAGRAPH NUMBER 4 BELOW.

2. **PROPERTY OR INTEREST COVERED --** THIS POLICY COVERS PROPERTY DESCRIBED IN ITEMS A, B, C, D AND E BELOW BUT NO COVERAGE ATTACHES UNDER ANY ITEMS UNLESS AN "X" IS INSERTED IN THE BOX PRECEDING THAT ITEM:

   **(X) ITEM A -** ON BUILDING(S) AND/OR STRUCTURE(S) IN ALL PARTS, INCLUDING ADDITIONS AND/OR EXTENSIONS IN CONTACT THEREWITH (REGARDLESS OF CONSTRUCTION) AND ON ALL PROPERTY BELONGING TO AND/OR CONSTITUTING A PERMANENT PART OF SAID BUILDINGS AND/OR STRUCTURES AND PERTAINING TO THE SERVICE, UPKEEP, MAINTENANCE AND OPERATION THEREOF; ALL WHICH NOW IS OR MAY HEREAFTER DURING THE TERM OF THIS POLICY BECOME AT THE RISK OF THE INSURED.

   **( X) ITEM B -** ON STOCK, MATERIALS AND SUPPLIES OF EVERY DESCRIPTION USUAL OR INCIDENTAL TO THE OPERATIONS OF THE INSURED INCLUDING THE INSURED'S INTEREST IN MATERIALS, LABOR AND CHARGES FURNISHED, PERFORMED ON, OR INCURRED IN CONNECTION WITH PROPERTY OF OTHERS.

   **( X) ITEM C -** ON FURNITURE, FIXTURES, EQUIPMENT AND MACHINERY BEING PROPERTY OF THE INSURED, OR SIMILAR PROPERTIES OF OTHERS IN THE CARE, CUSTODY OR CONTROL OF THE INSURED AND FOR WHICH THE INSURED IS LIABLE IN THE EVENT OF LOSS.

   **( ) ITEM D -** ON THE INSURED'S INTEREST IN TENANTS' IMPROVEMENTS AND BETTERMENTS TO BUILDINGS, BEING FIXTURES, ALTERATIONS, INSTALLATIONS OR ADDITIONS COMPRISING PART OF A BUILDING(S) OCCUPIED BUT NOT OWNED BY THE INSURED AND MADE AT THE EXPENSE OF THE INSURED.

   **( X) ITEM E -** BUSINESS INTERRUPTION, EXTRA EXPENSE, RENTAL VALUE OR OTHER TIME ELEMENT COVERAGES AS MORE SPECIFICALLY COVERED AND DEFINED IN THE ATTACHED FORM(S) NUMBER(S): CP 00 30 10 91

3. **LIMIT OF LIABILITY:**

   (A) THE LIMIT OF LIABILITY OF THIS COMPANY IN RESPECT TO EACH AND EVERY LOSS OCCURRENCE SHALL NOT EXCEED:

   $6,525,000. LOSS LIMIT PER SCHEDULE OF INSURANCE FORM#SUB-B

   (B) AS RESPECTS LOSS OR DAMAGE CAUSED BY OR RESULTING FROM EARTHQUAKE, THE LIMIT OF LIABILITY DURING ANY ONE POLICY YEAR SHALL NOT EXCEED:

   $6,525,000. LOSS LIMIT PER SCHEDULE OF INSURANCE FORM#SUB-B

   ***EARTHQUAKE DEFINED:*** FOR THE PURPOSES OF THIS INSURANCE, ***"EARTHQUAKE"*** IS DEFINED AS LOSS CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED BY ANY OF THE FOLLOWING:

   EARTH MOVEMENT, MEANING NATURAL FAULTING OF LAND MASSES, NOT INCLUDING SUBSIDENCE, LANDSLIDE, ROCK SLIDE, MUD FLOW, EARTH RISING, EARTH SINKING, EARTH SHIFTING OR SETTLING; UNLESS, AS A DIRECT RESULT OF SUCH EARTH MOVEMENT.

(C) AS RESPECTS LOSS OR DAMAGE CAUSED BY OR RESULTING FROM FLOOD, THE LIMIT OF LIABILITY DURING ANY ONE POLICY YEAR SHALL NOT EXCEED:

<u>$6,525,000. LOSS LIMIT PER SCHEDULE OF INSURANCE FORM#SUB-B</u>

***<u>FLOOD DEFINED:</u>*** FOR THE PURPOSES OF THIS INSURANCE, ***<u>"FLOOD"</u>*** IS DEFINED AS A GENERAL AND TEMPORARY CONDITION OF PARTIAL OR COMPLETE INUNDATION OF NORMALLY DRY LAND AREA FROM:

(A) THE OVERFLOW OF INLAND OR TIDAL WATERS, INCLUDING TIDAL WAVE OR WASH,

(B) THE UNUSUAL AND RAPID ACCUMULATION OF RUNOFF OF SURFACE WATERS FROM ANY SOURCE,

(C) SPRAY FROM ANY OF THE FOREGOING; ALL WHETHER DRIVEN BY WIND OR NOT.

FLOOD SHALL ALSO MEAN MUDSLIDE OR MUD FLOW, WHICH IS A RIVER OR FLOW OF LIQUID MUD CAUSED BY FLOODING AS DEFINED ABOVE.

4. **SCHEDULE OF LOCATIONS COVERED:** THIS POLICY COVERS INSURED PROPERTY ONLY AT SUCH LOCATIONS AS ARE EITHER: 1) SPECIFICALLY LISTED IN PARAGRAPH (A) BELOW OR, 2) ARE INCLUDED WITHIN PARAGRAPH (B) BELOW BUT ONLY FOR THE LIMIT OF LIABILITY SET OUT BELOW SUBJECT TO THE LIMITS OF LIABILITY SET OUT IN PARAGRAPH NUMBER 3 ABOVE:

(A) PROPERTY OF INTERESTS AT THE LOCATION(S) SPECIFICALLY IDENTIFIED BELOW:

24601 - 24848 45TH PLACE S.
KENT, WASHINGTON 98032

(B) N/A . ON PROPERTY AT ANY OTHER LOCATIONS IF REPORTED WITHIN 60 DAYS.

5. **PROPERTY EXCLUDED:**

(A) ACCOUNTS, BILLS, DEEDS, EVIDENCES OF DEBT, CURRENCY, MONEY, NOTES, SECURITIES, STAMPS, ORIGINAL DRAWINGS AND SPECIFICATIONS, LETTERS OF CREDIT, PASSPORTS, TICKETS OR VALUABLE PAPERS;

(B) ANIMALS, STANDING TIMBER, GROWING PLANTS OR SHRUBS (EXCEPT WHEN HELD FOR SALE OR WHEN USED FOR DECORATIVE PURPOSES INSIDE BUILDINGS), GROWING CROPS, MOTOR VEHICLES LICENSED OR DESIGNED PRINCIPALLY FOR HIGHWAY USE, WATERCRAFT, AIRCRAFT, MOTORCYCLES, MOTOR SCOOTERS AND OTHER SIMILAR VEHICLES LICENSED OR DESIGNED PRINCIPALLY FOR HIGHWAY USE;

(C) PROPERTY SOLD BY THE INSURED UNDER CONDITIONAL SALES, TRUST AGREEMENTS, INSTALLMENT PAYMENTS OR OTHER DEFERRED PAYMENT PLANS AFTER DELIVERY TO CUSTOMERS;

(D) PROPERTY IN TRANSIT;

(E) STEAM BOILERS, STEAM PIPES, STEAM TURBINES, OR STEAM ENGINES OWNED OR OPERATED BY THE INSURED AGAINST LOSS BY BURSTING, RUPTURE OR EXPLOSION OF SUCH OBJECTS;

(F) MACHINES OR MACHINERY AGAINST LOSS BY RUPTURE, BURSTING OR DISINTEGRATING OF ROTATING OR MOVING PARTS;

(G) CONTRACTOR'S EQUIPMENT;

(H) JEWELRY, WATCHES, PEARLS, PRECIOUS AND SEMI-PRECIOUS STONES, GOLD, SILVER, PLATINUM, OTHER PRECIOUS METALS OR ALLOYS, BULLION, FURS AND ARTICLES TRIMMED WITH FUR;

(I) ELECTRONIC DATA PROCESSING EQUIPMENT INCLUDING COMPUTERS, ELECTRONIC ACCOUNTING MACHINES, ALL SUPPORTING MACHINERY, MAGNETIC TAPES, DISCS, CARDS, ANY STORAGE DEVICE AND ALL SOFTWARE INCLUDING PROCEDURES, PROGRAMS OR SOURCE MATERIAL OF ANY KINDS;

(J) POWER TRANSMISSION AND/OR FEEDER LINES NOT ON THE INSURED'S PREMISES;

(K) LAND, LAND VALUES OR WATER;

(L) RAILROAD ROLLING STOCK.

**6. PERILS EXCLUDED:**

THIS POLICY DOES NOT INSURE AGAINST:

(A) (1) FIRE AND LIGHTNING AS SET FORTH IN A STANDARD FIRE INSURANCE POLICY, EXTENDED COVERAGE PERILS, VANDALISM AND MALICIOUS MISCHIEF AND SPRINKLER LEAKAGE ALL AS MORE FULLY DEFINED AND LIMITED IN THE FORMS APPROVED BY THE RATING BUREAU HAVING JURISDICTION WHERE THE PROPERTY IS LOCATED; WHETHER OR NOT INSURANCE FOR SUCH PERILS IS BEING MAINTAINED BY THE INSURED AT THE TIME OF THE LOSS AND WHETHER OR NOT SUCH LOSS OR DAMAGE IS DIRECTLY OR INDIRECTLY CAUSED BY OR CONTRIBUTED TO BY A PERIL COVERED UNDER THIS POLICY;

(2) OTHER PERILS AS DEFINED AND LIMITED, AND TO THE EXTENT INSURED UNDER POLICIES INSURING AGAINST PERILS CARRIED BY THE INSURED OR UNDER ANY OTHER MORE SPECIFIC INSURANCE ARRANGED FOR AND IN THE NAME OF THE INSURED;

(B) WATER BELOW THE SURFACE OF THE GROUND INCLUDING THAT WHICH EXERTS PRESSURE ON OR FLOWS, SEEPS OR LEAKS THROUGH SIDEWALKS, DRIVEWAYS, FOUNDATIONS, WALLS, BASEMENT OR OTHER FLOORS, OR THROUGH DOORS, WINDOWS OR ANY OTHER OPENINGS IN SUCH SIDEWALKS, DRIVEWAYS, FOUNDATIONS, WALLS OR FLOORS;

(C) MERE DISAPPEARANCE OF PROPERTY OR LOSS OR SHORTAGE OF PROPERTY DISCLOSED ON TAKING INVENTORY;

(D) LOSS OR DAMAGE CAUSED BY OR RESULTING FROM WEAR AND TEAR, MECHANICAL BREAKDOWN, DERANGEMENT, INHERENT VICE, LATENT DEFECT, GRADUAL DETERIORATION, MOTH, VERMIN, RODENTS, TERMITES OR OTHER INSECTS INCLUDING LARVAE OR PUPAE THEREOF;

(E) LOSS OR DAMAGE BY GAS OR SMOKE FROM AGRICULTURAL SMUDGING, SMOG OR INDUSTRIAL OPERATIONS;

(F) LOSS OR DAMAGE CAUSED BY OR RESULTING FROM DAMPNESS OF ATMOSPHERE, DRYNESS OF ATMOSPHERE, EXTREMES OR CHANGES OF TEMPERATURE, SHRINKAGE, EVAPORATION, LOSS OF WEIGHT, LEAKAGE OF CONTENTS, BREAKAGE OF GLASS OR SIMILAR FRAGILE MATERIALS (OTHER THAN LENSES OF PHOTOGRAPHIC OR SCIENTIFIC INSTRUMENTS), MARRING, SCRATCHING, RUST OR CORROSION, EXPOSURE TO LIGHT, CONTAMINATION, CHANGE IN FLAVOR OR COLOR OR TEXTURE OR FINISH;

(G) LOSS OR DAMAGE CAUSED BY OR RESULTING FROM INFIDELITY OF INSURED'S EMPLOYEES OR OF PERSONS TO WHOM THE INSURED'S PROPERTY MAY BE ENTRUSTED;

(H) LOSS OR DAMAGE CAUSED BY OR RESULTING FROM ANY FRAUDULENT SCHEME, TRICK, DEVICE OR FALSE PRETENSE PRACTICED UPON THE INSURED OR UPON ANY PERSON(S) TO WHOM THE PROPERTY MAY BE ENTRUSTED;

(I) LOSS OR DAMAGE CAUSED BY OR RESULTING FROM ELECTRICAL INJURY OR DISTURBANCE TO ELECTRICAL APPLIANCES, FIXTURES OR WIRING CAUSED BY ELECTRICAL CURRENTS ARTIFICIALLY GENERATED, EXCEPT WITH RESPECT TO ENSUING LOSS CAUSED BY OR RESULTING FROM A PERIL NOT OTHERWISE EXCLUDED;

(J) LOSS OR DAMAGE CAUSED BY OR RESULTING FROM:

   (1) NORMAL SETTLING, SHRINKAGE OR EXPANSION IN FOUNDATION, WALLS, FLOORS, OR CEILINGS, SUBSIDENCE;

   (2) LANDSLIDE UNLESS DIRECTLY CAUSED BY A PERIL INSURED AGAINST;

   (3) ENFORCEMENT OF ANY ORDINANCE OR LAW REGULATING THE RECONSTRUCTION, REPAIR OR DEMOLITION OF THE REAL PROPERTY INSURED HEREUNDER;

(K) LOSS OR DAMAGE CAUSED BY OR RESULTING FROM:

   (1) HOSTILE OR WARLIKE ACTION IN TIME OF PEACE OR WAR, INCLUDING ACTION IN HINDERING, COMBATING OR DEFENDING AGAINST AN ACTUAL, IMPENDING OR EXPECTED ATTACK (A) BY ANY GOVERNMENT OR SOVEREIGN POWER (DE JURE OR DE FACTO), OR BY ANY AUTHORITY MAINTAINING OR USING MILITARY, NAVAL OR AIR FORCES; OR (B) BY MILITARY, NAVAL OR AIR FORCES; OR (C) BY ANY AGENT OF ANY SUCH GOVERNMENT, POWER, AUTHORITY OR FORCES;

   (2) ANY WEAPON OF WAR EMPLOYING ATOMIC FISSION OR RADIOACTIVE FORCE WHETHER IN TIME OF PEACE OR WAR;

   (3) INSURRECTION, REBELLION, REVOLUTION, CIVIL WAR, USURPED POWER OR ACTION TAKEN BY GOVERNMENTAL AUTHORITY IN HINDERING, COMBATING OR DEFENDING AGAINST ANY SUCH AN OCCURRENCE, SEIZURE OR DESTRUCTION UNDER QUARANTINE OR CUSTOMS REGULATION, CONFISCATION BY ORDER OF ANY GOVERNMENT OR PUBLIC AUTHORITY, OR RISKS OF CONTRABAND OR ILLEGAL TRANSPORTATION OR TRADE;

(L) THIS COMPANY SHALL NOT BE LIABLE FOR LOSS BY NUCLEAR REACTION OR NUCLEAR RADIATION OR RADIOACTIVE CONTAMINATION ALL WHETHER CONTROLLED OR UNCONTROLLED, AND WHETHER SUCH LOSS BE DIRECT OR INDIRECT, PROXIMATE OR REMOTE, OR BE IN WHOLE OR IN PART CAUSED BY, CONTRIBUTED TO, OR AGGRAVATED BY THE PERIL(S) INSURED AGAINST IN THIS POLICY;

(M) LOSS OR DAMAGE RESULTING FROM THE FREEZING OF PLUMBING OR HEATING SYSTEMS IN VACANT PROPERTIES;

(N) LOSS OR DAMAGE BY PILFERAGE, BURGLARY, LARCENY, THEFT OR ATTEMPTED THEFT IF THE DESCRIBED PROPERTY HAD BEEN VACANT BEYOND PERIOD OF THIRTY (30) DAYS IMMEDIATELY PRECEDING THE LOSS;

(O) ERRORS IN DESIGN, ERRORS IN PROCESSING, FAULTY WORKMANSHIP OR FAULTY MATERIALS, UNLESS THE COLLAPSE OF THE PROPERTY OR A PART THEREOF ENSUES AND THEN ONLY THE ENSUING LOSS;

(P) LOSS OR DAMAGE TO PROPERTY WHILE ACTUALLY BEING WORKED UPON AND DIRECTLY RESULTING THEREFROM, EXCEPT ENSUING LOSS FROM A PERIL NOT OTHERWISE EXCLUDED BY THIS POLICY;

(Q) LOSS OR DAMAGE CAUSED BY EXPOSURE TO ELEMENTS OF THE WEATHER WHERE ANY INSURED PERSONAL PROPERTY IS LEFT IN THE OPEN OR NOT CONTAINED IN BUILDINGS OR PERMANENT FOUNDATIONS;

(R) DELAY, LOSS OF MARKET, LOSS OF USE, INTERRUPTION OF BUSINESS, CONSEQUENTIAL LOSS OF ANY NATURE, UNLESS SPECIFICALLY INSURED UNDER PARAGRAPH 2, ITEM E.

7. **OTHER INSURANCE --** THIS POLICY DOES NOT ATTACH TO OR BECOME INSURANCE AGAINST ANY PERIL UPON PROPERTY HEREIN DESCRIBED, WHICH AT THE TIME OF ANY LOSS IS COVERED BY OTHER INSURANCE (MEANING INSURANCE IN THE NAME OF THE INSURED BUT NOT WRITTEN UPON THE IDENTICAL PLAN, TERMS, CONDITIONS AND PROVISIONS CONTAINED IN THIS POLICY) UNTIL THE LIABILITY OF SUCH OTHER INSURANCE HAS BEEN EXHAUSTED, AND THEN COVER ONLY SUCH LOSS AS MAY EXCEED THE AMOUNT DUE FROM SUCH OTHER INSURANCE (WHETHER COLLECTIBLE OR NOT) AFTER APPLICATION OF ANY CONTRIBUTION, COINSURANCE, AVERAGE OR DISTRIBUTION OR OTHER CLAUSES CONTAINED IN POLICIES OF SUCH OTHER INSURANCE AFFECTING THE AMOUNT COLLECTIBLE THEREUNDER, NOT HOWEVER, EXCEEDING THE LIMITS AS SET FORTH HEREIN.

8. **SINGLE LOSS CLAUSE --** EACH LOSS BY EARTHQUAKE SHALL CONSTITUTE A SINGLE CLAIM HEREUNDER, PROVIDED, IF MORE THAN ONE EARTHQUAKE SHOCK SHALL OCCUR WITHIN ANY PERIOD OF ONE HUNDRED SIXTY-EIGHT (168) HOURS DURING THE TERM OF THIS POLICY, SUCH EARTHQUAKE SHOCKS SHALL BE DEEMED TO BE A SINGLE EARTHQUAKE WITHIN THE MEANING HEREOF. THIS COMPANY SHALL NOT BE LIABLE FOR ANY LOSS CAUSED BY ANY EARTHQUAKE SHOCK OCCURRING BEFORE THE EFFECTIVE DATE AND TIME OF THIS POLICY, NOR FOR ANY LOSS OCCURRING AFTER THE EXPIRATION DATE AND TIME OF THIS POLICY.

IN NO EVENT SHALL THIS COMPANY BE LIABLE FOR ANY LOSS CAUSED DIRECTLY OR INDIRECTLY BY FIRE, EXPLOSION OR OTHER EXCLUDED PERILS WHETHER THE SAME BE CAUSED BY OR ATTRIBUTABLE TO EARTHQUAKE OR OTHERWISE.

9. **SUBROGATION WAIVER --** THIS INSURANCE SHALL NOT BE PREJUDICED BY AGREEMENT MADE BY THE NAMED INSURED RELEASING OR WAIVING THE NAMED INSURED'S RIGHT TO RECOVERY AGAINST THIRD PARTIES RESPONSIBLE FOR THE LOSS, UNDER THE FOLLOWING CIRCUMSTANCES ONLY: 1) IF MADE BEFORE LOSS HAS OCCURRED, SUCH AGREEMENT MAY RUN IN FAVOR OF ANY THIRD PARTY; 2) IF MADE AFTER LOSS HAS OCCURRED, SUCH AGREEMENT MAY RUN ONLY IN FAVOR OF A THIRD PARTY FALLING WITHIN ONE OF THE FOLLOWING CATEGORIES AT THE TIME OF LOSS: (A) A THIRD PARTY INSURED UNDER THIS POLICY; OR (B) A CORPORATION, FIRM OR ENTITY (1) OWNED OR CONTROLLED BY THE NAMED INSURED OR IN WHICH THE NAMED INSURED OWNS CAPITAL STOCK OR OTHER PROPRIETARY INTEREST, OR (2) OWNING OR CONTROLLING THE NAMED INSURED OR OWNING OR CONTROLLING CAPITAL STOCK OR OTHER PROPRIETARY INTEREST IN THE NAMED INSURED; (3) WHETHER MADE BEFORE OR AFTER LOSS HAS OCCURRED, SUCH AGREEMENT MUST RELEASE OR WAIVE THE ENTIRE RIGHT OF RECOVERY OF THE NAMED INSURED AGAINST SUCH THIRD PARTY.

10. **LOSS CLAUSE --** ANY LOSS HEREUNDER SHALL NOT REDUCE THE AMOUNT OF THIS POLICY EXCEPT AS RESPECTS EARTHQUAKE AND FLOOD AS PER PARAGRAPH 3 OF THIS FORM.

11. **MISREPRESENTATION AND FRAUD -- THIS ENTIRE POLICY SHALL BE VOID IF, WHETHER BEFORE OR** AFTER A LOSS, THE INSURED HAS CONCEALED OR MISREPRESENTED ANY MATERIAL FACT OR CIRCUMSTANCE CONCERNING THIS INSURANCE OR THE SUBJECT THEREOF, OR THE INTEREST OF THE INSURED THEREIN, OR IN CASE OF ANY FRAUD OR FALSE SWEARING BY THE INSURED RELATING THERETO.

12. **NOTICE OF LOSS** -- THE INSURED SHALL AS SOON AS PRACTICABLE REPORT, IN WRITING, TO THE COMPANY OR ITS AGENT EVERY LOSS DAMAGE OR OCCURRENCE WHICH MAY GIVE RISE TO A CLAIM UNDER THIS POLICY AND SHALL ALSO FILE WITH THE COMPANY OR ITS AGENT WITHIN NINETY (90) DAYS FROM DATE OF DISCOVERY OF SUCH LOSS, DAMAGE OR OCCURRENCE, A DETAILED SWORN PROOF OF LOSS.

13. **EXAMINATION UNDER OATH** -- THE INSURED, AS OFTEN AS MAY BE REASONABLY REQUIRED, SHALL EXHIBIT TO ANY PERSON DESIGNATED BY THE COMPANY ALL THAT REMAINS OF ANY PROPERTY HEREIN DESCRIBED, AND SHALL SUBMIT, AND IN SO FAR AS IS WITHIN HIS OR THEIR POWER CAUSE HIS OR THEIR EMPLOYEES, MEMBERS OF THE HOUSEHOLD AND OTHERS TO SUBMIT TO EXAMINATION UNDER OATH BY ANY PERSON NAMED BY THE COMPANY AND SUBSCRIBED THE SAME; AND, AS OFTEN AS MAY BE REASONABLY REQUIRED, SHALL PRODUCE FOR EXAMINATION ALL WRITING, BOOKS OF ACCOUNT, BILLS, INVOICES AND OTHER VOUCHERS, OR CERTIFIED COPIES THEREOF IF ORIGINALS BE LOST, AT SUCH REASONABLE TIME AND PLACE AS MAY BE DESIGNATED BY THE COMPANY OR ITS REPRESENTATIVE, AND SHALL PERMIT EXTRACTS AND COPIES THEREOF TO BE MADE. NO SUCH EXAMINATIONS UNDER OATH OR EXAMINATION OF BOOKS OR DOCUMENTS, NOR ANY OTHER ACT OF THE COMPANY OR ANY OF ITS EMPLOYEES OR REPRESENTATIVES IN CONNECTION WITH THE INVESTIGATION OF ANY LOSS OR CLAIM HEREUNDER, SHALL BE DEEMED A WAIVER OF ANY DEFENSE WHICH THE COMPANY MIGHT OTHERWISE HAVE WITH RESPECT TO ANY LOSS OR CLAIM, BUT ALL SUCH EXAMINATIONS AND ACTS SHALL BE DEEMED TO HAVE BEEN MADE OR DONE WITHOUT PREJUDICE TO THE COMPANY'S LIABILITY.

14. **PRIVILEGE TO ADJUST WITH OWNER** -- IN THE EVENT OF LOSS OR DAMAGE TO PROPERTY OF OTHERS HELD BY THE INSURED FOR WHICH CLAIM IS MADE UPON THE COMPANY, THE RIGHT TO ADJUST SUCH LOSS OR DAMAGE WITH THE OWNER OR OWNERS OF THE PROPERTY IS RESERVED TO THE COMPANY AND THE RECEIPT OF SUCH OWNER OR OWNERS IN SATISFACTION THEREOF SHALL BE IN FULL SATISFACTION OF ANY CLAIM OF THE INSURED FOR WHICH SUCH PAYMENT HAS BEEN MADE, IF LEGAL PROCEEDINGS BE TAKEN TO ENFORCE A CLAIM AGAINST THE INSURED AS RESPECTS ANY SUCH LOSS OR DAMAGE, THE COMPANY RESERVES THE RIGHT AT ITS OPTION WITHOUT EXPENSE TO THE INSURED, TO CONDUCT AND CONTROL THE DEFENSE ON BEHALF OF AND IN THE NAME OF THE INSURED. NO ACTION OF THE COMPANY IN SUCH REGARD SHALL INCREASE THE LIABILITY OF THE COMPANY UNDER THIS POLICY, NOR INCREASE THE LIMITS OF LIABILITY SPECIFIED IN THE POLICY.

15. **SETTLEMENT OF LOSS** -- ALL ADJUSTED CLAIMS SHALL BE PAID OR MADE GOOD TO THE INSURED WITHIN SIXTY (60) DAYS AFTER PRESENTATION AND ACCEPTANCE OF SATISFACTORY PROOF OF INTEREST AND LOSS AT THE OFFICE OF THE COMPANY. NO LOSS SHALL BE PAID OR MADE GOOD IF THE INSURED HAS COLLECTED THE SAME FROM OTHERS.

16. **NO BENEFIT TO BAILEE** -- THIS INSURANCE SHALL IN NO WISE INURE DIRECTLY OR INDIRECTLY TO THE BENEFIT OF ANY CARRIER OR OTHER BAILEE.

17. **PAIR, SET OR PARTS** -- IN THE EVENT OF LOSS OF OR DAMAGE TO:

    (A) ANY ARTICLE OR ARTICLES WHICH ARE A PART OF A PAIR OR SET, THE MEASURE OF LOSS OF OR DAMAGE TO SUCH ARTICLE OR ARTICLES SHALL BE A REASONABLE AND FAIR PROPORTION OF THE TOTAL VALUE OF THE PAIR OR SET, GIVING CONSIDERATION TO THE IMPORTANCE OF SAID ARTICLE OR ARTICLES, BUT IN NO EVENT SHALL SUCH LOSS OR DAMAGE BE CONSTRUED TO MEAN TOTAL LOSS OF THE PAIR OR SET, OR

(B) ANY PART OF PROPERTY COVERED CONSISTING, WHEN COMPLETE FOR USE OR SALE, OF SEVERAL PARTS, THE COMPANY SHALL ONLY BE LIABLE FOR THE VALUE OF THE PART LOST OR DAMAGED.

18. **RECORDS AND INVENTORY** -- THE INSURED SHALL KEEP ACCURATE BOOKS, RECORDS AND ACCOUNTS IN THE FOLLOWING MANNER: A DETAILED AND ITEMIZED INVENTORY RECORD OF ALL PROPERTY COVERED HEREUNDER SHALL BE MAINTAINED AND PHYSICAL INVENTORY SHALL BE TAKEN PERIODICALLY AT INTERVALS NOT MORE THAN TWELVE (12) MONTHS APART.

19. **EXAMINATION OF RECORDS** -- THE INSURED SHALL, AS OFTEN AS MAY BE REASONABLY REQUIRED DURING THE TERM OF THIS POLICY AND FOR ONE (1) YEAR THEREAFTER, PRODUCE FOR EXAMINATION BY THE COMPANY OR ITS DULY AUTHORIZED REPRESENTATIVE ALL THE BOOKS AND RECORDS, INVENTORIES AND ACCOUNTS RELATING TO THE PROPERTY COVERED HEREUNDER.

20. **SUIT** -- NO SUIT, ACTION OR PROCEEDING FOR THE RECOVERY OF ANY CLAIM UNDER THIS POLICY SHALL BE SUSTAINABLE IN ANY COURT OF LAW OR EQUITY UNLESS THE SAME BE COMMENCED WITHIN TWELVE (12) MONTHS NEXT AFTER DISCOVERY BY THE INSURED OF THE OCCURRENCE WHICH GIVES RISE TO A CLAIM, PROVIDED HOWEVER, THAT IF BY THE LAWS OF THE STATE WITHIN THIS POLICY IS ISSUED SUCH LIMITATION IS INVALID, THEN ANY SUCH CLAIMS SHALL BE VOID UNLESS SUCH ACTION, SUIT OR PROCEEDING BE COMMENCED WITHIN THE SHORTEST LIMIT OF TIME PERMITTED BY THE LAWS OF SUCH STATE.

21. **APPRAISAL** -- IF THE INSURED AND THE COMPANY FAIL TO AGREE AS TO THE AMOUNT OF LOSS, EACH SHALL ON THE WRITTEN DEMAND OF EITHER, MADE WITHIN SIXTY (60) DAYS AFTER RECEIPT OF PROOF OF LOSS BY THE COMPANY, SELECT A COMPETENT AND DISINTERESTED APPRAISER, AND THE APPRAISAL SHALL BE MADE AT A REASONABLE TIME AND PLACE. THE APPRAISERS SHALL FIRST SELECT A COMPETENT AND DISINTERESTED UMPIRE, AND FAILING FOR FIFTEEN (15) DAYS TO AGREE UPON SUCH UMPIRE, THEN, ON THE REQUEST OF THE INSURED OR THE COMPANY, SUCH SHALL BE SELECTED BY A JUDGE OF A COURT OF RECORD IN THE STATE IN WHICH SUCH APPRAISAL IS PENDING. THE APPRAISERS SHALL THEN APPRAISE THE LOSS, STATING SEPARATELY THE ACTUAL CASH VALUE AT THE TIME OF LOSS AND THE AMOUNT OF LOSS, AND FAILING TO AGREE SHALL SUBMIT THEIR DIFFERENCES TO THE UMPIRE. AN AWARD IN WRITING OF ANY TWO SHALL DETERMINE THE AMOUNT OF LOSS. THE INSURED AND THE COMPANY SHALL EACH PAY HIS OR ITS CHOSEN APPRAISER AND SHALL BEAR EQUALLY THE OTHER EXPENSES OF THE APPRAISAL AND UMPIRE. THE COMPANY SHALL NOT BE HELD TO HAVE WAIVED ANY OF ITS RIGHTS BY ANY ACT RELATING TO APPRAISAL.

22. **COMPANY'S OPTIONS** -- IT SHALL BE OPTIONAL WITH THE COMPANY TO TAKE ALL, OR ANY PART, OF THE PROPERTY AT THE AGREED OR APPRAISED VALUE, OR TO REPAIR, REBUILD OR REPLACE THE PROPERTY DESTROYED OR DAMAGED WITH OTHER OF LIKE KIND AND QUALITY WITHIN A REASONABLE TIME, ON GIVING NOTICE OF ITS INTENTIONS TO DO SO WITHIN SIXTY (60) DAYS AFTER THE RECEIPT OF THE PROOF OF LOSS HEREIN REQUIRED.

23. **ABANDONMENT** -- THERE CAN BE NO ABANDONMENT TO THE COMPANY OF ANY PROPERTY.

24. **CLAIMS AGAINST THIRD PARTIES** -- IN THE EVENT OF ANY LOSS OF OR DAMAGE TO THE PROPERTY COVERED HEREUNDER THE INSURED SHALL IMMEDIATELY MAKE CLAIM IN WRITING AGAINST THE CARRIER(S), BAILEE(S) OR OTHERS INVOLVED.

25. **LABELS** -- IN THE EVENT OF LOSS OF OR DAMAGE TO LABELS, CAPSULES OR WRAPPERS, THE LOSS SHALL BE ADJUSTED ON THE BASIS OF AN AMOUNT SUFFICIENT TO PAY THE COST OF NEW LABELS, CAPSULES OR WRAPPERS.

26. **ASSISTANCE AND COOPERATION OF THE INSURED --** IN THE EVENT THIS POLICY COVERS THE INSURED'S LIABILITY, THE INSURED SHALL COOPERATE WITH THE COMPANY AND, UPON THE COMPANY'S REQUEST, SHALL ATTEND HEARINGS AND TRIALS AND SHALL ASSIST IN EFFECTING SETTLEMENTS, SECURING AND GIVING EVIDENCE, OBTAINING THE ATTENDANCE OF WITNESSES AND IN THE CONDUCT OF SUITS. THE INSURED SHALL NOT, EXCEPT AT HIS OWN COST, VOLUNTARILY MAKE PAYMENT, ASSUME ANY OBLIGATION OR INCUR ANY EXPENSE WITHOUT THE WRITTEN CONSENT OF THE COMPANY.

27. **DEBRIS REMOVAL --**

    1. THIS POLICY COVERS EXPENSES INCURRED IN THE REMOVAL OF ALL DEBRIS OF THE PROPERTY COVERED HEREUNDER WHICH MAY BE OCCASIONED BY LOSS CAUSED BY ANY OF THE PERILS INSURED AGAINST, SUBJECT HOWEVER, TO THE LIMIT OF LIABILITY.

    2. THIS COMPANY SHALL NOT BE LIABLE UNDER THIS POLICY AND THIS CLAUSE FOR:

       (A) MORE THAN THE AMOUNT OF INSURANCE PROVIDED IN THIS POLICY;

       (B) ANY GREATER PROPORTION OF SUCH EXPENSE THAN THE AMOUNT OF INSURANCE HEREUNDER BEARS TO THE TOTAL AMOUNT OF ALL INSURANCE, WHETHER ALL SUCH INSURANCE CONTAINS THIS CLAUSE OF NOT; NOR

       (C) LOSS OCCASIONED BY THE ENFORCEMENT OF ANY STATE OR MUNICIPAL LAW OR ORDINANCE WHICH NECESSITATES THE DEMOLITION OF ANY PORTION OF THE BUILDING COVERED HEREUNDER WHICH HAS NOT SUFFERED DAMAGE BY ANY OF THE PERILS INSURED AGAINST IN THIS POLICY, UNLESS SUCH LIABILITY IS OTHERWISE SPECIFICALLY INSURED BY THIS POLICY.

    3. IF THIS POLICY IS DIVIDED INTO TWO OR MORE ITEMS, THE FOREGOING SHALL APPLY SEPARATELY TO SUCH ITEM.

28. **CANCELLATION --** THIS POLICY MAY BE CANCELLED BY THE INSURED BY MAILING TO THE COMPANY WRITTEN NOTICE STATING WHEN THEREAFTER SUCH CANCELLATION SHALL BE EFFECTIVE. THIS POLICY MAY BE CANCELLED BY THE COMPANY BY MAILING TO THE INSURED AT THE ADDRESS SHOWN IN THIS POLICY OR LAST KNOWN ADDRESS WRITTEN NOTICE STATING WHEN NOT LESS THAN FORTY-FIVE (45) DAYS THEREAFTER SUCH CANCELLATION SHALL BE EFFECTIVE; HOWEVER, CANCELLATION DUE TO NON-PAYMENT OF PREMIUM SHALL REQUIRE TEN (10) DAYS WRITTEN NOTICE OF CANCELLATION. THE MAILING OF NOTICE AS AFOREMENTIONED SHALL BE SUFFICIENT PROOF OF NOTICE AND THE EFFECTIVE DATE OF CANCELLATION STATED IN THE NOTICE SHALL BECOME THE END OF THE POLICY PERIOD. DELIVERY OF SUCH WRITTEN NOTICE EITHER BY THE INSURED OR BY THE COMPANY SHALL BE EQUIVALENT TO MAILING.

29. **ALL OTHER MATTERS --** ALL MATTERS NOT PROVIDED FOR HEREIN OR BY ENDORSEMENT HEREON SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE COMPANY'S PRINTED POLICY FORM TO WHICH THIS FORM IS ATTACHED AND WHICH HAS BEEN ISSUED IN CONJUNCTION HEREWITH. THE FOREGOING CLAUSES SHALL, HOWEVER, BE CONSIDERED TO SUPERSEDE AND ANNUL ANY CLAUSES THEREIN WHICH MAY BE OF THE SAME OR SIMILAR NATURE.

30. **STATUTORY REQUIREMENTS --** IT IS HEREBY UNDERSTOOD AND AGREED THAT IF PROPERTY COVERED UNDER THIS POLICY IS LOCATED IN A STATE THAT REQUIRES A STATUTORY POLICY OR STANDARD FORM(S) AT VARIANCE WITH THIS POLICY OR THE FORM(S) ATTACHED HERETO, THEN THIS INSURANCE SHALL COVER SUCH PROPERTY IN ACCORDANCE WITH THE PROVISIONS OF SUCH REQUIRED POLICY OR FORM(S).

31. **VALUATION** -- THIS COMPANY SHALL NOT BE LIABLE FOR MORE THAN THE ACTUAL CASH VALUE OF THE PROPERTY AT THE TIME ANY LOSS OR DAMAGE OCCURS AND THE LOSS OR DAMAGE SHALL BE ASCERTAINED OR ESTIMATED ACCORDING TO SUCH ACTUAL CASH VALUE WITH PROPER DEDUCTION FOR DEPRECIATION, HOWEVER CAUSED, AND SHALL IN NO EVENT EXCEED WHAT IT WOULD THEN COST TO REPAIR OR REPLACE THE SAME WITH MATERIAL OF LIKE KIND AND QUALITY, NOR THE AMOUNT FOR WHICH THE INSURED MAY BE LIABLE.

32. **EXCESS INSURANCE** -- PERMISSION IS GRANTED THE INSURED TO HAVE EXCESS INSURANCE OVER THE LIMIT OF LIABILITY SET FORTH IN THIS POLICY WITHOUT PREJUDICE TO THIS POLICY AND THE EXISTENCE OF SUCH INSURANCE, IF ANY, SHALL NOT REDUCE ANY LIABILITY UNDER THIS POLICY.

33. **SALVAGE AND RECOVERIES** -- ALL SALVAGE, RECOVERIES AND PAYMENTS RECOVERED OR RECEIVED SUBSEQUENT TO THE LOSS SETTLEMENT UNDER THIS POLICY SHALL BE APPLIED AS IF RECOVERED OR RECEIVED PRIOR TO THE SAID SETTLEMENT AND ALL NECESSARY ADJUSTMENTS SHALL BE MADE BY THE PARTIES HERETO.

ATTACHED TO AND FORMING PART OF POLICY NUMBER **CPP 3991966 AGRICULTURAL INSURANCE COMPANY** AND POLICY NUMER **FCP 2291966 FRONTIER INSURANCE COMPANY.**

# ENDORSEMENT

**AGRICULTURAL INSURANCE COMPANY** **POLICY NO. CPP 3991966**
**FRONTIER INSURANCE COMPANY** **POLICY NO. FCP 2291966**

**Insured:** WEST RIDGE TOWNHOMES ASSOCIATION **Endorsement No.:** 1

**Additional:** **Return:**

**Effective Date of Endorsement:** AUGUST 4, 1998 **Premium:** **$** N/A

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT**

IT IS UNDERSTOOD AND AGREED THAT THE FOLLOWING SPECIAL TERMS AND CONDITIONS APPLY TO THIS POLICY:

1. THE LIMIT OF LIABILITY OR AMOUNT OF INSURANCE SHOWN ON THE FACE OF THIS POLICY, OR ENDORSED ONTO THIS POLICY, IS A LIMIT OR AMOUNT PER OCCURRENCE. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, IN NO EVENT SHALL THE LIABILITY OF THIS COMPANY EXCEED THIS LIMIT OR AMOUNT IN ONE DISASTER, CASUALTY OR EVENT, IRRESPECTIVE OF THE NUMBER OF LOCATIONS INVOLVED.

2. THE PREMIUM FOR THIS POLICY IS BASED UPON THE STATEMENT OF VALUES ON FILE WITH THE COMPANY, OR ATTACHED TO THIS POLICY. IN THE EVENT OF LOSS HEREUNDER, LIABILITY OF THE COMPANY SHALL BE LIMITED TO THE LEAST OF THE FOLLOWING:

   (A) THE ACTUAL ADJUSTED AMOUNT OF LOSS, LESS APPLICABLE DEDUCTIBLE(S)

   (B) THE TOTAL STATED VALUE FOR THE PROPERTY INVOLVED, AS SHOWN ON THE LATEST STATEMENT OF VALUES ON FILE WITH THE COMPANY, LESS APPLICABLE DEDUCTIBLE(S)

   (C) THE LIMIT OF LIABILITY OR AMOUNT OF INSURANCE SHOWN ON THE FACE OF THIS POLICY OR ENDORSED INTO THIS POLICY.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

BY: Larry E. Rowles
AUTHORIZED REPRESENTATIVE

# ENDORSEMENT

**AGRICULTURAL INSURANCE COMPANY** — **POLICY NO. CPP 3991966**
**FRONTIER INSURANCE COMPANY** — **POLICY NO. FCP 2291966**

| | | | |
|---|---|---|---|
| **Insured:** | WESTRIDGE TOWNHOMES ASSOCIATION | **Endorsement No.:** | 2 |
| | | **Additional:** | **Return:** |
| **Effective Date of Endorsement:** | AUGUST 4, 1998 | **Premium:** | **$** N/A |

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

IT IS UNDERSTOOD AND AGREED THAT THE INSURED SHALL MAINTAIN UNDERLYING ALL RISK COVERAGE FROM THE INCEPTION OF THIS POLICY TO THE EXPIRATION OF THIS POLICY, EQUIVALENT TO STANDARD FORM(S).

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

By: Larry E. Beuler [signature]
Authorized Representative

EDICIEAF

# ENDORSEMENT

**AGRICULTURAL INSURANCE COMPANY** **POLICY NO. CPP 3991966**
**FRONTIER INSURANCE COMPANY** **POLICY NO. FCP 2291966**

**Insured:** WEST RIDGE TOWNHOMES ASSOCIATION **Endorsement No.:** 3

**Additional:** **Return:**

**Effective Date of Endorsement:** AUGUST 4, 1998 **Premium:** $ N/A

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**REPLACEMENT COST ENDORSEMENT**

This endorsement applies only to item(s) of insurance specified on the first page of this policy or by endorsement.

1. The provisions of this policy are amended to substitute the term "replacement cost" (without deduction for depreciation) for the term "actual cash value" wherever it appears in this policy subject, however, in all other respects to the provisions of this endorsement and of the policy to which this endorsement is attached.

2. This endorsement shall not apply to stock (raw, in process or finished) or merchandise, including materials and supplies in connection therewith, property of others, household furniture or residential contents; or to manuscripts; or to paintings, etchings, pictures, tapestries, statuary, marbles, bronzes, antique furniture, rate books, antique silver, porcelains, rare glassware and bric-a-brac, or other articles of art, rarity or antiquity.

3. This Company shall not be liable under this endorsement for any loss:

   A. occasioned directly or indirectly by enforcement of any ordinance or law regulating the use, construction repair or demolition of property unless such liability has been specifically assumed under this policy;

   B. unless and until the damaged or destroyed property is actually repaired or replaced by the Insured with due diligence and dispatch.

4. The Insured may elect to make claim under this policy in accordance with its provisions, disregarding this endorsement, and the Insured may make further claim for any additional liability brought about by this endorsement in accordance with its provision, provided this Company is notified, in writing, within 180 days after loss of the Insured's intent to make such further claim.

5. This Company's liability for loss on a replacement cost basis shall not exceed the smallest of the following amounts:

   A. the amount of this policy applicable to the damaged or destroyed property;
   B. the replacement cost of the property or any part thereof identical with such property and intended for the same occupancy and use; or
   C. the amount actually and necessarily expended in repairing or replacing said property or any part thereof.

6. If the coverage on property under this policy be divided into two or more items, all of the foregoing shall apply separately to each item to which this endorsement applies.

By: Larry E. Kessler
Authorized Representative

# ENDORSEMENT

**AGRICULTURAL INSURANCE COMPANY** **POLICY NO. CPP 3991966**
**FRONTIER INSURANCE COMPANY** **POLICY NO. FCP 2291966**

**Insured:** WEST RIDGE TOWNHOMES ASSOCIATION **Endorsement No.:** 4

**Additional:** **Return**

**Effective Date of Endorsement:** AUGUST 4, 1998 **Premium:** $ N/A

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Type of Coverage:** **DIFFERENCE IN CONDITIONS INCLUDING EARTHQUAKE AND FLOOD**

**DEDUCTIBLE PROVISIONS**

The word "claim" as used in this policy respecting any deductible amount means the aggregate of this Company's share of all loss in the category to which such deductible amount applies arising out of any one loss occurrence. Each such loss shall be adjusted (net of salvage, subrogation recoveries and any other recoveries) as if these deductible provisions did not apply. As respects any such claim, this company shall then be liable only for the excess (if any) thereof over such deductible amount.

Deductible Amount:

The following deductible amounts shall apply to each claim for loss or damage in the respective loss categories indicated:

A. All claims, except Earthquake and Flood, as described in B. below = $25,000.

B. Earthquake and Flood: This Company shall not be liable for loss per unit of insurance covered hereunder unless such loss exceeds the respective percentage stated below and then only for its proportion of such excess:

(1) 5% of the value (as defined elsewhere herein) per unit covered hereunder to which the loss occurs at the time when such loss shall happen. In the application of the Earthquake deductible amount, each of the following shall be considered a separate unit:

(a) Each separate and unadjoining building or structure

(b) The contents of each separate and unadjoining building or structure

(c) Property in each yard.

(d) Business Interruption

Subject to a minimum combined deductible of $25,000. Per Occurrence for all coverages insured for Earthquake and Flood hereunder.

BY: Larry E. Keeler
Authorized Representative

EDP

# ENDORSEMENT

**AGRICULTURAL INSURANCE COMPANY** **POLICY NO. CPP 3991966**
**FRONTIER INSURANCE COMPANY** **POLICY NO. FCP 2291966**

**Insured:** WEST RIDGE TOWNHOMES ASSOCIATION

**Endorsement No.:** 5

**Additional:** **Return:**

**Effective Date of Endorsement:** AUGUST 4, 1998

**Premium:** **$** N/A

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**MINIMUM PREMIUM**

IT IS AGREED THAT IN THE EVENT OF CANCELLATION OF THIS POLICY BY THE INSURED AS SPECIFIED HEREIN, OR FOR NON-PAYMENT OF PREMIUM THE MINIMUM RETAINED PREMIUM WILL BE NOT LESS THAN TWENTY-FIVE PERCENT (25%) OF THE ANNUAL PREMIUM.

NOTHING IN THIS ENDORSEMENT IS DEEMED TO AFFECT THE COMPANY'S CANCELLATION RIGHTS.

IT IS FURTHER AGREED THAT A RETURN PREMIUM MAY BE ALLOWED ON A PRO-RATA BASIS IF CANCELLED BY THE COMPANY.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

By: Larry E. Kessler
Authorized Representative

EMP
201-2-7/5

# ENDORSEMENT

**AGRICULTURAL INSURANCE COMPANY**
**FRONTIER INSURANCE COMPANY**

**POLICY NO. CPP 3991966**
**POLICY NO. FCP 2291966**

**Insured:** WEST RIDGE TOWNHOMES ASSOCIATION

**Endorsement No.:** 6

**Additional:** **Return:**

**Effective Date of Endorsement:** AUGUST 4, 1998

**Premium:** **$** N/A

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ABSOLUTE POLLUTION EXCLUSION**

THIS POLICY DOES NOT APPLY TO ANY LOSS, DEMAND, CLAIM OR SUIT ARISING OUT OF OR IN ANY WAY RELATED TO POLLUTION INCLUDING ANY COST OR EXPENSE ARISING OUT OF OR IN ANY WAY RELATED TO TESTING FOR, MONITORING, CLEANING UP, REMOVING, CONTAINING, TREATING, DETOXIFYING, OR NEUTRALIZING POLLUTION.

THE COMPANY SHALL HAVE NO DUTY OF ANY KIND WITH RESPECT TO ANY SUCH LOSS, DEMAND, CLAIM OR SUIT.

THIS ENDORSEMENT APPLIES TO ALL COVERAGES UNDER THIS POLICY.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

BY: Larry E. Reuler
Authorized Representative

# ENDORSEMENT

**AGRICULTURAL INSURANCE COMPANY** **POLICY NO. CPP 3991966**
**FRONTIER INSURANCE COMPANY** **POLICY NO. FCP 2291966**

**Insured:** WEST RIDGE TOWNHOMES ASSOCIATION

**Endorsement No.:** 7

**Additional:** **Return:**

**Effective Date of Endorsement:** AUGUST 4, 1998

**Premium:** **$** N/A

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASBESTOS EXCLUSION**

THIS POLICY DOES NOT APPLY TO ANY LOSS, DEMAND, CLAIM OR SUIT ARISING OUT OF OR RELATED IN ANY WAY TO ASBESTOS OR ASBESTOS CONTAINING MATERIALS.

THE COMPANY SHALL HAVE NO DUTY OF ANY KIND WITH RESPECT TO ANY SUCH LOSS, DEMAND, CLAIM OR SUIT.

THIS EXCLUSION APPLIES TO ALL COVERAGES UNDER THIS POLICY.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

BY: Larry E. Beeler
Authorized Representative

06/92

# ENDORSEMENT

**AGRICULTURAL INSURANCE COMPANY**
**FRONTIER INSURANCE COMPANY**

**POLICY NO. CPP3991966**
**POLICY NO. FCP2291966**

**Insured:** WEST RIDGE TOWNHOMES ASSOCIATION

**Endorsement No.:** 8

**Additional:** **Return:**

**Effective Date of Endorsement:** AUGUST 4, 1998

**Premium:** **$** N/A

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

THE FOLLOWING SUB-LIMIT APPLIES AS RESPECTS BUILDING ORDINANCE COVERAGE FORM CP 04 05 11 85:

$ 250,000. BUILDING ORDINANCE

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATION OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

BY: Larry E. Kessler [signature]
Authorized Representative

# ENDORSEMENT

**AGRICULTURAL INSURANCE COMPANY**
**FRONTIER INSURANCE COMPANY**

**POLICY NO. CPP 3991966**
**POLICY NO. FCP 2291966**

**Insured:** WEST RIDGE TOWNHOMES ASSOCIATION

**Endorsement No.:** 9

**Additional:** **Return:**

**Effective Date Of Endorsement:** JULY 29, 1999

**Premium:** $ N/A

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

IT IS HEREBY AGREED THAT THE MAILING ADDRESS IS AMENDED TO READ AS FOLLOWS:

C/O MICHAEL TAYLOR, INC.
10647 N.E. SECOND STREET
BELLEVUE, WA 98004

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS,OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

By: Larry E. Kesler
Authorized Representative

cc: LA

# BUILDING ORDINANCE COVERAGE

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
DIFFERENCE IN CONDITIONS COVERAGE

**A.** If a Covered Cause of Loss occurs to covered Building property, we will pay:

1. For loss or damage caused by enforcement of any law that:

   a. Requires the demolition of parts of the same property not damaged by a Cov-ered Cause of Loss;

   b. Regulates the construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

   c. Is in force at the time of loss.

2. The increased cost to repair, rebuild or construct the property caused by enforce-ment of building, zoning or land use law. If the property is repaired or rebuilt, it must be intended for similar occupancy as the current property, unless otherwise required by zon-ing or land use law.

3. The cost to demolish and clear the site of undamaged parts of the property caused by enforcement of the building, zoning or land use law.

**B.** We will not pay for increased construction costs under this endorsement:

1. Until the property is actually repaired or re-placed, at the same premises or elsewhere; and

2. Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed 2 years. We may extend this period in writing during the 2 years.

**C.** We will not pay more:

1. If the property is repaired or replaced on the same premises, than the amount you actually spend to:

   a. Demolish and clear the site; and

   b. Repair, rebuild or construct the property but not for more than property of the same height, floor area and style on the same premises.

2. If the property is not repaired or replaced on the same premises, than:

   a. The amount you actually spend to demo-lish and clear the site of the described premises; and

   b. The cost to replace, on the same premises, the damaged or destroyed property with other property:

Copyright, ISO Commercial Risk Services, Inc., 1983

    (1) Of comparable material and quality;

(2) Of the same height, floor area and style; and

(3) Used for the same purpose.

D. The terms of this endorsement apply separately to each building to which the endorsement applies.

Copyright, ISO Commercial Risk Services, Inc., 1983

# BUSINESS INCOME COVERAGE FORM (AND EXTRA EXPENSE)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION G—**DEFINITIONS**.

**A. COVERAGE**

Coverage is provided as described below for one or more of the following options for which a Limit of Insurance is shown in the Declarations:

(i) Business Income including "Rental Value".

(ii) Business Income other than "Rental Value".

(iii) "Rental Value".

If option (i) above is selected, the term Business Income will include "Rental Value". If option **(iii)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the premises described in the Declarations, including personal property in the open (or in a vehicle) within 100 feet, caused by or resulting from any Covered Cause of Loss.

**1. Business Income**

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

**2. Covered Causes Of Loss.**

See applicable Causes of Loss Form as shown in the Declarations.

**3. Additional Coverages**

**a. Extra Expense.**

Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

**(1)** We will pay any Extra Expense to avoid or minimize the suspension of business and to continue "operations":

**(a)** At the described premises; or

**(b)** At replacement premises or at temporary locations, including:

**(i)** Relocation expenses; and

**(ii)** Costs to equip and operate the replacement or temporary locations.

**(2)** We will pay any Extra Expense to minimize the suspension of business if you cannot continue "operations".

**(3)** We will pay any Extra Expense to:

**(a)** Repair or replace any property; or

**(b)** Research, replace or restore the lost information on damaged valuable papers and records;

to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**b. Civil Authority.** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss. This coverage will apply for a period of up to two consecutive weeks from the date of that action.

**c. Alterations and New Buildings.** We will pay for the actual loss of Business Income you sustain due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

**(a)** Used in the construction, alterations or additions; or

Copyright, ISO Commercial Risk Services Inc., 1983, 1990

(b) Incidental to the upancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

d. **Extended Business Income.** We will pay for the actual loss of Business Income you incur during the period that:

(1) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

(2) Ends on the earlier of:

(a) The date you could restore your "operations", with reasonable speed, to the condition that would have existed if no direct physical loss or damage occurred; or

(b) 30 consecutive days after the date determined in **(1)** above.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**4. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

a. You may extend your Business Income Coverage to apply to property at any location you acquire other than fairs or exhibitions.

b. The most we will pay for loss under this Extension is 10% of the Limit of Insurance for Business Income shown in the Declarations, but not more than $100,000 at each location.

c. Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

(1) This policy expires;

(2) 30 days expire after you acquire or begin to construct the property; or

(3) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

This Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**B. EXCLUSIONS**

See applicable Causes of Loss Form as shown in the Declarations.

**C. LIMITS OF INSU ICE**

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The limit applicable to the Coverage Extension is in addition to the Limit of Insurance.

Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

1. Alterations and New Buildings;
2. Civil Authority;
3. Extra Expense; or
4. Extended Business Income.

**D. LOSS CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Loss**

a. You must see that the following are done in the event of loss:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when, and where the direct physical loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

(5) As often as may reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(6) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(7) Cooperate with us in the investigation or settlement of the claim.

(8) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3. Limitation—Electronic Media And Records**

We will not pay for any loss of Business Income caused by direct physical loss of or damage to Electronic Media and Records after the longer of:

a. 60 consecutive days from the date of direct physical loss or damage; or

b. The period, beginning with the date of direct physical loss or damage, necessary to repair, rebuild or replace, with reasonable speed and similar quality, other property at the described premises due to loss or damage caused by the same occurrence.

Electronic Media and Records are:

(1) Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

(2) Data stored on such media; or

(3) Programming records used for electronic data processing or electronically controlled equipment.

This limitation does not apply to Extra Expense.

**Example No. 1:**

A Covered Cause of Loss damages a computer on June 1. It takes until September 1 to replace the computer, and until October 1 to restore the data that was lost when the damage occurred. We will only pay for the Business Income loss sustained during the period June 1—September 1. Loss during the period September 2—October 1 is not covered.

**Example No. 2:**

A Covered Cause of Loss results in the loss of data processing programming records on August 1. The records are replaced on October 15. We will only pay for the Business Income loss sustained during the period August 1—September 29 (60 consecutive days). Loss during the period September 30—October 15 is not covered.

**4. Loss Determination**

a. The amount of Business Income loss will be determined based on:

(1) The Net Income of the business before the direct physical loss or damage occurred;

(2) The likely Net Income of the business if no loss or damage occurred;

(3) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

(4) Other relevant sources of information, including:

(a) Your financial records and accounting procedures;

(b) Bills, invoices and other vouchers; and

(c) Deeds, liens or contracts.

b. The amount of Extra Expense will be determined based on:

(1) All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

(a) The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

(b) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

(2) All necessary expenses that reduce the Business Income loss that otherwise

would have been incu d.

c. **Resumption Of Operations**

We will reduce the amount of your:

(1) Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

(2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

d. If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

5. **Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if:

a. You have complied with all of the terms of this Coverage Part; and

b. (1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

E. **ADDITIONAL CONDITION**

**Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any loss if the Limit of Insurance for Business Income is less than:

a. The Coinsurance percentage shown for Business Income in the Declarations; times

b. The sum of:

(1) The Net Income (Net Profit or Loss before income taxes), and

(2) All operating expenses, including payroll expenses,

that would have been earned (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Instead, we will determine the most we will pay using the following steps:

1. Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

2. Divide the Limit of Insurance for the described premises by the figure determined in step 1; and

3. Multiply the tot mount of loss by the figure determined in step 2.

We will pay the amount determined in step 3. or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example No. 1** (Underinsurance):

When: The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been $400,000

The Coinsurance percentage is 50%

The Limit of Insurance is $150,000

The amount of loss is $ 80,000

Step 1: $400,000 x 50% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step 2: $150,000 ÷ $200,000 = .75

Step 3: $ 80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example No. 2** (Adequate Insurance):

When: The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been $400,000

The Coinsurance percentage is 50%

The Limit of Insurance is $200,000

The amount of loss is $ 80,000

Step 1: $400,000 x 50% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step 2: $200,000 ÷ $200,000 = 1.00

Step 3: $ 80,000 x 1.00 = $80,000

We will cover the $80,000 loss. No penalty applies.

This condition does not apply to the Extra Expense Additional Coverage.

F. **OPTIONAL COVERAGES**

If shown in the Declarations, the following Optional Coverages apply separately to each item.

1. **Maximum Period Of Indemnity**

a. The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

b. The most we will pay for loss of Business Income is the lesser of:

(1) The amount of loss sustained during the 120 days immediately following the direct physical loss or damage; or

(2) The Limit of Insurance shown in the Declarations.

2. **Monthly Limit Of Indemnity**

a. The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

b. The most we will pay for loss of Business Income in each period of 30 consecutive days after the direct physical loss or damage is:

(1) The Limit of Insurance, multiplied by

(2) The fraction shown in the Declarations for this Optional Coverage.

**Example:**

When: The Limit of Insurance is $120,000

The fraction shown in the Declarations for this Optional Coverage is ¼

The most we will pay for loss in each period of 30 consecutive days is: $120,000 x ¼ = $30,000

If, in this example, the actual amount of loss is:

| | |
|---|---|
| Days 1-30 | $40,000 |
| Days 31-60 | 20,000 |
| Days 61-90 | 30,000 |
| | $90,000 |

We will pay:

| | |
|---|---|
| Days 1-30 | $30,000 |
| Days 31-60 | 20,000 |
| Days 61-90 | 30,000 |
| | $80,000 |

The remaining $10,000 is not covered.

3. **Agreed Value**

a. To activate this Optional Coverage:

(1) A Business Income Report/Work Sheet must be made a part of this policy and must show financial data for your "operations":

(a) During the 12 months prior to the date of the Work Sheet; and

(b) Estimated for the 12 months immediately following the inception of this Optional Coverage.

(2) An Agreed Value must be shown in the Declarations or on the Work Sheet. The Agreed Value should be at least equal to:

(a) The Coinsurance percentage shown in the Declarations; multiplied by

(b) The amount of Net Income and Operating Expenses for the following 12 months you report on the Work Sheet.

b. The Additional Condition, Coinsurance, is suspended until:

(1) 12 months after the effective date of this Optional Coverage; or

(2) The expiration date of this policy; whichever occurs first.

c. We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

(1) Within 12 months of the effective date of this Optional Coverage; or

(2) When you request a change in your Business Income Limit of Insurance.

d. If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

(1) The Business Income Limit of Insurance; divided by

(2) The Agreed Value.

**Example:**

When: The Limit of Insurance is $100,000

The Agreed Value is $200,000

The amount of loss is $ 80,000

Step (a): $100,000 ÷ $200,000 = .50

Step (b): .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

4. **Extended Period Of Indemnity**

Under paragraph **A.3.d.**, Extended Business Income, the number "30" in subparagraph **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

## G. DEFINITIONS

1. "Finished Stock" means stock you have manufactured.

"Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

"Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

2. "Operations" means:

a. Your business activities occurring at the described premises; and

b. The tenantability of the described premises, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

3. "Period of Restoration" means the period of time that:

a. Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

b. Ends on the date when the property at the

described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**4.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**5.** "Rental Value" means the:

**a.** Total anticipated rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, and

**b.** Amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be your obligations, and

**c.** Fair rental value of any portion of the described premises which is occupied by you.

# Exhibit B



AMERICAN CUSTOM
INSURANCE SERVICES, INC.

# AMERICAN CUSTOM INSURANCE SERVICES, INC.

801 SOUTH FIGUEROA STREET, SUITE 700
LOS ANGELES, CA 90017
Telephone (213) 430-4300 • Fax (213) 683-8004
License No. 0B09730

**INSURED'S NAME AND MAILING ADDRESS:**

WESTRIDGE TOWNHOMES ASSOCIATION
C/O MICHAEL TAYLOR, INC.
10647 N.E. SECOND STREET
BELLEVUE, WASHINGTON 98004

**PolicyNumber (s):** CPP3995131 & ACG3395131

**PRODUCER NAME AND ADDRESS:**

SWETT & CRAWFORD
2121 6TH AVENUE #2500
SEATTLE, WASHINGTON 98121

PRODUCER CODE: 392787

| AUGUST 4, 1999 | AUGUST 4, 2000 | ONE | 12:01 A.M. |
|---|---|---|---|
| Inception (Month, Day, Year) | Expiration (Month, Day, Year) | Years | Standard Time at the address of the Insured |

| Amount of Insurance | Prepaid Term Premium Due at Inception |
|---|---|
| $6,711,000. | |

TOTAL AMOUNT DUE $ 8,375.00

| Amount | Description, Perils and Locations of Insured |
|---|---|
| $6,711,000. LOSS LIMIT PER OCCURRENCE AND ANNUAL AGGREGATE AS RESPECTS THE PERILS OF EARTHQUAKE AND FLOOD | DIFFERENCE IN CONDITIONS OF DIRECT PHYSICAL LOSS OR DAMAGE INCLUDING EARTHQUAKE AND FLOOD COVERING BUILDINGS, CONTENTS, BUILDING ORDINANCE AND BUSINESS INTERRUPTION/EXTRA EXPENSE AS PER FORM ATTACHED. |

**PRIMARY DEDUCTIBLE(S) OR UNDERLYING LIMITS:** AS PER ENDORSEMENT NO. 4

**WORDING OR FORMS ATTACHED:** DIC-1 (2/95); ACIS257 (12/97); ENDORSEMENT NO. 1 THRU 8; IL 09 35 8/98; CP 15 57 8/98; CP 04 05 11 85; CP 00 30 10 91

DATE OF ISSUE: 8/27/99

BY: [signature]
Authorized Signature

IN CONSIDERATION OF THE PROVISIONS AND STIPULATIONS HEREIN OR ADDED HERETO AND OF the premium above specified, the Company(ies) identified on Schedule of Insurance, for the term of years specified above from inception date shown above at 12:01 A.M. (Standard Time) to expiration date shown above at 12:01 A.M. (Standard Time) at location of property involved, to an amount not exceeding the amount(s) above specified, does insure the INSURED named above and legal representatives, for any amounts which the INSURED may be entitled to recover under the circumstances defined herein or added hereto.

Assignment of this policy shall not be valid except with the written consent of the Company(ies) identified on Schedule of Insurance.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

# SCHEDULE OF INSURANCE

THIS INSURANCE IS EFFECTED WITH CERTAIN INSURANCE COMPANIES (HEREINAFTER CALLED THE "INSURERS").

THE LIABILITY OF EACH INSURER ON THIS CONTRACT WITH THE INSURED IS LIMITED TO THE PARTICIPATION AMOUNT SHOWN IN THE SCHEDULE BELOW. THE LIABILITY OF EACH INSURER FOR ANY LOSS OR LOSSES OR AMOUNTS PAYABLE IS SEVERAL AS TO EACH AND SHALL NOT EXCEED ITS PARTICIPATION PERCENTAGE SHOWN BELOW AND THERE IS NO JOINT LIABILITY OF ANY INSURER PURSUANT TO THIS CONTRACT. AN INSURER SHALL NOT HAVE ITS LIABILITY HEREUNDER INCREASED OR DECREASED BY REASON OF FAILURE OR DELAY OF ANOTHER INSURER, ITS SUCCESSORS, ASSIGNS, OR LEGAL REPRESENTATIVES.

THIS CONTRACT SHALL BE CONSTRUED AS A SEPARATE CONTRACT BETWEEN THE INSURED AND EACH OF THE INSURERS.

IN WITNESS WHEREOF, THE FOLLOWING COMPANY(IES) AND/OR UNDERWRITERS EXECUTE AND ATTEST THESE PRESENTS, AND SUBSCRIBE FOR THE AMOUNTS OF THE INSURANCE PROVIDED HEREUNDER AS SHOWN:

**INSURED'S NAME:** **WESTRIDGE TOWNHOMES ASSOCIATION**

| INSURERS AND ASSIGNED POLICY NUMBERS | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|
| AGRICULTURAL INSURANCE COMPANY<br>POL # CPP 3995131 | $ 4,026,600. | $ 5,025. |
| GREENWICH INSURANCE COMPANY<br>POL # ACG 3395131 | $ 2,684,400. | $ 3,350. |
| **TOTALS:** | **$ 6,711,000.** | **$ 8,375.** |

**THIS SCHEDULE FORMS A PART OF THE ORIGINAL FORM #SUB-A.**

By: Larry E. Kessler
Authorized Representative

## CONDITIONS

1. **MISREPRESENTATION AND FRAUD:** This policy shall be void if the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the Insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.
2. VALUATION: UNLESS OTHERWISE PROVIDED IN FORM ATTACHED, THIS COMPANY SHALL NOT BE LIABLE BEYOND THE ACTUAL CASH VALUE OF THE PROPERTY AT THE TIME ANY LOSS OR DAMAGE OCCURS AND THE LOSS OR DAMAGE SHALL BE ASCERTAINED OR ESTIMATED ACCORDING TO SUCH ACTUAL CASH VALUE WITH PROPER DEDUCTION FOR DEPRECIATION, HOWEVER CAUSED, AND SHALL IN NO EVENT EXCEED WHAT IT WOULD THEN COST TO REPAIR OR REPLACE THE SAME WITH MATERIAL OF LIKE KIND AND QUALITY.
3. PAIR AND SET: IT IS UNDERSTOOD AND AGREED THAT, IN THE EVENT OF LOSS OR DAMAGE TO ANY ARTICLE OR ARTICLES WHICH ARE A PART OF A SET, THE MEASURE OF LOSS OR DAMAGE TO SUCH ARTICLE OR ARTICLES SHALL BE A REASONABLE AND FAIR PROPORTION OF THE TOTAL VALUE OF THE SET, GIVING CONSIDERATION TO THE IMPORTANCE OF SAID ARTICLE OR ARTICLES, BUT IN NO EVENT SHALL LOSS OR DAMAGE BE CONSTRUED TO MEAN TOTAL LOSS OF SET.
4. **PARTS:** In case of loss or injury to any part of the insured property consisting, when complete for sale or use, of several parts, this Company shall only be liable for the insured value of the part lost or damaged.
5. **SUE AND LABOR:** In case of loss or damage, it shall be lawful and necessary for the Insured, his or their factors, servants and assigns, to sue, labor, and travel for, in and about the defense, safeguard and recovery of the property insured hereunder, or any part thereof without prejudice to this insurance, nor shall the acts of the Insured or this Company, in recovering, saving and preserving the property insured in case of loss or damage, be considered a waiver or an acceptance of abandonment; to the charge whereof this Company will contribute according to the rate and quantity of the sum herein insured.
6. **NOTICE OF LOSS:** The Insured shall as soon as practicable report to this Company or its agent every loss or damage which may become a claim under this policy and shall also file with the Company or its agent within ninety (90) days from the date of loss a detailed sworn proof of loss. Failure by the Insured to report the said loss or damage and to file such sworn proof of loss as hereinbefore provided shall invalidate any claim under this policy for such loss.
7. **DOUBLE RECOVERY:** No loss shall be paid hereunder if the Insured has collected the same from others.
8. **LABELS:** In case of loss affecting labels, capsules or wrappers, the loss shall be adjusted on the basis of an amount sufficient to pay the cost of new labels, capsules or wrappers, and reconditioning the goods.
9. **OTHER INSURANCE:** It is expressly agreed that this insurance shall not cover to the extent of any other valid and collectible insurance whether prior or subsequent hereto in date, and by whomsoever effected, directly or indirectly covering the same property, and this Company shall be liable for loss or damage only for the excess value beyond the amount of such other insurance.
10. **PAYMENT OF LOSS:** All adjusted claims shall be paid or made good to the Insured within sixty (60) days after presentation and acceptance of satisfactory proof of interest and loss at the office of this Company.
11. **REINSTATEMENT:** Unless this policy is issued on a reporting or readjustment basis, it is understood that the amount of insurance hereunder shall be reduced by the amount of any loss covered by this policy, but the Company and the Insured shall be deemed to have agreed that the full amount insured be reinstated automatically in the event of loss and that a pro rata additional premium is payable from the date of the loss.
12. **IMPAIRMENT OF CARRIER'S LIABILITY:** Any act or agreement by the Insured prior or subsequent hereto, whereby any right of the Insured to recover, the full value of, or amount of damage to, any property lost or damaged and insured hereunder, against any carrier, bailee or other party liable therefor, is released, impaired or lost, shall render this policy null and void, but this Company's right to retain or recover the premium shall not be affected. It is agreed, however, that the Insured may, without prejudice to this insurance, accept the ordinary bills of lading issued by carriers. This Company is not liable for any loss or damage which, without its consent, has been settled or compromised by the Insured.
13. **EXAMINATION UNDER OATH:** The Insured shall submit, and so far as is within his or their power shall cause all other persons interested in the property and members of the household and employees to submit, to examinations under oath by any persons named by the Company, relative to any and all matters in connection with a claim and subscribe the same, and shall produce for examination all books of account, bills, invoices, and other vouchers or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Company or its representatives and shall permit extracts and copies thereof to be made.
14. **APPRAISAL:** If the Insured and the Company fail to agree as to the amount of loss, each shall, on the written demand of either, made within sixty (60) days after receipt of proof of loss by the Company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for fifteen (15) days to agree upon such umpire, then, on the request of the Insured or the Company, such umpire shall be selected by a judge of a court of record in the state in which such appraisal is pending. The appraisers shall then appraise the loss, stating separately the actual cash value at the time of loss and the amount of loss, and failing to agree shall submit their differences to the umpire an award in writing of any two shall determine the amount of loss the Insured and the Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire the Company shall not be held to have waived any of its rights by any act relating to appraisal.
15. **BENEFIT OF INSURANCE:** This insurance shall not inure directly or indirectly to the benefit of any carrier or other bailee.
16. **SUBROGATION:** In the event of any payment under this policy the Company shall be surrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.
17. **SUIT AGAINST COMPANY:** No suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the Insured of the occurrence which gives rise to the claim. Provided, however, that if by the laws of the State within which this policy is issued such limitation is invalid, then any such claims shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such State to be fixed herein.
18. **CANCELLATION:** This policy may be cancelled by the Insured by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Insured at the address shown in this policy or last known address written notice stating when not less than ten (10) days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date of cancellation stated in the notice either by the Insured or by the Company shall be equivalent to mailing. If the Insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premiums shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The Company's check or the check of its representative mailed or delivered as aforesaid shall be sufficient tender of any refund or premium due to the Insured.

Should this policy be on a reporting basis, the Insured agrees to furnish this Company with an accurate statement showing the total value covered hereunder by this policy between the date of its attachment up to and including the date of cancellation and further agrees to pay premium on this amount at the rate stated in the premium adjustment clause, if the premium thus determined exceeds the initial premium paid, the amount of such excess shall immediately become due and payable to this Company, or any unearned premium (being the amount by which the initial premium exceeds the premium due), shall be returned to the Insured.

**19. THIS COMPANY SHALL NOT BE LIABLE UNDER THIS POLICY FOR LOSS CAUSED BY OR RESULTING FROM:**

1. Fire and Lightning caused directly or indirectly, by:
   (a) Enemy attack by armed forces, including action taken by military, naval or air forces in resisting an actual or an immediately impending enemy attack, (b) invasion, (c) insurrection, (d) rebellion, (e) revolution, (f) civil war, (g) usurped power, (h) order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, providing that such fire did not originate from any of the perils excluded by this policy.
2. Any Peril other than Fire and Lightning caused, directly or indirectly, by:
   (a) Hostile or warlike action in the time of peace or war, including action in hindering, combating, or defending against an actual, impending, or expected attack by (a) any government or sovereign power (de jure or de facto,) or by any authority maintaining or using military, naval, or air forces, (2) military, naval, or air forces, or (3) an agent of any such government, power, authority, or forces, it being understood that any discharge, explosion, or use of any weapon of war employing nuclear fission or fusion shall be conclusively presumed to be such a hostile or warlike action by such a government, power, authority, or forces.
   (b) Insurrection rebellion, revolution, civil war, usurp power, or action taken by governmental authority in hindering, combating, or defending against such an occurrence.
3. Nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximately or remote, or be in whole or in part caused by, contributed to or aggravated by any of the perils insured against; however, subject to the foregoing and all provisions of this policy, direct loss by fire resulting from nuclear reaction, or nuclear radiation or radioactive contamination is insured against by this policy if the peril of fire is provided in the insuring conditions of the term(s) attached to this policy.

**20. TIME OF ATTACHMENT:** If coverages in this Policy replace coverages in other policies which terminate at noon on the inception date of this policy, this policy shall be construed to attach at noon (Standard Time) on its inception date as respects such replaced coverages only, instead of 12:01 A.M. (Standard Time).

**21. CONFLICT WITH THE STATUES:** Terms of this policy which are in conflict with the statues of the State wherein this policy is issued. are hereby amended to conform to such statutes.

**IN WITNESS WHEREOF,** the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Michael P. Fujii
President

Kenneth Wm. Woods
Chairman and Chief Executive Office

## DIFFERENCE IN CONDITIONS

1. **INSURING AGREEMENT** -- THIS POLICY INSURES AGAINST ALL RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE FROM ANY EXTERNAL CAUSE EXCEPT AS HEREINAFTER EXCLUDED, WHILE ANYWHERE WITHIN THE FIFTY STATES OF THE UNITED STATES OF AMERICA AND THE DISTRICT OF COLUMBIA AS MORE FULLY SET FORTH IN PARAGRAPH NUMBER 4 BELOW.

2. **PROPERTY OR INTEREST COVERED** -- THIS POLICY COVERS PROPERTY DESCRIBED IN ITEMS A, B, C, D AND E BELOW BUT NO COVERAGE ATTACHES UNDER ANY ITEMS UNLESS AN "X" IS INSERTED IN THE BOX PRECEDING THAT ITEM:

   **(X) ITEM A -** ON BUILDING(S) AND/OR STRUCTURE(S) IN ALL PARTS, INCLUDING ADDITIONS AND/OR EXTENSIONS IN CONTACT THEREWITH (REGARDLESS OF CONSTRUCTION) AND ON ALL PROPERTY BELONGING TO AND/OR CONSTITUTING A PERMANENT PART OF SAID BUILDINGS AND/OR STRUCTURES AND PERTAINING TO THE SERVICE, UPKEEP, MAINTENANCE AND OPERATION THEREOF; ALL WHICH NOW IS OR MAY HEREAFTER DURING THE TERM OF THIS POLICY BECOME AT THE RISK OF THE INSURED.

   **(X) ITEM B -** ON STOCK, MATERIALS AND SUPPLIES OF EVERY DESCRIPTION USUAL OR INCIDENTAL TO THE OPERATIONS OF THE INSURED INCLUDING THE INSURED'S INTEREST IN MATERIALS, LABOR AND CHARGES FURNISHED, PERFORMED ON, OR INCURRED IN CONNECTION WITH PROPERTY OF OTHERS.

   **(X) ITEM C -** ON FURNITURE, FIXTURES, EQUIPMENT AND MACHINERY BEING PROPERTY OF THE INSURED, OR SIMILAR PROPERTIES OF OTHERS IN THE CARE, CUSTODY OR CONTROL OF THE INSURED AND FOR WHICH THE INSURED IS LIABLE IN THE EVENT OF LOSS.

   **( ) ITEM D -** ON THE INSURED'S INTEREST IN TENANTS' IMPROVEMENTS AND BETTERMENTS TO BUILDINGS, BEING FIXTURES, ALTERATIONS, INSTALLATIONS OR ADDITIONS COMPRISING PART OF A BUILDING(S) OCCUPIED BUT NOT OWNED BY THE INSURED AND MADE AT THE EXPENSE OF THE INSURED.

   **( X) ITEM E -** BUSINESS INTERRUPTION, EXTRA EXPENSE, RENTAL VALUE OR OTHER TIME ELEMENT COVERAGES AS MORE SPECIFICALLY COVERED AND DEFINED IN THE ATTACHED FORM(S) NUMBER(S): CP 00 30 10 91

3. **LIMIT OF LIABILITY:**

   (A) THE LIMIT OF LIABILITY OF THIS COMPANY IN RESPECT TO EACH AND EVERY LOSS OCCURRENCE SHALL NOT EXCEED:

   $ 6,711,000. LOSS LIMIT PER SCHEDULE OF INSURANCE FORM#SUB-B

   (B) AS RESPECTS LOSS OR DAMAGE CAUSED BY OR RESULTING FROM EARTHQUAKE, THE LIMIT OF LIABILITY DURING ANY ONE POLICY YEAR SHALL NOT EXCEED:

   $ 6,711,000. LOSS LIMIT PER SCHEDULE OF INSURANCE FORM#SUB-B

   ***EARTHQUAKE DEFINED:*** FOR THE PURPOSES OF THIS INSURANCE, ***"EARTHQUAKE"*** IS DEFINED AS LOSS CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED BY ANY OF THE FOLLOWING:

   EARTH MOVEMENT, MEANING NATURAL FAULTING OF LAND MASSES, NOT INCLUDING SUBSIDENCE, LANDSLIDE, ROCK SLIDE, MUD FLOW, EARTH RISING, EARTH SINKING, EARTH SHIFTING OR SETTLING; UNLESS, AS A DIRECT RESULT OF SUCH EARTH MOVEMENT.

(C) AS RESPECTS LOSS OR DAMAGE CAUSED BY OR RESULTING FROM FLOOD, THE LIMIT OF LIABILITY DURING ANY ONE POLICY YEAR SHALL NOT EXCEED:

$ 6,711,000. LOSS LIMIT PER SCHEDULE OF INSURANCE FORM#SUB-B

***FLOOD DEFINED:***   FOR THE PURPOSES OF THIS INSURANCE, ***"FLOOD"*** IS DEFINED AS A GENERAL AND TEMPORARY CONDITION OF PARTIAL OR COMPLETE INUNDATION OF NORMALLY DRY LAND AREA FROM:

(A) THE OVERFLOW OF INLAND OR TIDAL WATERS, INCLUDING TIDAL WAVE OR WASH,

(B) THE UNUSUAL AND RAPID ACCUMULATION OF RUNOFF OF SURFACE WATERS FROM ANY SOURCE,

(C) SPRAY FROM ANY OF THE FOREGOING; ALL WHETHER DRIVEN BY WIND OR NOT.

FLOOD SHALL ALSO MEAN MUDSLIDE OR MUD FLOW, WHICH IS A RIVER OR FLOW OF LIQUID MUD CAUSED BY FLOODING AS DEFINED ABOVE.

4. **SCHEDULE OF LOCATIONS COVERED:**  THIS POLICY COVERS INSURED PROPERTY ONLY AT SUCH LOCATIONS AS ARE EITHER: 1) SPECIFICALLY LISTED IN PARAGRAPH (A) BELOW OR, 2) ARE INCLUDED WITHIN PARAGRAPH (B) BELOW BUT ONLY FOR THE LIMIT OF LIABILITY SET OUT BELOW SUBJECT TO THE LIMITS OF LIABILITY SET OUT IN PARAGRAPH NUMBER 3 ABOVE:

(A) PROPERTY OF INTERESTS AT THE LOCATION(S) SPECIFICALLY IDENTIFIED BELOW:


24601-24808 45TH PLACE S.
KENT, WASHINGTON  98032



(B) N/A   . ON PROPERTY AT ANY OTHER LOCATIONS IF REPORTED WITHIN  60 DAYS.

5. **PROPERTY EXCLUDED:**

(A) ACCOUNTS, BILLS, DEEDS, EVIDENCES OF DEBT, CURRENCY, MONEY, NOTES, SECURITIES, STAMPS, ORIGINAL DRAWINGS AND SPECIFICATIONS, LETTERS OF CREDIT, PASSPORTS, TICKETS OR VALUABLE PAPERS;

(B) ANIMALS, STANDING TIMBER, GROWING PLANTS OR SHRUBS (EXCEPT WHEN HELD FOR SALE OR WHEN USED FOR DECORATIVE PURPOSES INSIDE BUILDINGS), GROWING CROPS, MOTOR VEHICLES LICENSED OR DESIGNED PRINCIPALLY FOR HIGHWAY USE, WATERCRAFT, AIRCRAFT, MOTORCYCLES, MOTOR SCOOTERS AND OTHER SIMILAR VEHICLES LICENSED OR DESIGNED PRINCIPALLY FOR HIGHWAY USE;

(C) PROPERTY SOLD BY THE INSURED UNDER CONDITIONAL SALES, TRUST AGREEMENTS, INSTALLMENT PAYMENTS OR OTHER DEFERRED PAYMENT PLANS AFTER DELIVERY TO CUSTOMERS;

(D) PROPERTY IN TRANSIT;

(E) STEAM BOILERS, STEAM PIPES, STEAM TURBINES, OR STEAM ENGINES OWNED OR OPERATED BY THE INSURED AGAINST LOSS BY BURSTING, RUPTURE OR EXPLOSION OF SUCH OBJECTS;

(F) MACHINES OR MACHINERY AGAINST LOSS BY RUPTURE, BURSTING OR DISINTEGRATING OF ROTATING OR MOVING PARTS;

(G) CONTRACTOR'S EQUIPMENT;

(H) JEWELRY, WATCHES, PEARLS, PRECIOUS AND SEMI-PRECIOUS STONES, GOLD, SILVER, PLATINUM, OTHER PRECIOUS METALS OR ALLOYS, BULLION, FURS AND ARTICLES TRIMMED WITH FUR;

(I) ELECTRONIC DATA PROCESSING EQUIPMENT INCLUDING COMPUTERS, ELECTRONIC ACCOUNTING MACHINES, ALL SUPPORTING MACHINERY, MAGNETIC TAPES, DISCS, CARDS, ANY STORAGE DEVICE AND ALL SOFTWARE INCLUDING PROCEDURES, PROGRAMS OR SOURCE MATERIAL OF ANY KINDS;

(J) POWER TRANSMISSION AND/OR FEEDER LINES NOT ON THE INSURED'S PREMISES;

(K) LAND, LAND VALUES OR WATER;

(L) RAILROAD ROLLING STOCK.

**6. PERILS EXCLUDED:**

THIS POLICY DOES NOT INSURE AGAINST:

(A) (1) FIRE AND LIGHTNING AS SET FORTH IN A STANDARD FIRE INSURANCE POLICY, EXTENDED COVERAGE PERILS, VANDALISM AND MALICIOUS MISCHIEF AND SPRINKLER LEAKAGE ALL AS MORE FULLY DEFINED AND LIMITED IN THE FORMS APPROVED BY THE RATING BUREAU HAVING JURISDICTION WHERE THE PROPERTY IS LOCATED; WHETHER OR NOT INSURANCE FOR SUCH PERILS IS BEING MAINTAINED BY THE INSURED AT THE TIME OF THE LOSS AND WHETHER OR NOT SUCH LOSS OR DAMAGE IS DIRECTLY OR INDIRECTLY CAUSED BY OR CONTRIBUTED TO BY A PERIL COVERED UNDER THIS POLICY;

(2) OTHER PERILS AS DEFINED AND LIMITED, AND TO THE EXTENT INSURED UNDER POLICIES INSURING AGAINST PERILS CARRIED BY THE INSURED OR UNDER ANY OTHER MORE SPECIFIC INSURANCE ARRANGED FOR AND IN THE NAME OF THE INSURED;

(B) WATER BELOW THE SURFACE OF THE GROUND INCLUDING THAT WHICH EXERTS PRESSURE ON OR FLOWS, SEEPS OR LEAKS THROUGH SIDEWALKS, DRIVEWAYS, FOUNDATIONS, WALLS, BASEMENT OR OTHER FLOORS, OR THROUGH DOORS, WINDOWS OR ANY OTHER OPENINGS IN SUCH SIDEWALKS, DRIVEWAYS, FOUNDATIONS, WALLS OR FLOORS;

(C) MERE DISAPPEARANCE OF PROPERTY OR LOSS OR SHORTAGE OF PROPERTY DISCLOSED ON TAKING INVENTORY;

(D) LOSS OR DAMAGE CAUSED BY OR RESULTING FROM WEAR AND TEAR, MECHANICAL BREAKDOWN, DERANGEMENT, INHERENT VICE, LATENT DEFECT, GRADUAL DETERIORATION, MOTH, VERMIN, RODENTS, TERMITES OR OTHER INSECTS INCLUDING LARVAE OR PUPAE THEREOF;

(E) LOSS OR DAMAGE BY GAS OR SMOKE FROM AGRICULTURAL SMUDGING, SMOG OR INDUSTRIAL OPERATIONS;

(F) LOSS OR DAMAGE CAUSED BY OR RESULTING FROM DAMPNESS OF ATMOSPHERE, DRYNESS OF ATMOSPHERE, EXTREMES OR CHANGES OF TEMPERATURE, SHRINKAGE, EVAPORATION, LOSS OF WEIGHT, LEAKAGE OF CONTENTS, BREAKAGE OF GLASS OR SIMILAR FRAGILE MATERIALS (OTHER THAN LENSES OF PHOTOGRAPHIC OR SCIENTIFIC INSTRUMENTS), MARRING, SCRATCHING, RUST OR CORROSION, EXPOSURE TO LIGHT, CONTAMINATION, CHANGE IN FLAVOR OR COLOR OR TEXTURE OR FINISH;

(G) LOSS OR DAMAGE CAUSED BY OR RESULTING FROM INFIDELITY OF INSURED'S EMPLOYEES OR OF PERSONS TO WHOM THE INSURED'S PROPERTY MAY BE ENTRUSTED;

(H) LOSS OR DAMAGE CAUSED BY OR RESULTING FROM ANY FRAUDULENT SCHEME, TRICK, DEVICE OR FALSE PRETENSE PRACTICED UPON THE INSURED OR UPON ANY PERSON(S) TO WHOM THE PROPERTY MAY BE ENTRUSTED;

(I) LOSS OR DAMAGE CAUSED BY OR RESULTING FROM ELECTRICAL INJURY OR DISTURBANCE TO ELECTRICAL APPLIANCES, FIXTURES OR WIRING CAUSED BY ELECTRICAL CURRENTS ARTIFICIALLY GENERATED, EXCEPT WITH RESPECT TO ENSUING LOSS CAUSED BY OR RESULTING FROM A PERIL NOT OTHERWISE EXCLUDED;

(J) LOSS OR DAMAGE CAUSED BY OR RESULTING FROM:

(1) NORMAL SETTLING, SHRINKAGE OR EXPANSION IN FOUNDATION, WALLS, FLOORS, OR CEILINGS, SUBSIDENCE;

(2) LANDSLIDE UNLESS DIRECTLY CAUSED BY A PERIL INSURED AGAINST;

(3) ENFORCEMENT OF ANY ORDINANCE OR LAW REGULATING THE RECONSTRUCTION, REPAIR OR DEMOLITION OF THE REAL PROPERTY INSURED HEREUNDER;

(K) LOSS OR DAMAGE CAUSED BY OR RESULTING FROM:

(1) HOSTILE OR WARLIKE ACTION IN TIME OF PEACE OR WAR, INCLUDING ACTION IN HINDERING, COMBATING OR DEFENDING AGAINST AN ACTUAL, IMPENDING OR EXPECTED ATTACK (A) BY ANY GOVERNMENT OR SOVEREIGN POWER (DE JURE OR DE FACTO), OR BY ANY AUTHORITY MAINTAINING OR USING MILITARY, NAVAL OR AIR FORCES; OR (B) BY MILITARY, NAVAL OR AIR FORCES; OR (C) BY ANY AGENT OF ANY SUCH GOVERNMENT, POWER, AUTHORITY OR FORCES;

(2) ANY WEAPON OF WAR EMPLOYING ATOMIC FISSION OR RADIOACTIVE FORCE WHETHER IN TIME OF PEACE OR WAR;

(3) INSURRECTION, REBELLION, REVOLUTION, CIVIL WAR, USURPED POWER OR ACTION TAKEN BY GOVERNMENTAL AUTHORITY IN HINDERING, COMBATING OR DEFENDING AGAINST ANY SUCH AN OCCURRENCE, SEIZURE OR DESTRUCTION UNDER QUARANTINE OR CUSTOMS REGULATION, CONFISCATION BY ORDER OF ANY GOVERNMENT OR PUBLIC AUTHORITY, OR RISKS OF CONTRABAND OR ILLEGAL TRANSPORTATION OR TRADE;

(L) THIS COMPANY SHALL NOT BE LIABLE FOR LOSS BY NUCLEAR REACTION OR NUCLEAR RADIATION OR RADIOACTIVE CONTAMINATION ALL WHETHER CONTROLLED OR UNCONTROLLED, AND WHETHER SUCH LOSS BE DIRECT OR INDIRECT, PROXIMATE OR REMOTE, OR BE IN WHOLE OR IN PART CAUSED BY, CONTRIBUTED TO, OR AGGRAVATED BY THE PERIL(S) INSURED AGAINST IN THIS POLICY;

(M) LOSS OR DAMAGE RESULTING FROM THE FREEZING OF PLUMBING OR HEATING SYSTEMS IN VACANT PROPERTIES;

(N) LOSS OR DAMAGE BY PILFERAGE, BURGLARY, LARCENY, THEFT OR ATTEMPTED THEFT IF THE DESCRIBED PROPERTY HAD BEEN VACANT BEYOND PERIOD OF THIRTY (30) DAYS IMMEDIATELY PRECEDING THE LOSS;

(O) ERRORS IN DESIGN, ERRORS IN PROCESSING, FAULTY WORKMANSHIP OR FAULTY MATERIALS, UNLESS THE COLLAPSE OF THE PROPERTY OR A PART THEREOF ENSUES AND THEN ONLY THE ENSUING LOSS;

(P) LOSS OR DAMAGE TO PROPERTY WHILE ACTUALLY BEING WORKED UPON AND DIRECTLY RESULTING THEREFROM, EXCEPT ENSUING LOSS FROM A PERIL NOT OTHERWISE EXCLUDED BY THIS POLICY;

(Q) LOSS OR DAMAGE CAUSED BY EXPOSURE TO ELEMENTS OF THE WEATHER WHERE ANY INSURED PERSONAL PROPERTY IS LEFT IN THE OPEN OR NOT CONTAINED IN BUILDINGS OR PERMANENT FOUNDATIONS;

(R) DELAY, LOSS OF MARKET, LOSS OF USE, INTERRUPTION OF BUSINESS, CONSEQUENTIAL LOSS OF ANY NATURE, UNLESS SPECIFICALLY INSURED UNDER PARAGRAPH 2, ITEM E.

7.  **OTHER INSURANCE --** THIS POLICY DOES NOT ATTACH TO OR BECOME INSURANCE AGAINST ANY PERIL UPON PROPERTY HEREIN DESCRIBED, WHICH AT THE TIME OF ANY LOSS IS COVERED BY OTHER INSURANCE (MEANING INSURANCE IN THE NAME OF THE INSURED BUT NOT WRITTEN UPON THE IDENTICAL PLAN, TERMS, CONDITIONS AND PROVISIONS CONTAINED IN THIS POLICY) UNTIL THE LIABILITY OF SUCH OTHER INSURANCE HAS BEEN EXHAUSTED, AND THEN COVER ONLY SUCH LOSS AS MAY EXCEED THE AMOUNT DUE FROM SUCH OTHER INSURANCE (WHETHER COLLECTIBLE OR NOT) AFTER APPLICATION OF ANY CONTRIBUTION, COINSURANCE, AVERAGE OR DISTRIBUTION OR OTHER CLAUSES CONTAINED IN POLICIES OF SUCH OTHER INSURANCE AFFECTING THE AMOUNT COLLECTIBLE THEREUNDER, NOT HOWEVER, EXCEEDING THE LIMITS AS SET FORTH HEREIN.

8.  **SINGLE LOSS CLAUSE --** EACH LOSS BY EARTHQUAKE SHALL CONSTITUTE A SINGLE CLAIM HEREUNDER, PROVIDED, IF MORE THAN ONE EARTHQUAKE SHOCK SHALL OCCUR WITHIN ANY PERIOD OF SEVENTY-TWO (72) HOURS DURING THE TERM OF THIS POLICY, SUCH EARTHQUAKE SHOCKS SHALL BE DEEMED TO BE A SINGLE EARTHQUAKE WITHIN THE MEANING HEREOF. THIS COMPANY SHALL NOT BE LIABLE FOR ANY LOSS CAUSED BY ANY EARTHQUAKE SHOCK OCCURRING BEFORE THE EFFECTIVE DATE AND TIME OF THIS POLICY, NOR FOR ANY LOSS OCCURRING AFTER THE EXPIRATION DATE AND TIME OF THIS POLICY.

IN NO EVENT SHALL THIS COMPANY BE LIABLE FOR ANY LOSS CAUSED DIRECTLY OR INDIRECTLY BY FIRE, EXPLOSION OR OTHER EXCLUDED PERILS WHETHER THE SAME BE CAUSED BY OR ATTRIBUTABLE TO EARTHQUAKE OR OTHERWISE.

9.  **SUBROGATION WAIVER --** THIS INSURANCE SHALL NOT BE PREJUDICED BY AGREEMENT MADE BY THE NAMED INSURED RELEASING OR WAIVING THE NAMED INSURED'S RIGHT TO RECOVERY AGAINST THIRD PARTIES RESPONSIBLE FOR THE LOSS, UNDER THE FOLLOWING CIRCUMSTANCES ONLY: 1) IF MADE BEFORE LOSS HAS OCCURRED, SUCH AGREEMENT MAY RUN IN FAVOR OF ANY THIRD PARTY; 2) IF MADE AFTER LOSS HAS OCCURRED, SUCH AGREEMENT MAY RUN ONLY IN FAVOR OF A THIRD PARTY FALLING WITHIN ONE OF THE FOLLOWING CATEGORIES AT THE TIME OF LOSS: (A) A THIRD PARTY INSURED UNDER THIS POLICY; OR (B) A CORPORATION, FIRM OR ENTITY (1) OWNED OR CONTROLLED BY THE NAMED INSURED OR IN WHICH THE NAMED INSURED OWNS CAPITAL STOCK OR OTHER PROPRIETARY INTEREST, OR (2) OWNING OR CONTROLLING THE NAMED INSURED OR OWNING OR CONTROLLING CAPITAL STOCK OR OTHER PROPRIETARY INTEREST IN THE NAMED INSURED; (3) WHETHER MADE BEFORE OR AFTER LOSS HAS OCCURRED, SUCH AGREEMENT MUST RELEASE OR WAIVE THE ENTIRE RIGHT OF RECOVERY OF THE NAMED INSURED AGAINST SUCH THIRD PARTY.

10. **LOSS CLAUSE --** ANY LOSS HEREUNDER SHALL NOT REDUCE THE AMOUNT OF THIS POLICY EXCEPT AS RESPECTS EARTHQUAKE AND FLOOD AS PER PARAGRAPH 3 OF THIS FORM.

11. **MISREPRESENTATION AND FRAUD -- THIS ENTIRE POLICY SHALL BE VOID IF, WHETHER BEFORE OR** AFTER A LOSS, THE INSURED HAS CONCEALED OR MISREPRESENTED ANY MATERIAL FACT OR CIRCUMSTANCE CONCERNING THIS INSURANCE OR THE SUBJECT THEREOF, OR THE INTEREST OF THE INSURED THEREIN, OR IN CASE OF ANY FRAUD OR FALSE SWEARING BY THE INSURED RELATING THERETO.

12. **NOTICE OF LOSS** -- THE INSURED SHALL AS SOON AS PRACTICABLE REPORT, IN WRITING, TO THE COMPANY OR ITS AGENT EVERY LOSS DAMAGE OR OCCURRENCE WHICH MAY GIVE RISE TO A CLAIM UNDER THIS POLICY AND SHALL ALSO FILE WITH THE COMPANY OR ITS AGENT WITHIN NINETY (90) DAYS FROM DATE OF DISCOVERY OF SUCH LOSS, DAMAGE OR OCCURRENCE, A DETAILED SWORN PROOF OF LOSS.

13. **EXAMINATION UNDER OATH** -- THE INSURED, AS OFTEN AS MAY BE REASONABLY REQUIRED, SHALL EXHIBIT TO ANY PERSON DESIGNATED BY THE COMPANY ALL THAT REMAINS OF ANY PROPERTY HEREIN DESCRIBED, AND SHALL SUBMIT, AND IN SO FAR AS IS WITHIN HIS OR THEIR POWER CAUSE HIS OR THEIR EMPLOYEES, MEMBERS OF THE HOUSEHOLD AND OTHERS TO SUBMIT TO EXAMINATION UNDER OATH BY ANY PERSON NAMED BY THE COMPANY AND SUBSCRIBED THE SAME; AND, AS OFTEN AS MAY BE REASONABLY REQUIRED, SHALL PRODUCE FOR EXAMINATION ALL WRITING, BOOKS OF ACCOUNT, BILLS, INVOICES AND OTHER VOUCHERS, OR CERTIFIED COPIES THEREOF IF ORIGINALS BE LOST, AT SUCH REASONABLE TIME AND PLACE AS MAY BE DESIGNATED BY THE COMPANY OR ITS REPRESENTATIVE, AND SHALL PERMIT EXTRACTS AND COPIES THEREOF TO BE MADE. NO SUCH EXAMINATIONS UNDER OATH OR EXAMINATION OF BOOKS OR DOCUMENTS, NOR ANY OTHER ACT OF THE COMPANY OR ANY OF ITS EMPLOYEES OR REPRESENTATIVES IN CONNECTION WITH THE INVESTIGATION OF ANY LOSS OR CLAIM HEREUNDER, SHALL BE DEEMED A WAIVER OF ANY DEFENSE WHICH THE COMPANY MIGHT OTHERWISE HAVE WITH RESPECT TO ANY LOSS OR CLAIM, BUT ALL SUCH EXAMINATIONS AND ACTS SHALL BE DEEMED TO HAVE BEEN MADE OR DONE WITHOUT PREJUDICE TO THE COMPANY'S LIABILITY.

14. **PRIVILEGE TO ADJUST WITH OWNER** -- IN THE EVENT OF LOSS OR DAMAGE TO PROPERTY OF OTHERS HELD BY THE INSURED FOR WHICH CLAIM IS MADE UPON THE COMPANY, THE RIGHT TO ADJUST SUCH LOSS OR DAMAGE WITH THE OWNER OR OWNERS OF THE PROPERTY IS RESERVED TO THE COMPANY AND THE RECEIPT OF SUCH OWNER OR OWNERS IN SATISFACTION THEREOF SHALL BE IN FULL SATISFACTION OF ANY CLAIM OF THE INSURED FOR WHICH SUCH PAYMENT HAS BEEN MADE, IF LEGAL PROCEEDINGS BE TAKEN TO ENFORCE A CLAIM AGAINST THE INSURED AS RESPECTS ANY SUCH LOSS OR DAMAGE, THE COMPANY RESERVES THE RIGHT AT ITS OPTION WITHOUT EXPENSE TO THE INSURED, TO CONDUCT AND CONTROL THE DEFENSE ON BEHALF OF AND IN THE NAME OF THE INSURED. NO ACTION OF THE COMPANY IN SUCH REGARD SHALL INCREASE THE LIABILITY OF THE COMPANY UNDER THIS POLICY, NOR INCREASE THE LIMITS OF LIABILITY SPECIFIED IN THE POLICY.

15. **SETTLEMENT OF LOSS** -- ALL ADJUSTED CLAIMS SHALL BE PAID OR MADE GOOD TO THE INSURED WITHIN SIXTY (60) DAYS AFTER PRESENTATION AND ACCEPTANCE OF SATISFACTORY PROOF OF INTEREST AND LOSS AT THE OFFICE OF THE COMPANY. NO LOSS SHALL BE PAID OR MADE GOOD IF THE INSURED HAS COLLECTED THE SAME FROM OTHERS.

16. **NO BENEFIT TO BAILEE --** THIS INSURANCE SHALL IN NO WISE INURE DIRECTLY OR INDIRECTLY TO THE BENEFIT OF ANY CARRIER OR OTHER BAILEE.

17. **PAIR, SET OR PARTS --** IN THE EVENT OF LOSS OF OR DAMAGE TO:

    (A) ANY ARTICLE OR ARTICLES WHICH ARE A PART OF A PAIR OR SET, THE MEASURE OF LOSS OF OR DAMAGE TO SUCH ARTICLE OR ARTICLES SHALL BE A REASONABLE AND FAIR PROPORTION OF THE TOTAL VALUE OF THE PAIR OR SET, GIVING CONSIDERATION TO THE IMPORTANCE OF SAID ARTICLE OR ARTICLES, BUT IN NO EVENT SHALL SUCH LOSS OR DAMAGE BE CONSTRUED TO MEAN TOTAL LOSS OF THE PAIR OR SET, OR

(B) ANY PART OF PROPERTY COVERED CONSISTING, WHEN COMPLETE FOR USE OR SALE, OF SEVERAL PARTS, THE COMPANY SHALL ONLY BE LIABLE FOR THE VALUE OF THE PART LOST OR DAMAGED.

18. **RECORDS AND INVENTORY** -- THE INSURED SHALL KEEP ACCURATE BOOKS, RECORDS AND ACCOUNTS IN THE FOLLOWING MANNER: A DETAILED AND ITEMIZED INVENTORY RECORD OF ALL PROPERTY COVERED HEREUNDER SHALL BE MAINTAINED AND PHYSICAL INVENTORY SHALL BE TAKEN PERIODICALLY AT INTERVALS NOT MORE THAN TWELVE (12) MONTHS APART.

19. **EXAMINATION OF RECORDS** -- THE INSURED SHALL, AS OFTEN AS MAY BE REASONABLY REQUIRED DURING THE TERM OF THIS POLICY AND FOR ONE (1) YEAR THEREAFTER, PRODUCE FOR EXAMINATION BY THE COMPANY OR ITS DULY AUTHORIZED REPRESENTATIVE ALL THE BOOKS AND RECORDS, INVENTORIES AND ACCOUNTS RELATING TO THE PROPERTY COVERED HEREUNDER.

20. **SUIT** -- NO SUIT, ACTION OR PROCEEDING FOR THE RECOVERY OF ANY CLAIM UNDER THIS POLICY SHALL BE SUSTAINABLE IN ANY COURT OF LAW OR EQUITY UNLESS THE SAME BE COMMENCED WITHIN TWELVE (12) MONTHS NEXT AFTER DISCOVERY BY THE INSURED OF THE OCCURRENCE WHICH GIVES RISE TO A CLAIM, PROVIDED HOWEVER, THAT IF BY THE LAWS OF THE STATE WITHIN THIS POLICY IS ISSUED SUCH LIMITATION IS INVALID, THEN ANY SUCH CLAIMS SHALL BE VOID UNLESS SUCH ACTION, SUIT OR PROCEEDING BE COMMENCED WITHIN THE SHORTEST LIMIT OF TIME PERMITTED BY THE LAWS OF SUCH STATE.

21. **APPRAISAL** -- IF THE INSURED AND THE COMPANY FAIL TO AGREE AS TO THE AMOUNT OF LOSS, EACH SHALL ON THE WRITTEN DEMAND OF EITHER, MADE WITHIN SIXTY (60) DAYS AFTER RECEIPT OF PROOF OF LOSS BY THE COMPANY, SELECT A COMPETENT AND DISINTERESTED APPRAISER, AND THE APPRAISAL SHALL BE MADE AT A REASONABLE TIME AND PLACE. THE APPRAISERS SHALL FIRST SELECT A COMPETENT AND DISINTERESTED UMPIRE, AND FAILING FOR FIFTEEN (15) DAYS TO AGREE UPON SUCH UMPIRE, THEN, ON THE REQUEST OF THE INSURED OR THE COMPANY, SUCH SHALL BE SELECTED BY A JUDGE OF A COURT OF RECORD IN THE STATE IN WHICH SUCH APPRAISAL IS PENDING. THE APPRAISERS SHALL THEN APPRAISE THE LOSS, STATING SEPARATELY THE ACTUAL CASH VALUE AT THE TIME OF LOSS AND THE AMOUNT OF LOSS, AND FAILING TO AGREE SHALL SUBMIT THEIR DIFFERENCES TO THE UMPIRE. AN AWARD IN WRITING OF ANY TWO SHALL DETERMINE THE AMOUNT OF LOSS. THE INSURED AND THE COMPANY SHALL EACH PAY HIS OR ITS CHOSEN APPRAISER AND SHALL BEAR EQUALLY THE OTHER EXPENSES OF THE APPRAISAL AND UMPIRE. THE COMPANY SHALL NOT BE HELD TO HAVE WAIVED ANY OF ITS RIGHTS BY ANY ACT RELATING TO APPRAISAL.

22. **COMPANY'S OPTIONS** -- IT SHALL BE OPTIONAL WITH THE COMPANY TO TAKE ALL, OR ANY PART, OF THE PROPERTY AT THE AGREED OR APPRAISED VALUE, OR TO REPAIR, REBUILD OR REPLACE THE PROPERTY DESTROYED OR  DAMAGED WITH OTHER OF LIKE KIND AND QUALITY WITHIN A REASONABLE TIME, ON GIVING NOTICE OF ITS INTENTIONS TO DO SO WITHIN SIXTY (60) DAYS AFTER THE RECEIPT OF THE PROOF OF LOSS HEREIN REQUIRED.

23. **ABANDONMENT** -- THERE CAN BE NO ABANDONMENT TO THE COMPANY OF ANY PROPERTY.

24. **CLAIMS AGAINST THIRD PARTIES** -- IN THE EVENT OF ANY LOSS OF OR DAMAGE TO THE PROPERTY COVERED HEREUNDER THE INSURED SHALL IMMEDIATELY MAKE CLAIM IN WRITING AGAINST THE CARRIER(S), BAILEE(S) OR OTHERS INVOLVED.

25. **LABELS** -- IN THE EVENT OF LOSS OF OR DAMAGE TO LABELS, CAPSULES OR WRAPPERS, THE LOSS SHALL BE ADJUSTED ON THE BASIS OF AN AMOUNT SUFFICIENT TO PAY THE COST OF NEW LABELS, CAPSULES OR WRAPPERS.

26. **ASSISTANCE AND COOPERATION OF THE INSURED --** IN THE EVENT THIS POLICY COVERS THE INSURED'S LIABILITY, THE INSURED SHALL COOPERATE WITH THE COMPANY AND, UPON THE COMPANY'S REQUEST, SHALL ATTEND HEARINGS AND TRIALS AND SHALL ASSIST IN EFFECTING SETTLEMENTS, SECURING AND GIVING EVIDENCE, OBTAINING THE ATTENDANCE OF WITNESSES AND IN THE CONDUCT OF SUITS. THE INSURED SHALL NOT, EXCEPT AT HIS OWN COST, VOLUNTARILY MAKE PAYMENT, ASSUME ANY OBLIGATION OR INCUR ANY EXPENSE WITHOUT THE WRITTEN CONSENT OF THE COMPANY.

27. **DEBRIS REMOVAL --**

    1. THIS POLICY COVERS EXPENSES INCURRED IN THE REMOVAL OF ALL DEBRIS OF THE PROPERTY COVERED HEREUNDER WHICH MAY BE OCCASIONED BY LOSS CAUSED BY ANY OF THE PERILS INSURED AGAINST, SUBJECT HOWEVER, TO THE LIMIT OF LIABILITY.

    2. THIS COMPANY SHALL NOT BE LIABLE UNDER THIS POLICY AND THIS CLAUSE FOR:

       (A) MORE THAN THE AMOUNT OF INSURANCE PROVIDED IN THIS POLICY;

       (B) ANY GREATER PROPORTION OF SUCH EXPENSE THAN THE AMOUNT OF INSURANCE HEREUNDER BEARS TO THE TOTAL AMOUNT OF ALL INSURANCE, WHETHER ALL SUCH INSURANCE CONTAINS THIS CLAUSE OF NOT; NOR

       (C) LOSS OCCASIONED BY THE ENFORCEMENT OF ANY STATE OR MUNICIPAL LAW OR ORDINANCE WHICH NECESSITATES THE DEMOLITION OF ANY PORTION OF THE BUILDING COVERED HEREUNDER WHICH HAS NOT SUFFERED DAMAGE BY ANY OF THE PERILS INSURED AGAINST IN THIS POLICY, UNLESS SUCH LIABILITY IS OTHERWISE SPECIFICALLY INSURED BY THIS POLICY.

    3. IF THIS POLICY IS DIVIDED INTO TWO OR MORE ITEMS, THE FOREGOING SHALL APPLY SEPARATELY TO SUCH ITEM.

28. **CANCELLATION --** THIS POLICY MAY BE CANCELLED BY THE INSURED BY MAILING TO THE COMPANY WRITTEN NOTICE STATING WHEN THEREAFTER SUCH CANCELLATION SHALL BE EFFECTIVE. THIS POLICY MAY BE CANCELLED BY THE COMPANY BY MAILING TO THE INSURED AT THE ADDRESS SHOWN IN THIS POLICY OR LAST KNOWN ADDRESS WRITTEN NOTICE STATING WHEN NOT LESS THAN FORTY-FIVE (45) DAYS THEREAFTER SUCH CANCELLATION SHALL BE EFFECTIVE; HOWEVER, CANCELLATION DUE TO NON-PAYMENT OF PREMIUM SHALL REQUIRE TEN (10) DAYS WRITTEN NOTICE OF CANCELLATION. THE MAILING OF NOTICE AS AFOREMENTIONED SHALL BE SUFFICIENT PROOF OF NOTICE AND THE EFFECTIVE DATE OF CANCELLATION STATED IN THE NOTICE SHALL BECOME THE END OF THE POLICY PERIOD. DELIVERY OF SUCH WRITTEN NOTICE EITHER BY THE INSURED OR BY THE COMPANY SHALL BE EQUIVALENT TO MAILING.

29. **ALL OTHER MATTERS --** ALL MATTERS NOT PROVIDED FOR HEREIN OR BY ENDORSEMENT HEREON SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE COMPANY'S PRINTED POLICY FORM TO WHICH THIS FORM IS ATTACHED AND WHICH HAS BEEN ISSUED IN CONJUNCTION HEREWITH. THE FOREGOING CLAUSES SHALL, HOWEVER, BE CONSIDERED TO SUPERSEDE AND ANNUL ANY CLAUSES THEREIN WHICH MAY BE OF THE SAME OR SIMILAR NATURE.

30. **STATUTORY REQUIREMENTS --** IT IS HEREBY UNDERSTOOD AND AGREED THAT IF PROPERTY COVERED UNDER THIS POLICY IS LOCATED IN A STATE THAT REQUIRES A STATUTORY POLICY OR STANDARD FORM(S) AT VARIANCE WITH THIS POLICY OR THE FORM(S) ATTACHED HERETO, THEN THIS INSURANCE SHALL COVER SUCH PROPERTY IN ACCORDANCE WITH THE PROVISIONS OF SUCH REQUIRED POLICY OR FORM(S).

31. **VALUATION** -- THIS COMPANY SHALL NOT BE LIABLE FOR MORE THAN THE ACTUAL CASH VALUE OF THE PROPERTY AT THE TIME ANY LOSS OR DAMAGE OCCURS AND THE LOSS OR DAMAGE SHALL BE ASCERTAINED OR ESTIMATED ACCORDING TO SUCH ACTUAL CASH VALUE WITH PROPER DEDUCTION FOR DEPRECIATION, HOWEVER CAUSED, AND SHALL IN NO EVENT EXCEED WHAT IT WOULD THEN COST TO REPAIR OR REPLACE THE SAME WITH MATERIAL OF LIKE KIND AND QUALITY, NOR THE AMOUNT FOR WHICH THE INSURED MAY BE LIABLE.

32. **EXCESS INSURANCE** -- PERMISSION IS GRANTED THE INSURED TO HAVE EXCESS INSURANCE OVER THE LIMIT OF LIABILITY SET FORTH IN THIS POLICY WITHOUT PREJUDICE TO THIS POLICY AND THE EXISTENCE OF SUCH INSURANCE, IF ANY, SHALL NOT REDUCE ANY LIABILITY UNDER THIS POLICY.

33. **SALVAGE AND RECOVERIES** -- ALL SALVAGE, RECOVERIES AND PAYMENTS RECOVERED OR RECEIVED SUBSEQUENT TO THE LOSS SETTLEMENT UNDER THIS POLICY SHALL BE APPLIED AS IF RECOVERED OR RECEIVED PRIOR TO THE SAID SETTLEMENT AND ALL NECESSARY ADJUSTMENTS SHALL BE MADE BY THE PARTIES HERETO.

ATTACHED TO AND FORMING PART OF POLICY NUMBER **CPP 3995131 AGRICULTURAL INSURANCE COMPANY** AND POLICY NUMBER **ACG 3395131 GREENWICH INSURANCE COMPANY.**

# ENDORSEMENT

**AGRICULTURAL INSURANCE COMPANY**
**GREENWICH INSURANCE COMPANY**

**POLICY NO. CPP 3995131**
**POLICY NO. ACG 3395131**

**Insured:** WESTRIDGE TOWNHOMES ASSOCIATION

**Endorsement No.:** 1

**Additional:** **Return:**

**Effective Date of Endorsement:** AUGUST 4, 1999

**Premium:** **$** N/A

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT**

IT IS UNDERSTOOD AND AGREED THAT THE FOLLOWING SPECIAL TERMS AND CONDITIONS APPLY TO THIS POLICY:

1. THE LIMIT OF LIABILITY OR AMOUNT OF INSURANCE SHOWN ON THE FACE OF THIS POLICY, OR ENDORSED ONTO THIS POLICY, IS A LIMIT OR AMOUNT PER OCCURRENCE. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, IN NO EVENT SHALL THE LIABILITY OF THIS COMPANY EXCEED THIS LIMIT OR AMOUNT IN ONE DISASTER, CASUALTY OR EVENT, IRRESPECTIVE OF THE NUMBER OF LOCATIONS INVOLVED.

2. THE PREMIUM FOR THIS POLICY IS BASED UPON THE STATEMENT OF VALUES ON FILE WITH THE COMPANY, OR ATTACHED TO THIS POLICY. IN THE EVENT OF LOSS HEREUNDER, LIABILITY OF THE COMPANY SHALL BE LIMITED TO THE LEAST OF THE FOLLOWING:

   (A) THE ACTUAL ADJUSTED AMOUNT OF LOSS, LESS APPLICABLE DEDUCTIBLE(S)

   (B) THE TOTAL STATED VALUE FOR THE PROPERTY INVOLVED, AS SHOWN ON THE LATEST STATEMENT OF VALUES ON FILE WITH THE COMPANY, LESS APPLICABLE DEDUCTIBLE(S)

   (C) THE LIMIT OF LIABILITY OR AMOUNT OF INSURANCE SHOWN ON THE FACE OF THIS POLICY OR ENDORSED INTO THIS POLICY.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

By: [signature]
Authorized Representative

# ENDORSEMENT

| | |
|---|---|
| **AGRICULTURAL INSURANCE COMPANY** | **POLICY NO. CPP 3995131** |
| **GREENWICH INSURANCE COMPANY** | **POLICY NO. ACG 3395131** |

**Insured:** WESTRIDGE TOWNHOMES ASSOCIATION

**Endorsement No.:** 2

**Additional:** **Return:**

**Effective Date of Endorsement:** AUGUST 4, 1999

**Premium:** $ N/A

---

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## REQUIREMENT FOR "ALL RISK" COVERAGE

IT IS UNDERSTOOD AND AGREED THAT THE INSURED SHALL MAINTAIN UNDERLYING ALL RISK COVERAGE FROM THE INCEPTION OF THIS POLICY TO THE EXPIRATION OF THIS POLICY, EQUIVALENT TO STANDARD FORM ISO SPECIAL CAUSE OF LOSS FORM CP 10 30.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

By: Larry E. Lesler [signature]
Authorized Representative

# ENDORSEMENT

**AGRICULTURAL INSURANCE COMPANY**
**GREENWICH INSURANCE COMPANY**

**POLICY NO. CPP 3995131**
**POLICY NO. ACG 3395131**

**Insured:** WESTRIDGE TOWNHOMES ASSOCIATION

**Endorsement No.:** 3

**Additional:** **Return:**

**Effective Date of Endorsement:** AUGUST 4, 1999

**Premium:** $ N/A

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**REPLACEMENT COST ENDORSEMENT**

This endorsement applies only to item(s) of insurance specified on the first page of this policy or by endorsement.

1. The provisions of this policy are amended to substitute the term "replacement cost" (without deduction for depreciation) for the term "actual cash value" wherever it appears in this policy subject, however, in all other respects to the provisions of this endorsement and of the policy to which this endorsement is attached.

2. This endorsement shall not apply to stock (raw, in process or finished) or merchandise, including materials and supplies in connection therewith, property of others, household furniture or residential contents; or to manuscripts; or to paintings, etchings, pictures, tapestries, statuary, marbles, bronzes, antique furniture, rate books, antique silver, porcelains, rare glassware and bric-a-brac, or other articles of art, rarity or antiquity.

3. This Company shall not be liable under this endorsement for any loss:

   A. occasioned directly or indirectly by enforcement of any ordinance or law regulating the use, construction repair or demolition of property unless such liability has been specifically assumed under this policy;

   B. unless and until the damaged or destroyed property is actually repaired or replaced by the Insured with due diligence and dispatch.

4. The Insured may elect to make claim under this policy in accordance with its provisions, disregarding this endorsement, and the Insured may make further claim for any additional liability brought about by this endorsement in accordance with its provision, provided this Company is notified, in writing, within 180 days after loss of the Insured's intent to make such further claim.

5. This Company's liability for loss on a replacement cost basis shall not exceed the smallest of the following amounts:

   A. the amount of this policy applicable to the damaged or destroyed property;
   B. the replacement cost of the property or any part thereof identical with such property and intended for the same occupancy and use; or
   C. the amount actually and necessarily expended in repairing or replacing said property or any part thereof.

6. If the coverage on property under this policy be divided into two or more items, all of the foregoing shall apply separately to each item to which this endorsement applies.

By: Larry E. Keeler
Authorized Representative

# ENDORSEMENT

| | |
|---|---|
| AGRICULTURAL INSURANCE COMPANY | POLICY NO. CPP 3995131 |
| GREENWICH INSURANCE COMPANY | POLICY NO. ACG 3395131 |

| | | | |
|---|---|---|---|
| Insured: | WESTRIDGE TOWNHOMES ASSOCIATION | Endorsement No.: | 4 |
| | | Additional: | Return |
| Effective Date of Endorsement: | AUGUST 4, 1999 | Premium: | $ N/A |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Type of Coverage:** **DIFFERENCE IN CONDITIONS INCLUDING EARTHQUAKE AND FLOOD**

## DEDUCTIBLE PROVISIONS

The word "claim" as used in this policy respecting any deductible amount means the aggregate of this Company's share of all loss in the category to which such deductible amount applies arising out of any one loss occurrence. Each such loss shall be adjusted (net of salvage, subrogation recoveries and any other recoveries) as if these deductible provisions did not apply. As respects any such claim, this company shall then be liable only for the excess (if any) thereof over such deductible amount.

Deductible Amount:

The following deductible amounts shall apply to each claim for loss or damage in the respective loss categories indicated:

A. All claims, except Earthquake and Flood, as described in B. below = $25,000.

B. Earthquake and Flood: This Company shall not be liable for loss per unit of insurance covered hereunder unless such loss exceeds the respective percentage stated below and then only for its proportion of such excess:

(1) 5% of the value (as defined elsewhere herein) per unit covered hereunder to which the loss occurs at the time when such loss shall happen. In the application of the Earthquake deductible amount, each of the following shall be considered a separate unit:

(a) Each separate and unadjoining building or structure

(b) The contents of each separate and unadjoining building or structure

(c) Property in each yard.

(d) Business Interruption

Subject to a minimum combined deductible of $ 25,000. Per Occurrence for all coverages insured for Earthquake and Flood hereunder.

BY: Barry E. Bessler
Authorized Representative

EDP

# ENDORSEMENT

**AGRICULTURAL INSURANCE COMPANY**
**GREENWICH INSURANCE COMPANY**

**POLICY NO. CPP 3995131**
**POLICY NO. ACG 3395131**

**Insured:** WESTRIDGE TOWNHOMES ASSOCIATION

**Endorsement No.:** 5

**Additional:** **Return:**

**Effective Date of Endorsement:** AUGUST 4, 1999

**Premium:** **$** N/A

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**MINIMUM PREMIUM**

IT IS AGREED THAT IN THE EVENT OF CANCELLATION OF THIS POLICY BY THE INSURED AS SPECIFIED HEREIN, OR FOR NON-PAYMENT OF PREMIUM THE MINIMUM RETAINED PREMIUM WILL BE NOT LESS THAN TWENTY-FIVE PERCENT (25%) OF THE ANNUAL PREMIUM.

NOTHING IN THIS ENDORSEMENT IS DEEMED TO AFFECT THE COMPANY'S CANCELLATION RIGHTS.

IT IS FURTHER AGREED THAT A RETURN PREMIUM MAY BE ALLOWED ON A PRO-RATA BASIS IF CANCELLED BY THE COMPANY.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

By: Barry E. Kessler
Authorized Representative

EMP
201-2-7/5

# ENDORSEMENT

**AGRICULTURAL INSURANCE COMPANY**
**GREENWICH INSURANCE COMPANY**

**POLICY NO. CPP 3995131**
**POLICY NO. ACG 3395131**

**Insured:** WESTRIDGE TOWNHOMES ASSOCIATION

**Endorsement No.:** 6

**Additional:** **Return:**

**Effective Date of Endorsement:** AUGUST 4, 1999

**Premium:** **$** N/A

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ABSOLUTE POLLUTION EXCLUSION**

THIS POLICY DOES NOT APPLY TO ANY LOSS, DEMAND, CLAIM OR SUIT ARISING OUT OF OR IN ANY WAY RELATED TO POLLUTION INCLUDING ANY COST OR EXPENSE ARISING OUT OF OR IN ANY WAY RELATED TO TESTING FOR, MONITORING, CLEANING UP, REMOVING, CONTAINING, TREATING, DETOXIFYING, OR NEUTRALIZING POLLUTION.

THE COMPANY SHALL HAVE NO DUTY OF ANY KIND WITH RESPECT TO ANY SUCH LOSS, DEMAND, CLAIM OR SUIT.

THIS ENDORSEMENT APPLIES TO ALL COVERAGES UNDER THIS POLICY.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

BY: Larry E. Lesler
Authorized Representative

# ENDORSEMENT

**AGRICULTURAL INSURANCE COMPANY**
**GREENWICH INSURANCE COMPANY**

**POLICY NO. CPP 3995131**
**POLICY NO. ACG 3395131**

**Insured:** WESTRIDGE TOWNHOMES ASSOCIATION

**Endorsement No.:** 7

**Additional:** **Return:**

**Effective Date of Endorsement:** AUGUST 4, 1999

**Premium:** **$** N/A

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ASBESTOS EXCLUSION

THIS POLICY DOES NOT APPLY TO ANY LOSS, DEMAND, CLAIM OR SUIT ARISING OUT OF OR RELATED IN ANY WAY TO ASBESTOS OR ASBESTOS CONTAINING MATERIALS.

THE COMPANY SHALL HAVE NO DUTY OF ANY KIND WITH RESPECT TO ANY SUCH LOSS, DEMAND, CLAIM OR SUIT.

THIS EXCLUSION APPLIES TO ALL COVERAGES UNDER THIS POLICY.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

BY: Larry E. Keeler
Authorized Representative

# ENDORSEMENT

**AGRICULTURAL INSURANCE COMPANY**
**GREENWICH INSURANCE COMPANY**

**POLICY NO. CPP 3995131**
**POLICY NO. ACG 3395131**

**Insured:** WESTRIDGE TOWNHOMES ASSOCIATION

**Endorsement No.:** 8

**Additional:** **Return:**

**Effective Date Of Endorsement:** AUGUST 4, 1999

**Premium:** **$** N/A

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THE FOLLOWING SUB-LIMIT APPLIES AS RESPECTS BUILDING ORDINANCE COVERAGE FORM CP 04 05 11 85:**

$ 250,000. BUILDING ORDINANCE

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS,OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

By: Larry E. Kessler
Authorized Representative

# BUILDING ORDINANCE COVERAGE

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
DIFFERENCE IN CONDITIONS COVERAGE

**A.** If a Covered Cause of Loss occurs to covered Building property, we will pay:

1. For loss or damage caused by enforcement of any law that:

   **a.** Requires the demolition of parts of the same property not damaged by a Cov-ered Cause of Loss;

   **b.** Regulates the construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

   **c.** Is in force at the time of loss.

2. The increased cost to repair, rebuild or construct the property caused by enforce-ment of building, zoning or land use law. If the property is repaired or rebuilt, it must be intended for similar occupancy as the current property, unless otherwise required by zon-ing or land use law.

3. The cost to demolish and clear the site of undamaged parts of the property caused by enforcement of the building, zoning or land use law.

**B.** We will not pay for increased construction costs under this endorsement:

1. Until the property is actually repaired or re-placed, at the same premises or elsewhere; and

2. Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed 2 years. We may extend this period in writing during the 2 years.

**C.** We will not pay more:

1. If the property is repaired or replaced on the same premises, than the amount you actually spend to:

   **a.** Demolish and clear the site; and

   **b.** Repair, rebuild or construct the property but not for more than property of the same height, floor area and style on the same premises.

2. If the property is not repaired or replaced on the same premises, than:

   **a.** The amount you actually spend to demo-lish and clear the site of the described premises; and

   **b.** The cost to replace, on the same premises, the damaged or destroyed property with other property:

Copyright, ISO Commercial Risk Services, Inc., 1983

    (1) Of comparable material and quality;

(2) Of the same height, floor area and style; and

(3) Used for the same purpose.

D. The terms of this endorsement apply separately to each building to which the endorsement applies.

Copyright, ISO Commercial Risk Services, Inc., 1983

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY
DIFFERENCE IN CONDITIONS COVERAGE

**A.** We will not pay for the ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

1. The failure, malfunction or inadequacy of:

   **a.** any of the following, whether belonging to any Insured or to others:

   (1) computer hardware, including microprocessors;

   (2) computer application software;

   (3) computer operating systems and related software;

   (4) computer networks;

   (5) microprocessors (computer chips) not part of any computer system; or

   (6) any other computerized or electronic equipment or components; or

   **b.** any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

   due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

2. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

1. in a Covered Cause of Loss under the Boiler And Machinery Coverage Part, the Commercial Crime Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

2. under the Commercial Property Coverage Part:

   **a.** in a "Specified Cause of Loss," or in elevator collision resulting from mechanical breakdown, under the Causes of Loss – Special Form; or

   **b.** in a Covered Cause of Loss under the Causes of Loss – Basic Form or the Causes of Loss – Broad Form;

we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss," elevator collision, or Covered Cause of Loss.

**C.** We will not pay for repair, replacement or modification of any items in Paragraph **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiences or change any features.

Copyright, Insurance Services Office, Inc., 1998

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BUSINESS INCOME AND/OR EXTRA EXPENSE COVERAGE FOR YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

This endorsement modifies the insurance provided under the following:

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM
EXTRA EXPENSE COVERAGE FORM
DIFFERENCE IN CONDITIONS COVERAGE

**SCHEDULE**

**Described Premises**

See Paragraph 4. SCHEDULE OF LOCATIONS COVERED: on Page 2 of 9 of the attached DIFFERENCE IN CONDITIONS FORM.

*Information required to complete this Schedule, if not on this endorsement, will be shown in the Declarations.

**A.** The provisions of Endorsement **IL 09 35** do not apply to the coverage provided under this endorsement.

**B.** As used in this endorsement, the word Computer and the term Computer Failure have the following meanings:

1. **Computer** means computer hardware, including microprocessors; computer application software; computer operating systems and related software; computer networks; microprocessors (computer chips) not part of any computer system; or any other computerized or electronic equipment or components.

2. **Computer Failure** means the failure, malfunction or inadequacy of a Computer due to the inability to correctly recognize, distinguish, interpret or accept the year 2000 and beyond.

**C.** If this endorsement is attached to the **BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM,** the following apply:

1. Subject to Paragraph **I.,** this endorsement covers actual loss of Business Income you sustain caused by Computer Failure at the premises described in the Schedule, or at another location if the off-premises described in the Schedule, or at another location if the off-premises Computer interfaces with a Computer at the described premises or is otherwise used in the "operations" of the business at the described premises.

Copyright, Insurance Services Office, Inc., 1997

2. Subject to Paragraph I., this endorsement covers the actual and necessary Extra Expense you incur due to Computer Failure at the premises described in the Schedule, or at another location if the off-premises Computer interfaces with a computer at the described premises or is otherwise used in the "operations" of the business at the described premises. Extra Expense means necessary expenses you incur that you would not have incurred if there had been no Computer Failure. Extra Expense includes expenses for repair, modification or replacement of the Computer but only to the extent that such expenses reduce the amount of Business Income loss that otherwise would have been payable under the provisions of this endorsement.

D. If this endorsement is attached to the **BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM,** the following apply:

1. Subject to Paragraph **I.,** this endorsement covers actual loss of Business Income you sustain caused by Computer Failure at the premises described in the Schedule, or at another location if the off-premises Computer interfaces with a Computer at the described premises or is otherwise used in the "operations" of the business at the described premises.

2. Subject to Paragraph **I.,** this endorsement covers Expenses to Reduce Loss. In the event of a covered loss of Business Income under this endorsement, we will pay actual and necessary expenses you incur to avoid further loss of Business Income, including expenses for repair, modification or replacement of the Computer. The total of our payment for Business Income Loss and Expenses to Reduce Loss will not be more than the Business Income Loss that would have been payable under this endorsement if the Expenses to Reduce Loss had not been incurred.

E. If this endorsement is attached to the **EXTRA EXPENSE COVERAGE FORM,** the following apply:

Subject to Paragraph I., this endorsement covers the actual and necessary Extra Expense you incur due to Computer Failure at the premises described in the Schedule, or at another location if the off-premises Computer interfaces with a Computer at the described premises or is otherwise used in the "operations" of the business at the described premises. Extra Expense means necessary expenses you incur that you would not have incurred if there had been no Computer Failure. But Extra Expense does not include expenses for repair, modification or replacement of the Computer.

F. The coverage set forth in Paragraphs **C., D.,** and **E.** does not apply to any loss you sustain or any expense you incur due to the failure of power or other utility service supplied to the described premises, caused by Computer Failure, whether or not this policy includes the Utility Services – Time Element endorsement.

G. The coverage set forth in Paragraph **C., D.** and **E.** does not apply to a Computer Failure that affects the business "operations" at the described premises prior to the inception date of this endorsement.

H. With respect to an instance of Computer Failure, coverage under this endorsement ends 30 days after the Computer Failure is corrected, or when there is no further loss or expense caused by that Computer Failure, whichever comes first.

I. The most we will pay under this endorsement for the total of all losses and/or expenses sustained in any one policy year is $25,000, regardless of the number of Computer Failures or the number of Computers involved in any Computer Failure.

The $25,000 limit is not subject to the Coinsurance Condition of the Coverage Form. Nor is payment under this endorsement affected by the Maximum Period Of Indemnity, Monthly Limit Of Indemnity or Business Income Agreed Value coverages or the Loss Condition titled Limits On Loss Payment.

Copyright, Insurance Services Office, Inc., 1997

CP 00 30 10 91

# BUSINESS INCOME COVERAGE FORM (AND EXTRA EXPENSE)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION G—**DEFINITIONS**.

**A. COVERAGE**

Coverage is provided as described below for one or more of the following options for which a Limit of Insurance is shown in the Declarations:

**(i)** Business Income including "Rental Value".

**(ii)** Business Income other than "Rental Value".

**(iii)** "Rental Value".

If option **(i)** above is selected, the term Business Income will include "Rental Value". If option **(iii)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the premises described in the Declarations, including personal property in the open (or in a vehicle) within 100 feet, caused by or resulting from any Covered Cause of Loss.

**1. Business Income**

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

**2. Covered Causes Of Loss.**

See applicable Causes of Loss Form as shown in the Declarations.

**3. Additional Coverages**

**a. Extra Expense.**

Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

**(1)** We will pay any Extra Expense to avoid or minimize the suspension of business and to continue "operations":

**(a)** At the described premises; or

**(b)** At replacement premises or at temporary locations, including:

**(i)** Relocation expenses; and

**(ii)** Costs to equip and operate the replacement or temporary locations.

**(2)** We will pay any Extra Expense to minimize the suspension of business if you cannot continue "operations".

**(3)** We will pay any Extra Expense to:

**(a)** Repair or replace any property; or

**(b)** Research, replace or restore the lost information on damaged valuable papers and records;

to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**b. Civil Authority.** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss. This coverage will apply for a period of up to two consecutive weeks from the date of that action.

**c. Alterations and New Buildings.** We will pay for the actual loss of Business Income you sustain due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

**(a)** Used in the construction, alterations or additions; or

Copyright, ISO Commercial Risk Services Inc., 1983, 1990

    (b) Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

d. **Extended Business Income.** We will pay for the actual loss of Business Income you incur during the period that:

(1) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

(2) Ends on the earlier of:

(a) The date you could restore your "operations", with reasonable speed, to the condition that would have existed if no direct physical loss or damage occurred; or

(b) 30 consecutive days after the date determined in **(1)** above.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**4. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

a. You may extend your Business Income Coverage to apply to property at any location you acquire other than fairs or exhibitions.

b. The most we will pay for loss under this Extension is 10% of the Limit of Insurance for Business Income shown in the Declarations, but not more than $100,000 at each location.

c. Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

(1) This policy expires;

(2) 30 days expire after you acquire or begin to construct the property; or

(3) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

This Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**B. EXCLUSIONS**

See applicable Causes of Loss Form as shown in the Declarations.

**C. LIMITS OF INSURANCE**

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The limit applicable to the Coverage Extension is in addition to the Limit of Insurance.

Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

**1.** Alterations and New Buildings;

**2.** Civil Authority;

**3.** Extra Expense; or

**4.** Extended Business Income.

**D. LOSS CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Loss**

a. You must see that the following are done in the event of loss:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when, and where the direct physical loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

(5) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(6) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(7) Cooperate with us in the investigation or settlement of the claim.

(8) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3. Limitation—Electronic Media And Records**

We will not pay for any loss of Business Income caused by direct physical loss of or damage to Electronic Media and Records after the longer of:

**a.** 60 consecutive days from the date of direct physical loss or damage; or

**b.** The period, beginning with the date of direct physical loss or damage, necessary to repair, rebuild or replace, with reasonable speed and similar quality, other property at the described premises due to loss or damage caused by the same occurrence.

Electronic Media and Records are:

(1) Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

(2) Data stored on such media; or

(3) Programming records used for electronic data processing or electronically controlled equipment.

This limitation does not apply to Extra Expense.

**Example No. 1:**

A Covered Cause of Loss damages a computer on June 1. It takes until September 1 to replace the computer, and until October 1 to restore the data that was lost when the damage occurred. We will only pay for the Business Income loss sustained during the period June 1—September 1. Loss during the period September 2—October 1 is not covered.

**Example No. 2:**

A Covered Cause of Loss results in the loss of data processing programming records on August 1. The records are replaced on October 15. We will only pay for the Business Income loss sustained during the period August 1—September 29 (60 consecutive days). Loss during the period September 30—October 15 is not covered.

**4. Loss Determination**

**a.** The amount of Business Income loss will be determined based on:

(1) The Net Income of the business before the direct physical loss or damage occurred;

(2) The likely Net Income of the business if no loss or damage occurred;

(3) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

(4) Other relevant sources of information, including:

(a) Your financial records and accounting procedures;

(b) Bills, invoices and other vouchers; and

(c) Deeds, liens or contracts.

**b.** The amount of Extra Expense will be determined based on:

(1) All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

(a) The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

(b) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

(2) All necessary expenses that reduce the Business Income loss that otherwise

would have been inc d.

c. **Resumption Of Operations**

We will reduce the amount of your:

(1) Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

(2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

d. If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

5. **Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if:

a. You have complied with all of the terms of this Coverage Part; and

b. (1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

E. **ADDITIONAL CONDITION**

**Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any loss if the Limit of Insurance for Business Income is less than:

a. The Coinsurance percentage shown for Business Income in the Declarations; times

b. The sum of:

(1) The Net Income (Net Profit or Loss before income taxes), and

(2) All operating expenses, including payroll expenses,

that would have been earned (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Instead, we will determine the most we will pay using the following steps:

1. Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

2. Divide the Limit of Insurance for the described premises by the figure determined in step 1; and

3. Multiply the to amount of loss by the figure determined in step 2.

We will pay the amount determined in step 3. or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example No. 1** (Underinsurance):

When: The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been $400,000

The Coinsurance percentage is 50%

The Limit of Insurance is $150,000

The amount of loss is $ 80,000

Step 1: $400,000 x 50% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step 2: $150,000 ÷ $200,000 = .75

Step 3: $ 80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example No. 2** (Adequate Insurance):

When: The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been $400,000

The Coinsurance percentage is 50%

The Limit of Insurance is $200,000

The amount of loss is $ 80,000

Step 1: $400,000 x 50% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step 2: $200,000 ÷ $200,000 = 1.00

Step 3: $ 80,000 x 1.00 = $80,000

We will cover the $80,000 loss. No penalty applies.

This condition does not apply to the Extra Expense Additional Coverage.

F. **OPTIONAL COVERAGES**

If shown in the Declarations, the following Optional Coverages apply separately to each item.

1. **Maximum Period Of Indemnity**

a. The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

b. The most we will pay for loss of Business Income is the lesser of:

(1) The amount of loss sustained during the 120 days immediately following the direct physical loss or damage; or

(2) The Limit of Insurance shown in the Declarations.

2. **Monthly Limit Of Indemnity**

a. The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

b. The most we will pay for loss of Business Income in each period of 30 consecutive days after the direct physical loss or damage is:

(1) The Limit of Insurance, multiplied by

(2) The fraction shown in the Declarations for this Optional Coverage.

**Example:**

When: The Limit of Insurance is $120,000

The fraction shown in the Declarations for this Optional Coverage is ¼

The most we will pay for loss in each period of 30 consecutive days is: $120,000 x ¼ = $30,000

If, in this example, the actual amount of loss is:

| | |
|---|---|
| Days 1-30 | $40,000 |
| Days 31-60 | 20,000 |
| Days 61-90 | 30,000 |
| | $90,000 |

We will pay:

| | |
|---|---|
| Days 1-30 | $30,000 |
| Days 31-60 | 20,000 |
| Days 61-90 | 30,000 |
| | $80,000 |

The remaining $10,000 is not covered.

3. **Agreed Value**

a. To activate this Optional Coverage:

(1) A Business Income Report/Work Sheet must be made a part of this policy and must show financial data for your "operations":

(a) During the 12 months prior to the date of the Work Sheet; and

(b) Estimated for the 12 months immediately following the inception of this Optional Coverage.

(2) An Agreed Value must be shown in the Declarations or on the Work Sheet. The Agreed Value should be at least equal to:

(a) The Coinsurance percentage shown in the Declarations; multiplied by

(b) The amount of Net Income and Operating Expenses for the following 12 months you report on the Work Sheet.

b. The Additional Condition, Coinsurance, is suspended until:

(1) 12 months after the effective date of this Optional Coverage; or

(2) The expiration date of this policy;

whichever occurs first.

c. We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

(1) Within 12 months of the effective date of this Optional Coverage; or

(2) When you request a change in your Business Income Limit of Insurance.

d. If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

(1) The Business Income Limit of Insurance; divided by

(2) The Agreed Value.

**Example:**

When: The Limit of Insurance is $100,000

The Agreed Value is $200,000

The amount of loss is $ 80,000

Step (a): $100,000 ÷ $200,000 = .50

Step (b): .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

4. **Extended Period Of Indemnity**

Under paragraph **A.3.d.**, Extended Business Income, the number "30" in subparagraph **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

## G. DEFINITIONS

1. "Finished Stock" means stock you have manufactured.

"Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

"Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

2. "Operations" means:

a. Your business activities occurring at the described premises; and

b. The tenantability of the described premises, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

3. "Period of Restoration" means the period of time that:

a. Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

b. Ends on the date when the property at the

described premises shou be repaired, rebuilt or replaced with reasonable speed and similar quality.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**4.** "Pollutants" means any solid, liquid, gaseous or thermal irrit or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**5.** "Rental Value" means the:

**a.** Total anticipated rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, and

**b.** Amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be your obligations, and

**c.** Fair rental value of any portion of the described premises which is occupied by you.

# Exhibit C

AMERICAN CUSTOM
INSURANCE SERVICES, INC.

# AMERICAN CUSTOM INSURANCE SERVICES, INC.

801 SOUTH FIGUEROA STREET, SUITE 700
LOS ANGELES, CA 90017
Telephone (213) 430-4300 • Fax (213) 683-8009
License No. 0B09730

**INSURED'S NAME AND MAILING ADDRESS:**

WESTRIDGE TOWNHOMES ASSOCIATION
C/O MICHAEL TAYLOR, INC.
10647 N.E. SECOND STREET
BELLEVUE, WASHINGTON 98004

**Policy Number(s): CPP 5628683 / ACG 3328683**

**PRODUCER NAME AND ADDRESS:**

SWETT & CRAWFORD
2001 6TH AVENUE, SUITE 2500
SEATTLE, WASHINGTON 98121

PRODUCER CODE: 392787

| AUGUST 4, 2000 | AUGUST 4, 2001 | ONE | 12:01 A.M. |
|---|---|---|---|
| Inception (Month, Day, Year) | Expiration (Month, Day, Year) | Years | Standard Time at the address of the Insured |

| Amount of Insurance | Prepaid Term Premium Due at Inception |
|---|---|
| $6,904,100. | |

**TOTAL AMOUNT DUE** **$ 8,696.00**

| Amount | Description, Perils and Locations of Insured |
|---|---|
| $6,904,000. PER OCCURRENCE AND SEPARATE ANNUAL AGGREGATE AS RESPECTS EARTHQUAKE AND FLOOD. | DIFFERENCE IN CONDITIONS OF DIRECT PHYSICAL DAMAGE OR LOSS INCLUDING EARTHQUAKE AND FLOOD COVERING BUIDINGS, BUSINESS PERSONAL PROPERTY, INCLDUING BUILDING ORDINANCE COVERAGE AND BUSINESS INCOME/LOSS OF FEES/EXTRA EXPENSE AS PER FORM ATTACHED. |

**PRIMARY DEDUCTIBLE(S) OR UNDERLYING LIMITS:** **AS PER ENDORSEEMENT NO. 1**

**ENDORSEMENT(S) OR FORMS ATTACHED:**
**ENDORSEMENT(S) NO. 1 THRU 2; CP 04 05 10 90; IL 09 35 8/98; CP 15 57 8/98; CP 00 30 10 91; GAI3006-7/00 AND IL 01 46 11 98**

DATE OF ISSUE: 8/22/00

BY: Larry E. Kessler
Authorized Representative

IN CONSIDERATION OF THE PROVISIONS AND STIPULATIONS HEREIN OR ADDED HERETO AND OF the premium above specified, the Company(ies) identified on Schedule of Insurance, for the term of years specified above from inception date shown above at 12:01 A.M. (Standard Time) to expiration date shown above at 12:01 A.M. (Standard Time) at location of property involved, to an amount not exceeding the amount(s) above specified, does insure the INSURED named above and legal representatives, for any amounts which the INSURED may be entitled to recover under the circumstances defined herein or added hereto.

Assignment of this policy shall not be valid except with the written consent of the Company(ies) identified on Schedule of Insurance.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

COMPANY COPY

GAI 3004A - 12/99

# SCHEDULE OF INSURANCE

**INSURED'S NAME:** WESTRIDGE TOWNHOMES ASSOCIATION

THIS INSURANCE IS EFFECTED WITH CERTAIN INSURANCE COMPANIES (HEREINAFTER CALLED THE "INSURERS").

THE LIABILITY OF EACH INSURER ON THIS CONTRACT WITH THE INSURED IS LIMITED TO THE PARTICIPATION AMOUNT SHOWN IN THE SCHEDULE BELOW. THE LIABILITY OF EACH INSURER FOR ANY LOSS OR LOSSES OR AMOUNTS PAYABLE IS SEVERAL AS TO EACH AND SHALL NOT EXCEED ITS LIMIT OF LIABILITY AS SHOWN BELOW AND THERE IS NO JOINT LIABILITY OF ANY INSURER PURSUANT TO THIS CONTRACT. AN INSURER SHALL NOT HAVE ITS LIABILITY HEREUNDER INCREASED OR DECREASED BY REASON OF FAILURE OR DELAY OF ANOTHER INSURER, ITS SUCCESSORS, ASSIGNS, OR LEGAL REPRESENTATIVES.

THIS CONTRACT SHALL BE CONSTRUED AS A SEPARATE CONTRACT BETWEEN THE INSURED AND EACH OF THE INSURERS.

IN WITNESS WHEREOF, THE FOLLOWING COMPANY(IES) AND/OR UNDERWRITERS EXECUTE AND ATTEST THESE PRESENTS, AND SUBSCRIBE FOR THE AMOUNTS OF THE INSURANCE PROVIDED HEREUNDER AS SHOWN:

| INSURERS AND ASSIGNED POLICY NUMBERS | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|
| AGRICULTURAL INSURANCE COMPANY<br>POL # CPP 5628683 | $4,487,665. | $5,652. |
| GREENWICH INSURANCE COMPANY<br>POL # ACG 3328683 | $2,416,435. | $3,044. |
| **TOTALS:** | **$6,904,100.** | **$8,696.** |

**THIS SCHEDULE FORMS A PART OF THE ORIGINAL FORM #GAI 3004A.**

BY: Larry E. [signature]
**AUTHORIZED SIGNATURE**

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured and the first Named Insured's agent or broker written notice of cancellation, including the actual reason for the cancellation, to the last mailing address known to us, at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 45 days before the effective date of cancellation if we cancel for any other reason,

   except as provided in Paragraphs **3.** and **4.** below.
3. We may cancel the Commercial Property Coverage Part, if made a part of this policy, by mailing or delivering to the first Named Insured and the first Named Insured's agent or broker written notice of cancellation at least 5 days before the effective date of cancellation for any structure where 2 or more of the following conditions exist:
   a. Without reasonable explanation, the structure is unoccupied for more than 60 consecutive days, or at least 65% of the rental units are unoccupied for more than 120 consecutive days unless the structure is maintained for seasonal occupancy or is under construction or repair;
   b. Without reasonable explanation, progress toward completion of permanent repairs to the structure has not occurred within 60 days after receipt of funds following satisfactory adjustment or adjudication of loss resulting from a fire;
   c. Because of its physical condition, the structure is in danger of collapse;
   d. Because of its physical condition, a vacation or demolition order has been issued for the structure, or it has been declared unsafe in accordance with applicable law;
   e. Fixed and salvageable items have been removed from the structure, indicating an intent to vacate the structure;
   f. Without reasonable explanation, heat, water, sewer, and electricity are not furnished for the structure for 60 consecutive days; or
   g. The structure is not maintained in substantial compliance with fire, safety and building codes.
4. If:
   a. You are an individual;
   b. A covered auto you own is of the "private passenger type"; and
   c. The policy does not cover garage, automobile sales agency, repair shop, service station or public parking place operations hazards,

   we may cancel the Commercial Auto Coverage Part by mailing or delivering to the first Named Insured and the first Named Insured's agent or broker written notice of cancellation, including the actual reason for cancellation, to the last mailing address known to us:
   a. At least 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. At least 10 days before the effective date of cancellation for any other reason if the policy is in effect less than 30 days; or
   c. At least 20 days before the effective date of cancellation for other than nonpayment if the policy is in effect 30 days or more; or
   d. At least 20 days before the effective date of cancellation if the policy is in effect for 60 days or more or is a renewal or continuation policy, and the reason for cancellation is that your driver's license or that of any driver who customarily uses a covered "auto" has been suspended or revoked during policy period.

 Copyright, Insurance Services Office, Inc., 1998  □

5. We will also mail or deliver to any mortgage holder, pledgee or other person shown in this policy to have an interest in any loss which may occur under this policy, at their last mailing address known to us, written notice of cancellation, prior to the effective date of cancellation. If cancellation is for reasons other than those contained in Paragraph **A.3.** above, this notice will be the same as that mailed or delivered to the first Named Insured. If cancellation is for a reason contained in Paragraph **A.3.** above, we will mail or deliver this notice at least 20 days prior to the effective date of cancellation.

6. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

7.a. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata.

b. For Division Two – Boiler and Machinery, if the first Named Insured cancels, the refund will be at least 75% of the pro rata refund.

c. Except as provided in Paragraph **b.** above and **d.** below, if the first Named Insured cancels, the refund will be at least 90% of the pro rata refund.

d. If:

(1) You are an individual;

(2) A covered auto you own is of the "private passenger type";

(3) The policy does not cover garage, automobile sales agency, repair shop, service station or public parking place operations hazards; and

(4) The first Named Insured cancels,

the refund will be not less than 90% of any unearned portion not exceeding $100, plus 95% of any unearned portion over $100 but not exceeding $500, and not less than 97% of any unearned portion in excess of $500.

e. The cancellation will be effective even if we have not made or offered a refund.

8. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

The policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspection And Surveys**

1. We have the right to:

a. Make inspections and surveys at any time;

b. Give you reports on the conditions we find; and

c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

a. Are safe or healthful; or

b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

 Copyright, Insurance Services Office, Inc., 1998

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**G. Nonrenewal**

1. We may elect not to renew this policy by mailing or delivering written notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured and the first Named Insured's agent or broker, at their last mailing addresses known to us. We will also mail to any mortgage holder, pledgee or other person shown in this policy to have an interest in any loss which may occur under this policy, at their last mailing address known to us, written notice of nonrenewal. We will mail or deliver these notices at least 45 days before the:

   a. Expiration of the policy; or

   b. Anniversary date of this policy if this policy has been written for a term of more than one year.

   Otherwise, we will renew this policy unless:

   a. The first Named Insured fails to pay the renewal premium after we have expressed our willingness to renew, including a statement of the renewal premium, to the first Named Insured and the first Named Insured's insurance agent or broker, at least 20 days before the expiration date; or

   b. Other coverage acceptable to the insured has been procured prior to the expiration date of the policy.

2. If:

   a. You are an individual;

   b. A covered auto you own is of the "private passenger type"; and

   c. The policy does not cover garage, automobile sales agency, repair shop, service station or public parking place operations hazards,

   the following applies to nonrenewal of the Commercial Auto Coverage Part in place of G.1.:

   a. We may elect not to renew or continue this policy by mailing or delivering to you and your agent or broker written notice at least 20 days before the end of the policy period including the actual reason for nonrenewal. If the policy period is more than one year, we will have the right not to renew or continue it only at an anniversary of its original effective date. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

   b. We will not refuse to renew Liability Coverage or Collision Coverage solely because an "insured" has submitted claims under Comprehensive Coverage or Towing and Labor Coverage.

   c. If we fail to mail or deliver proper notice of nonrenewal and you obtain other insurance this policy will end on the effective date of that insurance.

 Copyright, Insurance Services Office, Inc., 1998

**DIFFERENCE IN CONDITIONS**

1. **INSURING AGREEMENT** -- THIS POLICY INSURES AGAINST RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE FROM ANY EXTERNAL CAUSE EXCEPT AS HEREINAFTER EXCLUDED, WHILE ANYWHERE WITHIN THE FIFTY STATES OF THE UNITED STATES OF AMERICA AND THE DISTRICT OF COLUMBIA AS MORE FULLY SET FORTH IN PARAGRAPH NUMBER 4 BELOW.

2. **PROPERTY OR INTEREST COVERED** -- THIS POLICY COVERS AS DESCRIBED IN ITEMS A, B, C, D AND E BELOW BUT NO COVERAGE ATTACHES UNDER ANY ITEMS UNLESS AN "X" IS INSERTED IN THE BOX PRECEDING THAT ITEM:

   **(X) ITEM A -** ON BUILDING(S) AND/OR STRUCTURE(S) IN ALL PARTS, ADDITIONS AND/OR EXTENSIONS IN CONTACT THEREWITH (REGARDLESS OF CONSTRUCTION) AND ON ALL PROPERTY BELONGING TO AND/OR CONSTITUTING A PERMANENT PART OF SAID BUILDINGS AND/OR STRUCTURES AND PERTAINING TO THE SERVICE, UPKEEP, MAINTENANCE AND OPERATION THEREOF; ALL WHICH NOW IS OR MAY HEREAFTER DURING THE TERM OF THIS POLICY BECOME AT THE RISK OF THE INSURED.

   **(X) ITEM B -** ON STOCK, MATERIALS AND SUPPLIES OF EVERY DESCRIPTION USUAL OR INCIDENTAL TO THE OPERATIONS OF THE INSURED INCLUDING THE INSURED'S INTEREST IN MATERIALS, LABOR AND CHARGES FURNISHED, PERFORMED ON, OR INCURRED IN CONNECTION WITH PROPERTY OF OTHERS.

   **(X) ITEM C -** ON FURNITURE, FIXTURES, EQUIPMENT AND MACHINERY BEING PROPERTY OF THE INSURED, OR SIMILAR PROPERTIES OF OTHERS IN THE CARE, CUSTODY OR CONTROL OF THE INSURED AND FOR WHICH THE INSURED IS LIABLE IN THE EVENT OF LOSS.

   **() ITEM D -** ON THE INSURED'S INTEREST IN TENANTS' IMPROVEMENTS AND BETTERMENTS TO BUILDINGS, BEING FIXTURES, ALTERATIONS, INSTALLATIONS OR ADDITIONS COMPRISING PART OF A BUILDING(S) OCCUPIED BUT NOT OWNED BY THE INSURED AND MADE AT THE EXPENSE OF THE INSURED.

   **(X) ITEM E -** BUSINESS INTERRUPTION, EXTRA EXPENSE, RENTAL VALUE OR OTHER TIME ELEMENT COVERAGES AS MORE SPECIFICALLY COVERED AND DEFINED IN THE FORM(S) ATTACHED: CP 00 30 10 91

3. **LIMIT OF LIABILITY:**

   (A) THE LIMIT OF LIABILITY OF THIS COMPANY IN RESPECT TO EACH AND EVERY LOSS OCCURRENCE SHALL NOT EXCEED:

   **$ 6,904,100. LOSS LIMIT**

   (B) AS RESPECTS LOSS OR DAMAGE CAUSED BY OR RESULTING FROM EARTHQUAKE, THE AGGREGATE LIMIT OF LIABILITY DURING ANY ONE POLICY YEAR SHALL NOT EXCEED:

   **$ 6,904,100. LOSS LIMIT**

   ***EARTHQUAKE DEFINED:***

   FOR THE PURPOSES OF THIS INSURANCE, ***"EARTHQUAKE"*** IS DEFINED AS EARTH MOVEMENT, MEANING NATURAL FAULTING OF LAND MASSES, NOT INCLUDING SUBSIDENCE, LANDSLIDE, ROCK SLIDE, MUD FLOW, EARTH RISING, EARTH SINKING, EARTH SHIFTING OR SETTLING; UNLESS, SUCH SUBSIDENCE, LANDSLIDE, ROCK SLIDE, MUD FLOW, EARTH RISING, EARTH SINKING, EARTH SHIFTING OR SETTLING DIRECTLY RESULTS FROM EARTHQUAKE AS DEFINED HEREIN.

(C) AS RESPECTS LOSS OR DAMAGE CAUSED BY OR RESULTING FROM FLOOD, THE AGGREGATE LIMIT OF LIABILITY DURING ANY ONE POLICY YEAR SHALL NOT EXCEED:

**$ 6,904,100. LOSS LIMIT**

***FLOOD DEFINED:***

FOR THE PURPOSES OF THIS INSURANCE, ***"FLOOD"*** IS DEFINED AS A GENERAL AND TEMPORARY CONDITION OF PARTIAL OR COMPLETE INUNDATION OF NORMALLY DRY LAND AREA FROM:

(A) THE OVERFLOW OF INLAND OR TIDAL WATERS, INCLUDING TIDAL WAVE OR WASH,

(B) THE UNUSUAL AND RAPID ACCUMULATION OF RUNOFF OF SURFACE WATERS FROM ANY SOURCE,

(C) SPRAY FROM ANY OF THE FOREGOING; ALL WHETHER DRIVEN BY WIND OR NOT.

FLOOD SHALL ALSO MEAN MUDSLIDE OR MUD FLOW, WHICH IS A RIVER OR FLOW OF LIQUID MUD CAUSED BY FLOODING AS DEFINED ABOVE.

**4. SCHEDULE OF LOCATIONS COVERED:**

THIS POLICY COVERS INSURED PROPERTY OR INTEREST ONLY AT SUCH LOCATIONS AS ARE EITHER: 1) SPECIFICALLY LISTED IN PARAGRAPH (A) BELOW OR, 2) ARE INCLUDED WITHIN PARAGRAPH (B) BELOW BUT ONLY FOR THE LIMIT OF LIABILITY SET OUT BELOW SUBJECT TO THE LIMITS OF LIABILITY SET OUT IN PARAGRAPH NUMBER 3 ABOVE:

(A) PROPERTY OR INTERESTS AT THE LOCATION(S) SPECIFICALLY IDENTIFIED BELOW:

**24601 24848 45TH PLACE SO., KENT, WASHINGTON 98032**

(B) $____N/A____ LIMIT OF LIABILITY FOR PROPERTY AT ANY OTHER LOCATION

**5. PROPERTY EXCLUDED:**

(A) ACCOUNTS, BILLS, DEEDS, EVIDENCES OF DEBT, CURRENCY, MONEY, NOTES, SECURITIES, STAMPS, ORIGINAL DRAWINGS AND SPECIFICATIONS, LETTERS OF CREDIT, PASSPORTS, TICKETS OR VALUABLE PAPERS;

(B) ANIMALS, STANDING TIMBER, GROWING PLANTS, TREES, LAWNS OR SHRUBS (EXCEPT WHEN HELD FOR SALE OR WHEN USED FOR DECORATIVE PURPOSES INSIDE BUILDINGS), GROWING CROPS, MOTOR VEHICLES LICENSED OR DESIGNED PRINCIPALLY FOR HIGHWAY USE, WATERCRAFT, AIRCRAFT, SPACECRAFT, MOTORCYCLES, MOTOR SCOOTERS AND OTHER SIMILAR VEHICLES LICENSED OR DESIGNED PRINCIPALLY FOR HIGHWAY USE;

(C) PROPERTY SOLD BY THE INSURED UNDER CONDITIONAL SALES, TRUST AGREEMENTS, INSTALLMENT PAYMENTS OR OTHER DEFERRED PAYMENT PLANS AFTER DELIVERY TO CUSTOMERS;

(D) PROPERTY IN TRANSIT;

(E) STEAM BOILERS, STEAM PIPES, STEAM TURBINES, OR STEAM ENGINES OWNED OR OPERATED BY THE INSURED AGAINST LOSS BY BURSTING, RUPTURE OR EXPLOSION OF SUCH OBJECTS;

(F) MACHINES OR MACHINERY AGAINST LOSS BY RUPTURE, BURSTING OR DISINTEGRATING OF ROTATING OR MOVING PARTS;

(G) CONTRACTOR'S EQUIPMENT;

(H) JEWELRY, WATCHES, PEARLS, PRECIOUS AND SEMI-PRECIOUS STONES, GOLD, SILVER, PLATINUM, OTHER PRECIOUS METALS OR ALLOYS, BULLION, FURS AND ARTICLES TRIMMED WITH FUR;

(I) ELECTRONIC DATA PROCESSING EQUIPMENT INCLUDING COMPUTERS, ELECTRONIC ACCOUNTING MACHINES, ALL SUPPORTING MACHINERY, MAGNETIC TAPES, DISCS, CARDS, ANY STORAGE DEVICE AND ALL SOFTWARE INCLUDING PROCEDURES, PROGRAMS OR SOURCE MATERIAL OF ANY KINDS;

(J) PROPERTY IN THE COURSE OF CONSTRUCTION, INCLUDING MATERIALS AND SUPPLIES THEREFOR;

(K) POWER TRANSMISSION AND/OR FEEDER LINES NOT ON THE INSURED'S PREMISES;

(L) LAND, LAND VALUES OR WATER, WHETHER OWNED OR NOT;

(M) RAILROAD ROLLING STOCK, INCLUDING LOCOMOTIVES;

**6. PERILS EXCLUDED:**

(A) THIS POLICY EXCLUDES ALL COVERAGES PRESENTLY AVAILABLE UNDER:

1. ISO FORMS CP 1030 (CAUSE OF LOSS SPECIAL FORM) AND CP 1039 (SPRINKLER LEAKAGE – EARTHQUAKE EXTENSION) OR THEIR EQUIVALENT AS APPROVED BY THE INSURANCE DEPARTMENT OF THE STATE WHERE THE PROPERTY IS LOCATED; WHETHER OR NOT SUCH INSURANCE IS MAINTAINED BY THE INSURED AT THE TIME OF THE LOSS AND WHETHER OR NOT SUCH LOSS OR DAMAGE IS DIRECTLY OR INDIRECTLY CAUSED BY OR CONTRIBUTED TO BY A PERIL COVERED UNDER THIS POLICY.

2. ANY OTHER MORE SPECIFIC INSURANCE ARRANGED FOR AND IN THE NAME OF THE INSURED.

(B) THIS POLICY DOES NOT INSURE AGAINST:

1. WATER BELOW THE SURFACE OF THE GROUND INCLUDING THAT WHICH EXERTS PRESSURE ON OR FLOWS, SEEPS, OR LEAKS THROUGH SIDEWALKS, DRIVEWAYS, FOUNDATIONS, WALLS, BASEMENT OR OTHER FLOORS, OR THROUGH DOORS, WINDOWS OR ANY OTHER OPENINGS IN SUCH SIDEWALKS, DRIVEWAYS, FOUNDATIONS, WALLS OR FLOORS.

2. MERE DISAPPEARANCE OF PROPERTY OR LOSS OR SHORTAGE OF PROPERTY DISCLOSED ON TAKING INVENTORY;

3. LOSS OR DAMAGE CAUSED BY OR RESULTING FROM WEAR AND TEAR, MECHANICAL BREAKDOWN, DERANGEMENT, INHERENT VICE, LATENT DEFECT, GRADUAL DETERIORATION, MOTH, VERMIN, RODENTS, TERMITES OR OTHER INSECTS INCLUDING LARVAE OR PUPAE THEREOF

4. LOSS OR DAMAGE CAUSED BY OR RESULTING FROM GAS OR SMOKE FROM AGRICULTURAL SMUDGING, SMOG OR INDUSTRIAL OPERATIONS;

5. LOSS OR DAMAGE CAUSED BY OR RESULTING FROM DAMPNESS OF ATMOSPHERE, DRYNESS OF ATMOSPHERE, EXTREMES OR CHANGES OF TEMPERATURE, FREEZING, SHRINKAGE, SPOILAGE, DETERIORATION, EVAPORATION, LOSS OF WEIGHT, LEAKAGE OF CONTENTS, BREAKAGE OF GLASS OR SIMILAR FRAGILE MATERIALS (OTHER THAN LENSES OF PHOTOGRAPHIC OR SCIENTIFIC INSTRUMENTS), MARRING, SCRATCHING, RUST OR CORROSION, EXPOSURE TO LIGHT, CONTAMINATION, CHANGE IN FLAVOR OR COLOR OR TEXTURE OR FINISH;

6. LOSS OR DAMAGE CAUSED BY OR RESULTING FROM INFIDELITY OF INSURED'S EMPLOYEES OR OF PERSONS TO WHOM THE INSURED'S PROPERTY MAY BE ENTRUSTED;

7. LOSS OR DAMAGE CAUSED BY OR RESULTING FROM ANY FRAUDULENT SCHEME, TRICK, DEVICE OR FALSE PRETENSE PRACTICED UPON THE INSURED OR UPON ANY PERSON(S) TO WHOM THE PROPERTY MAY BE ENTRUSTED:

8. LOSS OR DAMAGE CAUSED BY OR RESULTING FROM ELECTRICAL INJURY OR DISTURBANCE TO ELECTRICAL APPLIANCES, FIXTURES OR WIRING CAUSED BY ELECTRICAL CURRENTS ARTIFICIALLY GENERATED, EXCEPT ENSUING LOSS CAUSED BY OR RESULTING FROM A PERIL NOT OTHERWISE EXCLUDED BY THIS POLICY WILL BE COVERED;

9. LOSS OR DAMAGE CAUSED BY OR RESULTING FROM:

    (a) SETTLING, CRACKING, SHRINKAGE, BULGING OR EXPANSION IN FOUNDATION, WALLS, FLOORS, OR CEILINGS;
    (b) SUBSIDENCE, LANDSLIDE, ROCKSLIDE, MUD FLOW, EARTH RISING, EARTH SINKING, EARTH SHIFTING OR SETTLING UNLESS DIRECTLY CAUSED BY EARTHQUAKE AS DEFINED HEREIN.
    (c) ENFORCEMENT OF ANY ORDINANCE OR LAW REGULATING THE RECONSTRUCTION, REPAIR OR DEMOLITION OF THE REAL PROPERTY INSURED HEREUNDER.

10. LOSS OR DAMAGE CAUSED BY OR RESULTING FROM:

    (a) HOSTILE OR WARLIKE ACTION IN TIME OF PEACE OR WAR, INCLUDING ACTION IN HINDERING, COMBATING OR DEFENDING AGAINST AN ACTUAL, IMPENDING OR EXPECTED ATTACK (A) BY ANY GOVERNMENT OR SOVEREIGN POWER (DE JURE OR DE FACTO), OR BY ANY AUTHORITY MAINTAINING OR USING MILITARY, NAVAL OR AIR FORCES; OR (B) BY MILITARY, NAVAL OR AIR FORCES; OR (C) BY ANY AGENT OF ANY SUCH GOVERNMENT, POWER, AUTHORITY OR FORCES.

    (b) ANY WEAPON OF WAR EMPLOYING ATOMIC FISSION OR RADIOACTIVE FORCE WHETHER IN TIME OF PEACE OR WAR;

    (c) INSURRECTION, REBELLION, REVOLUTION, CIVIL WAR, USURPED POWER OR ACTION TAKEN BY GOVERNMENTAL AUTHORITY IN HINDERING, COMBATING OR DEFENDING AGAINST ANY SUCH AN OCCURRENCE, SEIZURE OR DESTRUCTION UNDER QUARANTINE OR CUSTOMS REGULATION, CONFISCATION BY ORDER OF ANY GOVERNMENT OR PUBLIC AUTHORITY, OR RISKS OF CONTRABAND OR ILLEGAL TRANSPORTATION OR TRADE;

11. THIS COMPANY SHALL NOT BE LIABLE FOR LOSS BY NUCLEAR REACTION OR NUCLEAR RADIATION OR RADIOACTIVE CONTAMINATION ALL WHETHER CONTROLLED OR UNCONTROLLED, AND WHETHER SUCH LOSS BE DIRECT OR INDIRECT, PROXIMATE OR REMOTE, OR BE IN WHOLE OR IN PART CAUSED BY, CONTRIBUTED TO, OR AGGRAVATED BY THE PERIL(S) INSURED AGAINST IN THIS POLICY;

12. THE FREEZING OF PLUMBING OR HEATING SYSTEMS OR DAMAGE RESULTING THEREFROM.

13. LOSS OR DAMAGE CAUSED BY OR RESULTING FROM PILFERAGE, BURGLARY, ROBBERY, LARCENY, THEFT OR ATTEMPTED THEFT .

14. ERRORS IN DESIGN, ERRORS IN PROCESSING, FAULTY WORKMANSHIP OR FAULTY MATERIALS, UNLESS THE COLLAPSE OF THE PROPERTY OR A PART THEREOF ENSUES AND THEN ONLY THE ENSUING LOSS CAUSED BY OR RESULTING FROM A PERIL NOT OTHERWISE EXCLUDED BY THIS POLICY WILL BE COVERED.

15. LOSS OR DAMAGE TO PROPERTY WHILE ACTUALLY BEING WORKED UPON AND DIRECTLY RESULTING THEREFROM, EXCEPT ENSUING LOSS CAUSED BY OR RESULTING FROM A PERIL NOT OTHERWISE EXCLUDED BY THIS POLICY WILL BE COVERED.

16. LOSS OR DAMAGE CAUSED BY OR RESULTING FROM EXPOSURE TO ELEMENTS OF THE WEATHER WHERE ANY INSURED PERSONAL PROPERTY IS LEFT IN THE OPEN OR NOT CONTAINED IN BUILDINGS OR PERMANENT FOUNDATIONS;

17. DELAY, LOSS OF MARKET, LOSS OF USE, INTERRUPTION OF BUSINESS, CONSEQUENTIAL LOSS OF ANY NATURE, UNLESS SPECIFICALLY INSURED UNDER PARAGRAPH 2, ITEM E.

**7. OTHER INSURANCE –**

THIS POLICY DOES NOT ATTACH TO OR BECOME INSURANCE AGAINST ANY PERIL UPON PROPERTY HEREIN DESCRIBED, WHICH AT THE TIME OF ANY LOSS IS COVERED BY OTHER INSURANCE (MEANING INSURANCE IN THE NAME OF THE INSURED BUT NOT WRITTEN UPON THE IDENTICAL PLAN, TERMS, CONDITIONS AND PROVISIONS CONTAINED IN THIS POLICY) UNTIL THE LIABILITY OF SUCH OTHER INSURANCE HAS BEEN EXHAUSTED, AND THEN COVER ONLY SUCH LOSS AS MAY EXCEED THE AMOUNT DUE FROM SUCH OTHER INSURANCE (WHETHER COLLECTIBLE OR NOT) AFTER APPLICATION OF ANY CONTRIBUTION, COINSURANCE, AVERAGE OR DISTRIBUTION OR OTHER CLAUSES CONTAINED IN POLICIES OF SUCH OTHER INSURANCE AFFECTING THE AMOUNT COLLECTIBLE THEREUNDER, NOT HOWEVER, EXCEEDING THE LIMITS AS SET FORTH HEREIN.

**8. SINGLE LOSS CLAUSE –**

(A) EARTHQUAKE: EACH LOSS BY EARTHQUAKE SHALL CONSTITUTE A SINGLE CLAIM HEREUNDER, PROVIDED, IF MORE THAN ONE EARTHQUAKE SHOCK SHALL OCCUR WITHIN ANY PERIOD OF SEVENTY-TWO (72) HOURS DURING THE TERM OF THIS POLICY, SUCH EARTHQUAKE SHOCKS SHALL BE DEEMED TO BE A SINGLE EARTHQUAKE WITHIN THE MEANING HEREOF. THIS COMPANY SHALL NOT BE LIABLE FOR ANY LOSS CAUSED BY ANY EARTHQUAKE SHOCK OCCURRING BEFORE THE EFFECTIVE DATE AND TIME OF THIS POLICY, NOR FOR ANY LOSS OCCURRING AFTER THE EXPIRATION DATE AND TIME OF THIS POLICY.

(B) FLOOD: CLAIMS FOR EACH LOSS CAUSED BY FLOOD SHALL CONSTITUTE A SINGLE CLAIM HEREUNDER; PROVIDED IF MORE THAN ONE FLOOD SHALL OCCUR WITHIN ANY PERIOD OF SEVENTY TWO (72) HOURS DURING THE TERM OF THIS POLICY, SUCH FLOOD SHALL BE DEEMED TO BE A SINGLE LOSS WITHIN THE MEANING HEREOF. THIS COMPANY SHALL NOT BE LIABLE FOR ANY LOSS CAUSED BY ANY FLOOD OCCURRING BEFORE THE EFFECTIVE DATE AND TIME OF THIS POLICY, NOR FOR ANY LOSS OCCURRING AFTER THE EXPIRATION DATE AND TIME OF THIS POLICY.

IN NO EVENT SHALL THIS COMPANY BE LIABLE FOR ANY LOSS CAUSED DIRECTLY OR INDIRECTLY BY FIRE, EXPLOSION OR OTHER EXCLUDED PERILS WHETHER THE SAME BE CAUSED BY OR ATTRIBUTABLE TO EARTHQUAKE OR FLOOD OR OTHERWISE.

**9. SUBROGATION WAIVER –**

THIS INSURANCE SHALL NOT BE PREJUDICED BY AGREEMENT MADE BY THE NAMED INSURED RELEASING OR WAIVING THE NAMED INSURED'S RIGHT TO RECOVERY AGAINST THIRD PARTIES RESPONSIBLE FOR THE LOSS, UNDER THE FOLLOWING CIRCUMSTANCES ONLY: 1) IF MADE BEFORE LOSS HAS OCCURRED, SUCH AGREEMENT MAY RUN IN FAVOR OF ANY THIRD PARTY; 2) IF MADE AFTER LOSS HAS OCCURRED, SUCH AGREEMENT MAY RUN ONLY IN FAVOR OF A THIRD PARTY FALLING WITHIN ONE OF THE FOLLOWING CATEGORIES AT THE TIME OF LOSS: (A) A THIRD PARTY INSURED UNDER THIS POLICY; OR (B) A CORPORATION, FIRM OR ENTITY (1) OWNED OR CONTROLLED BY THE NAMED INSURED OR IN WHICH THE NAMED INSURED OWNS CAPITAL STOCK OR OTHER PROPRIETARY INTEREST, OR (2) OWNING OR CONTROLLING THE NAMED INSURED OR OWNING OR CONTROLLING CAPITAL STOCK OR OTHER PROPRIETARY INTEREST IN THE NAMED INSURED; (3) WHETHER MADE BEFORE OR AFTER LOSS HAS OCCURRED, SUCH AGREEMENT MUST RELEASE OR WAIVE THE ENTIRE RIGHT OF RECOVERY OF THE NAMED INSURED AGAINST SUCH THIRD PARTY.

**10. LOSS CLAUSE –**

ANY LOSS HEREUNDER SHALL NOT REDUCE THE AMOUNT OF THIS POLICY EXCEPT AS RESPECTS EARTHQUAKE AND FLOOD AS PER PARAGRAPH 3 OF THIS FORM.

**11. MISREPRESENTATION AND FRAUD –**

THIS ENTIRE POLICY SHALL BE VOID IF, WHETHER BEFORE OR AFTER A LOSS, ANY INSURED HAS CONCEALED OR MISREPRESENTED ANY MATERIAL FACT OR CIRCUMSTANCE CONCERNING THIS INSURANCE OR THE SUBJECT THEREOF, OR THE INTEREST OF THE INSURED THEREIN, OR IN CASE OF ANY FRAUD OR FALSE SWEARING BY ANY INSURED RELATING THERETO.

**12. NOTICE OF LOSS –**

THE INSURED SHALL AS SOON AS PRACTICABLE REPORT, IN WRITING, TO THE COMPANY OR ITS AGENT EVERY LOSS DAMAGE OR OCCURRENCE WHICH MAY GIVE RISE TO A CLAIM UNDER THIS POLICY AND SHALL ALSO FILE WITH THE COMPANY OR ITS AGENT WITHIN NINETY (90) DAYS FROM DATE OF DISCOVERY OF SUCH LOSS, DAMAGE OR OCCURRENCE, A DETAILED SWORN PROOF OF LOSS.

**13. EXAMINATION UNDER OATH –**

THE INSURED, AS OFTEN AS MAY BE REASONABLY REQUIRED, SHALL EXHIBIT TO ANY PERSON DESIGNATED BY THE COMPANY ALL THAT REMAINS OF ANY PROPERTY HEREIN DESCRIBED, AND SHALL SUBMIT, AND IN SO FAR AS IS WITHIN HIS OR THEIR POWER CAUSE HIS OR THEIR EMPLOYEES, MEMBERS OF THE HOUSEHOLD AND OTHERS TO SUBMIT TO EXAMINATION UNDER OATH BY ANY PERSON NAMED BY THE COMPANY AND SUBSCRIBED THE SAME; AND, AS OFTEN AS MAY BE REASONABLY REQUIRED, SHALL PRODUCE FOR EXAMINATION ALL WRITING, BOOKS OF ACCOUNT, BILLS, INVOICES AND OTHER VOUCHERS, OR CERTIFIED COPIES THEREOF IF ORIGINALS BE LOST, AT SUCH REASONABLE TIME AND PLACE AS MAY BE DESIGNATED BY THE COMPANY OR ITS REPRESENTATIVE, AND SHALL PERMIT EXTRACTS AND COPIES THEREOF TO BE MADE. NO SUCH EXAMINATIONS UNDER OATH OR EXAMINATION OF BOOKS OR DOCUMENTS, NOR ANY OTHER ACT OF THE COMPANY OR ANY OF ITS EMPLOYEES OR REPRESENTATIVES IN CONNECTION WITH THE INVESTIGATION OF ANY LOSS OR CLAIM HEREUNDER, SHALL BE DEEMED A WAIVER OF ANY DEFENSE WHICH THE COMPANY MIGHT OTHERWISE HAVE WITH RESPECT TO ANY LOSS OR CLAIM, BUT ALL SUCH EXAMINATIONS AND ACTS SHALL BE DEEMED TO HAVE BEEN MADE OR DONE WITHOUT PREJUDICE TO THE COMPANY'S LIABILITY.

**14. PRIVILEGE TO ADJUST WITH OWNER –**

IN THE EVENT OF LOSS OR DAMAGE TO PROPERTY OF OTHERS HELD BY THE INSURED FOR WHICH CLAIM IS MADE UPON THE COMPANY, THE RIGHT TO ADJUST SUCH LOSS OR DAMAGE WITH THE OWNER OR OWNERS OF THE PROPERTY IS RESERVED TO THE COMPANY AND THE RECEIPT OF SUCH OWNER OR OWNERS IN SATISFACTION THEREOF SHALL BE IN FULL SATISFACTION OF ANY CLAIM OF THE INSURED FOR WHICH SUCH PAYMENT HAS BEEN MADE, IF LEGAL PROCEEDINGS BE TAKEN TO ENFORCE A CLAIM AGAINST THE INSURED AS RESPECTS ANY SUCH LOSS OR DAMAGE, THE COMPANY RESERVES THE RIGHT AT ITS OPTION WITHOUT EXPENSE TO THE INSURED, TO CONDUCT AND CONTROL THE DEFENSE ON BEHALF OF AND IN THE NAME OF THE INSURED. NO ACTION OF THE COMPANY IN SUCH REGARD SHALL INCREASE THE LIABILITY OF THE COMPANY UNDER THIS POLICY, NOR INCREASE THE LIMITS OF LIABILITY SPECIFIED IN THE POLICY.

**15. SETTLEMENT OF LOSS –**

ALL ADJUSTED CLAIMS SHALL BE PAID OR MADE GOOD TO THE INSURED WITHIN SIXTY (60) DAYS AFTER PRESENTATION AND ACCEPTANCE OF SATISFACTORY PROOF OF INTEREST AND LOSS AT THE OFFICE OF THE COMPANY. NO LOSS SHALL BE PAID OR MADE GOOD IF THE INSURED HAS COLLECTED THE SAME FROM OTHERS.

**16. NO BENEFIT TO BAILEE –**

THIS INSURANCE SHALL IN NO WISE INURE DIRECTLY OR INDIRECTLY TO THE BENEFIT OF ANY CARRIER OR OTHER BAILEE.

**17. PAIR, SET OR PARTS –**

IN THE EVENT OF LOSS OF OR DAMAGE TO:

(A) ANY ARTICLE OR ARTICLES WHICH ARE A PART OF A PAIR OR SET, THE MEASURE OF LOSS OF OR DAMAGE TO SUCH ARTICLE OR ARTICLES SHALL BE A REASONABLE AND FAIR PROPORTION OF THE TOTAL VALUE OF THE PAIR OR SET, GIVING CONSIDERATION TO THE IMPORTANCE OF SAID ARTICLE OR ARTICLES, BUT IN NO EVENT SHALL SUCH LOSS OR DAMAGE BE CONSTRUED TO MEAN TOTAL LOSS OF THE PAIR OR SET, OR

(B) ANY PART OF PROPERTY COVERED CONSISTING, WHEN COMPLETE FOR USE OR SALE, OF SEVERAL PARTS, THE COMPANY SHALL ONLY BE LIABLE FOR THE VALUE OF THE PART LOST OR DAMAGED.

**18. RECORDS AND INVENTORY –**

THE INSURED SHALL KEEP ACCURATE BOOKS, RECORDS AND ACCOUNTS IN THE FOLLOWING MANNER: A DETAILED AND ITEMIZED INVENTORY RECORD OF ALL PROPERTY COVERED HEREUNDER SHALL BE MAINTAINED AND PHYSICAL INVENTORY SHALL BE TAKEN PERIODICALLY AT INTERVALS NOT MORE THAN TWELVE (12) MONTHS APART.

**19. EXAMINATION OF RECORDS –**

THE INSURED SHALL, AS OFTEN AS MAY BE REASONABLY REQUIRED DURING THE TERM OF THIS POLICY AND FOR ONE (1) YEAR THEREAFTER, PRODUCE FOR EXAMINATION BY THE COMPANY OR ITS DULY AUTHORIZED REPRESENTATIVE ALL THE BOOKS AND RECORDS, INVENTORIES AND ACCOUNTS RELATING TO THE PROPERTY COVERED HEREUNDER.

**20. SUIT –**

NO SUIT, ACTION OR PROCEEDING FOR THE RECOVERY OF ANY CLAIM UNDER THIS POLICY SHALL BE SUSTAINABLE IN ANY COURT OF LAW OR EQUITY UNLESS THE SAME BE COMMENCED WITHIN TWELVE (12) MONTHS NEXT AFTER DISCOVERY BY THE INSURED OF THE OCCURRENCE WHICH GIVES RISE TO A CLAIM, PROVIDED HOWEVER, THAT IF BY THE LAWS OF THE STATE WITHIN THIS POLICY IS ISSUED SUCH LIMITATION IS INVALID, THEN ANY SUCH CLAIMS SHALL BE VOID UNLESS SUCH ACTION, SUIT OR PROCEEDING BE COMMENCED WITHIN THE SHORTEST LIMIT OF TIME PERMITTED BY THE LAWS OF SUCH STATE.

**21. APPRAISAL --**

IF THE INSURED AND THE COMPANY FAIL TO AGREE AS TO THE AMOUNT OF LOSS, EACH SHALL ON THE WRITTEN DEMAND OF EITHER, MADE WITHIN SIXTY (60) DAYS AFTER RECEIPT OF PROOF OF LOSS BY THE COMPANY, SELECT A COMPETENT AND DISINTERESTED APPRAISER, AND THE APPRAISAL SHALL BE MADE AT A REASONABLE TIME AND PLACE. THE APPRAISERS SHALL FIRST SELECT A COMPETENT AND DISINTERESTED UMPIRE, AND FAILING FOR FIFTEEN (15) DAYS TO AGREE UPON SUCH UMPIRE, THEN, ON THE REQUEST OF THE INSURED OR THE COMPANY, SUCH SHALL BE SELECTED BY A JUDGE OF A COURT OF RECORD IN THE STATE IN WHICH SUCH APPRAISAL IS PENDING. THE APPRAISERS SHALL THEN APPRAISE THE LOSS, STATING SEPARATELY THE ACTUAL CASH VALUE AT THE TIME OF LOSS AND THE AMOUNT OF LOSS, AND FAILING TO AGREE SHALL SUBMIT THEIR DIFFERENCES TO THE UMPIRE. AN AWARD IN WRITING OF ANY TWO SHALL DETERMINE THE AMOUNT OF LOSS. THE INSURED AND THE COMPANY SHALL EACH PAY HIS OR ITS CHOSEN APPRAISER AND SHALL BEAR EQUALLY THE OTHER EXPENSES OF THE APPRAISAL AND UMPIRE. THE COMPANY SHALL NOT BE HELD TO HAVE WAIVED ANY OF ITS RIGHTS BY ANY ACT RELATING TO APPRAISAL.

**22. COMPANY'S OPTIONS –**

IT SHALL BE OPTIONAL WITH THE COMPANY TO TAKE ALL, OR ANY PART, OF THE PROPERTY AT THE AGREED OR APPRAISED VALUE, OR TO REPAIR, REBUILD OR REPLACE THE PROPERTY DESTROYED OR DAMAGED WITH OTHER OF LIKE KIND AND QUALITY WITHIN A REASONABLE TIME, ON GIVING NOTICE OF ITS INTENTIONS TO DO SO WITHIN SIXTY (60) DAYS AFTER THE RECEIPT OF THE PROOF OF LOSS HEREIN REQUIRED.

**23. ABANDONMENT –**

THERE CAN BE NO ABANDONMENT TO THE COMPANY OF ANY PROPERTY.

**24. CLAIMS AGAINST THIRD PARTIES –**

IN THE EVENT OF ANY LOSS OF OR DAMAGE TO THE PROPERTY COVERED HEREUNDER THE INSURED SHALL IMMEDIATELY MAKE CLAIM IN WRITING AGAINST THE CARRIER(S), BAILEE(S) OR OTHERS INVOLVED.

**25. LABELS –**

IN THE EVENT OF LOSS OF OR DAMAGE TO LABELS, CAPSULES OR WRAPPERS, THE LOSS SHALL BE ADJUSTED ON THE BASIS OF AN AMOUNT SUFFICIENT TO PAY THE COST OF NEW LABELS, CAPSULES OR WRAPPERS.

**26. ASSISTANCE AND COOPERATION OF THE INSURED –**

IN THE EVENT THIS POLICY COVERS THE INSURED'S LIABILITY, THE INSURED SHALL COOPERATE WITH THE COMPANY AND, UPON THE COMPANY'S REQUEST, SHALL ATTEND HEARINGS AND TRIALS AND SHALL ASSIST IN EFFECTING SETTLEMENTS, SECURING AND GIVING EVIDENCE, OBTAINING THE ATTENDANCE OF WITNESSES AND IN THE CONDUCT OF SUITS. THE INSURED SHALL NOT, EXCEPT AT HIS OWN COST, VOLUNTARILY MAKE PAYMENT, ASSUME ANY OBLIGATION OR INCUR ANY EXPENSE WITHOUT THE WRITTEN CONSENT OF THE COMPANY.

**27. DEBRIS REMOVAL --**

1. THIS POLICY COVERS EXPENSES INCURRED IN THE REMOVAL OF ALL DEBRIS OF THE PROPERTY COVERED HEREUNDER WHICH MAY BE OCCASIONED BY LOSS CAUSED BY ANY OF THE PERILS INSURED AGAINST, SUBJECT HOWEVER, TO THE LIMIT OF LIABILITY.

2. THIS COMPANY SHALL NOT BE LIABLE UNDER THIS POLICY AND THIS CLAUSE FOR:

   (A) MORE THAN THE AMOUNT OF INSURANCE PROVIDED IN THIS POLICY;

   (B) ANY GREATER PROPORTION OF SUCH EXPENSE THAN THE AMOUNT OF INSURANCE HEREUNDER BEARS TO THE TOTAL AMOUNT OF ALL INSURANCE, WHETHER ALL SUCH INSURANCE CONTAINS THIS CLAUSE OF NOT; NOR

   (C) LOSS OCCASIONED BY THE ENFORCEMENT OF ANY STATE OR MUNICIPAL LAW OR ORDINANCE WHICH NECESSITATES THE DEMOLITION OF ANY PORTION OF THE BUILDING COVERED HEREUNDER WHICH HAS NOT SUFFERED DAMAGE BY ANY OF THE PERILS INSURED AGAINST IN THIS POLICY, UNLESS SUCH LIABILITY IS OTHERWISE SPECIFICALLY INSURED BY THIS POLICY.

3. IF THIS POLICY IS DIVIDED INTO TWO OR MORE ITEMS, THE FOREGOING SHALL APPLY SEPARATELY TO SUCH ITEM.

**28.**

**29. CANCELLATION --**

THIS POLICY MAY BE CANCELLED BY THE INSURED BY MAILING TO THE COMPANY WRITTEN NOTICE STATING WHEN THEREAFTER SUCH CANCELLATION SHALL BE EFFECTIVE. THIS POLICY MAY BE CANCELLED BY THE COMPANY BY MAILING TO THE INSURED AT THE ADDRESS SHOWN IN THIS POLICY OR LAST KNOWN ADDRESS WRITTEN NOTICE STATING WHEN NOT LESS THAN FORTY-FIVE (45) DAYS THEREAFTER SUCH CANCELLATION SHALL BE EFFECTIVE; HOWEVER, CANCELLATION DUE TO NON-PAYMENT OF PREMIUM SHALL REQUIRE TEN (10) DAYS WRITTEN NOTICE OF CANCELLATION. THE MAILING OF NOTICE AS AFOREMENTIONED SHALL BE SUFFICIENT PROOF OF NOTICE AND THE EFFECTIVE DATE OF CANCELLATION STATED IN THE NOTICE SHALL BECOME THE END OF THE POLICY PERIOD. DELIVERY OF SUCH WRITTEN NOTICE EITHER BY THE INSURED OR BY THE COMPANY SHALL BE EQUIVALENT TO MAILING.

**30. ALL OTHER MATTERS –**

ALL MATTERS NOT PROVIDED FOR HEREIN OR BY ENDORSEMENT HEREON SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE COMPANY'S PRINTED POLICY FORM TO WHICH THIS FORM IS ATTACHED AND WHICH HAS BEEN ISSUED IN CONJUNCTION HEREWITH. THE FOREGOING CLAUSES SHALL, HOWEVER, BE CONSIDERED TO SUPERSEDE AND ANNUL ANY CLAUSES THEREIN WHICH MAY BE OF THE SAME OR SIMILAR NATURE.

**31. STATUTORY REQUIREMENTS –**

IT IS HEREBY UNDERSTOOD AND AGREED THAT IF PROPERTY COVERED UNDER THIS POLICY IS LOCATED IN A STATE THAT REQUIRES A STATUTORY POLICY OR STANDARD FORM(S) AT VARIANCE WITH THIS POLICY OR THE FORM(S) ATTACHED HERETO, THEN THIS INSURANCE SHALL COVER SUCH PROPERTY IN ACCORDANCE WITH THE PROVISIONS OF SUCH REQUIRED POLICY OR FORM(S).

**32. VALUATION –**

(A) UNLESS OTHERWISE ENDORSED HEREON, THIS COMPANY SHALL NOT BE LIABLE FOR MORE THAN THE REPLACEMENT COST OF THE PROPERTY AT THE TIME ANY LOSS OR DAMAGE OCCURS AND THE LOSS OR DAMAGE SHALL BE ASCERTAINED OR ESTIMATED ACCORDING TO SUCH REPLACEMENT COST WITH NO DEDUCTION FOR DEPRECIATION. THE REPLACEMENT COST SHALL IN NO EVENT EXCEED WHAT IT WOULD THEN COST TO REPAIR OR REPLACE THE SAME PROPERTY WITH MATERIAL OF LIKE KIND AND QUALITY, NOR THE AMOUNT FOR WHICH THE INSURED MAY BE LIABLE.

(B) IF THE INSURED DOES NOT ACTUALLY REPAIR OR REPLACE THE PROPERTY, THE COMPANY SHALL NOT BE LIABLE FOR MORE THAN THE ACTUAL CASH VALUE OF THE PROPERTY AT THE TIME OF LOSS.

**33. EXCESS INSURANCE –**

PERMISSION IS GRANTED THE INSURED TO HAVE EXCESS INSURANCE OVER THE LIMIT OF LIABILITY SET FORTH IN THIS POLICY WITHOUT PREJUDICE TO THIS POLICY AND THE EXISTENCE OF SUCH INSURANCE, IF ANY, SHALL NOT REDUCE ANY LIABILITY UNDER THIS POLICY.

**33. SALVAGE AND RECOVERIES --**

ALL SALVAGE, SUBROGATION'S AND OTHER RECOVERIES AND PAYMENTS RECOVERED OR RECEIVED SUBSEQUENT TO THE LOSS SETTLEMENT UNDER THIS POLICY SHALL BE APPLIED AS IF RECOVERED OR RECEIVED PRIOR TO THE SAID SETTLEMENT AND ALL NECESSARY ADJUSTMENTS SHALL BE MADE BY THE PARTIES HERETO.

**34. ABSOLUTE POLLUTION EXCLUSION --**

THIS POLICY DOES NOT APPLY TO ANY LOSS, DEMAND, CLAIM OR SUIT ARISING OUT OF OR IN ANY WAY RELATED TO POLLUTION INCLUDING ANY COST OR EXPENSE ARISING OUT OF OR IN ANY WAY RELATED TO TESTING FOR, MONITORING, CLEANING UP, REMOVING, CONTAINING, TREATING, DETOXIFYING, OR NEUTRALIZING POLLUTION THE COMPANY SHALL HAVE NO DUTY OF ANY KIND WITH RESPECT TO ANY SUCH LOSS, DEMAND, CLAIM OR SUIT. THIS EXCLUSION APPLIES TO ALL COVERAGES UNDER THIS POLICY.

**35. ASBESTOS EXCLUSION --**

THIS POLICY DOES NOT APPLY TO ANY LOSS, DEMAND, CLAIM OR SUIT ARISING OUT OF OR RELATED TO IN ANY WAY TO ASBESTOS OR ASBESTOS CONTAINING MATERIAL. THE COMPANY SHALL HAVE NO DUTY OF ANY KIND WITH RESPECT TO ANY SUCH LOSS, DEMAND, CLAIM OR SUIT. THIS EXCLUSION APPLIES TO ALL COVERAGES UNDER THIS POLICY.

**36. MINIMUM PREMIUM --**

IT IS AGREED THAT IN THE EVENT OF CANCELLATION OF THIS POLICY BY THE INSURED AS SPECIFIED HEREIN, OR FOR NON-PAYMENT OF PREMIUM THE MINIMUM RETAINED PREMIUM WILL BE TWENTY FIVE PERCENT (25%) OF THE ANNUAL PREMIUM.

**37. SUE AND LABOR --**

IN CASE OF LOSS OR DAMAGE, IT SHALL BE LAWFUL AND NECESSARY FOR THE INSURED, HIS OR THEIR FACTORS, SERVANTS AND ASSIGNS, TO SUE, LABOR, AND TRAVEL FOR, IN AND ABOUT THE DEFENSE, SAFEGUARD AND RECOVERY OF THE PROPERTY INSURED HEREUNDER, OR ANY PART THEREOF WITHOUT PREJUDICE TO THIS INSURANCE, NOR SHALL THE ACTS OF THE INSURED OR THIS COMPANY, IN RECOVERING, SAVING, AND PRESERVING THE PROPERTY INSURED IN CASE OF LOSS OR DAMAGE, BE CONSIDERED A WAIVER OR ACCEPTANCE OF ABANDONMENT; TO THE CHARGE WHEREOF THIS COMPANY WILL CONTRIBUTE ACCORDING TO THE RATE AND QUANTITY OF THE SUM HEREIN INSURED.

**38. SUBROGATION --**

IN THE EVENT OF ANY PAYMENT UNDER THIS POLICY THE COMPANY SHALL BE SUBROGATED TO ALL THE INSURED'S RIGHTS OF RECOVERY THEREFOR AGAINST ANY PERSON OR ORGANIZATION AND THE INSURED SHALL EXECUTE AND DELIVER INSTRUMENTS AND PAPERS AND DO WHATEVER ELSE IS NECESSARY TO SECURE SUCH RIGHTS. THE INSURED SHALL DO NOTHING AFTER LOSS TO PREJUDICE SUCH RIGHTS.

ATTACHED TO AND FORMING PART OF: POLICY NUMBER **CPP 5628683 AGRICULTURAL INSURANCE COMPANY** AND **ACG 3328683 GREENWICH INSURANCE COMPANY.**

INSURED: WESTRIDGE TOWNHOMES ASSOCIATION

EFFECTIVE: AUGUST 4, 2000

Larry E. Kessler

**AUTHORIZED SIGNATURE**

# ENDORSEMENT

| | | |
|---|---|---|
| **AGRICULTURAL INSURANCE COMPANY** | | **POLICY NO. CPP 5628683** |
| **GREENWICH INSURANCE COMPANY** | | **POLICY NO. ACG 3328683** |

| | | | |
|---|---|---|---|
| **Insured:** | WESTRIDGE TOWNHOMES ASSOCIATION | **Endorsement No.:** | 1 |
| | | **Additional:** | **Return** |
| **Effective Date of Endorsement:** | AUGUST 4, 2000 | **Premium:** | $ N/A |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DEDUCTIBLE PROVISIONS

The word "claim" as used in this policy respecting any deductible amount means the aggregate of this Company's share of all loss in the category to which such deductible amount applies arising out of any one loss occurrence. Each such loss shall be adjusted (net of salvage, subrogation recoveries and any other recoveries) as if these deductible provisions did not apply. As respects any such claim, this company shall then be liable only for the excess (if any) thereof over such deductible amount.

Deductible Amount:

The following deductible amounts shall apply to each claim for loss or damage in the respective loss categories indicated:

A. All claims, except Earthquake and Flood, as described in B. below = $25,000.

B. Earthquake and Flood: This Company shall not be liable for loss per unit of insurance covered hereunder unless such loss exceeds the respective percentage stated below and then only for its proportion of such excess:

(1) 5% of the value (as defined elsewhere herein) per unit covered hereunder to which the loss occurs at the time when such loss shall happen. In the application of the Earthquake deductible amount, each of the following shall be considered a separate unit:

(a) Each separate and unadjoining building or structure

(b) The contents of each separate and unadjoining building or structure

(c) Property in each yard.

(d) Business Interruption

Subject to a minimum combined deductible of $ 25,000. Per Occurrence for all coverages insured for Earthquake and Flood hereunder.

By: Larry E. Kessler
Authorized Representative

GAI3087-12/99

# ENDORSEMENT

**AGRICULTURAL INSURANCE COMPANY**
**GREENWICH INSURANCE COMPANY**

**POLICY NO. CPP 5628683**
**POLICY NO. ACG 3328683**

**Insured:** WESTRIDGE TOWNHOMES ASSOCIATION

**Endorsement No.:** 2

**Additional:** **Return:**

**Effective Date of Endorsement:** AUGUST 4, 2000

**Premium:** **$** N/A

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT**

IT IS UNDERSTOOD AND AGREED THAT THE FOLLOWING SPECIAL TERMS AND CONDITIONS APPLY TO THIS POLICY:

1. THE LIMIT OF LIABILITY OR AMOUNT OF INSURANCE SHOWN ON THE FACE OF THIS POLICY, OR ENDORSED ONTO THIS POLICY, IS A LIMIT OR AMOUNT PER OCCURRENCE. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, IN NO EVENT SHALL THE LIABILITY OF THIS COMPANY EXCEED THIS LIMIT OR AMOUNT IN ONE DISASTER, CASUALTY OR EVENT, IRRESPECTIVE OF THE NUMBER OF LOCATIONS INVOLVED.

2. THE PREMIUM FOR THIS POLICY IS BASED UPON THE STATEMENT OF VALUES ON FILE WITH THE COMPANY, OR ATTACHED TO THIS POLICY. IN THE EVENT OF LOSS HEREUNDER, LIABILITY OF THE COMPANY SHALL BE LIMITED TO THE LEAST OF THE FOLLOWING:

   (A) THE ACTUAL ADJUSTED AMOUNT OF LOSS, LESS APPLICABLE DEDUCTIBLE(S)

   (B) THE TOTAL STATED VALUE FOR THE PROPERTY INVOLVED, AS SHOWN ON THE LATEST STATEMENT OF VALUES ON FILE WITH THE COMPANY, LESS APPLICABLE DEDUCTIBLE(S)

   (C) THE LIMIT OF LIABILITY OR AMOUNT OF INSURANCE SHOWN ON THE FACE OF THIS POLICY OR ENDORSED INTO THIS POLICY.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

By: Larry E. Keesler
Authorized Representative

GAI3133-12/99

# ENDORSEMENT

**AGRICULTURAL INSURANCE COMPANY**
**GREENWICH INSURANCE COMPANY**

**POLICY NO.: CPP5628683**
**POLICY NO.: ACG3328683**

**Insured:** WESTRIDGE TOWNHOMES ASSOCIATION

**Endorsement No.:** 3

**Additional:** **Return:** X

**Effective Date of Endorsement:** NOVEMBER 18, 2000

**Premium:** $ 6,174.00

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

IN CONSIDERATION OF A RETURN PREMIUM OF $6,174.00 THIS POLICY IS HEREBY CANCELED, EFFECTIVE NOVEMBER 18, 2000.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

Larry E. Kessler
AUTHORIZED REPRESENTATIVE

GAI 3016-12/99

# ENDORSEMENT

**AGRICULTURAL INSURANCE COMPANY**
**GREENWICH INSURANCE COMPANY**

**POLICY NO. CPP 5628683**
**POLICY NO. ACG 3328683**

**Insured:** WESTRIDGE TOWNHOMES ASSOCIATION

**Endorsement No.:** 4

**Additional:** X **Return:**

**Effective Date Of Endorsement:** NOVEMBER 18, 2000

**Premium:** $ 6,174.00

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

IN CONSIDERATION OF THE ADDITIONAL PREMIUM CHARGED, IT IS HEREBY AGREED THAT THIS POLICY IS REINSTATED, EFFECTIVE NOVEMBER 18, 2000.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

By: Larry E. Ressler
Authorized Representative

# ORDINANCE OR LAW COVERAGE

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
STANDARD PROPERTY POLICY
DIFFERENCE IN CONDITIONS COVERAGE

**SCHEDULE***

| BLDG. No. | PREM. No. | DEMOLITION COST LIMIT OF INSURANCE | INCREASED COST OF CONSTRUCTION LIMIT OF INSURANCE |
|---|---|---|---|
| | | $ 250,000. | $ INCLUDED |

## A. COVERAGE

1. **Coverage A -- Coverage For Loss to the Undamaged Portion of the Building.**

   If a Covered Cause of Loss occurs to covered Building property shown in the Schedule above, we will pay for loss to the undamaged portion of the building caused by enforcement of any ordinance or law that:

   a. Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;

   b. Regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises; and

   c. Is in force at the time of loss.

   Coverage A is included within the Limit of Insurance applicable to the covered Building property shown in the Declarations. This is not additional insurance.

2. **Coverage B -- Demolition Cost Coverage.**

   If a Covered Cause of Loss occurs to covered Building property and a Demolition Cost Limit of Insurance is shown in the Schedule above, we will pay the cost to demolish and clear the site of undamaged parts of the property caused by enforcement of building, zoning or land use ordinance or law.

   The COINSURANCE Additional Condition does not apply to Demolition Cost Coverage.

3. **Coverage C -- Increased Cost of Construction Coverage.**

   If a Covered Cause of Loss occurs to covered Building property and an Increased Cost of Construction Limit of Insurance is shown in the Schedule above, we will pay for the increased cost to repair, rebuild or construct the property caused by enforcement of building, zoning or land use ordinance or law. If the property is repaired or rebuilt, it must be intended for similar occupancy as the current property, unless otherwise required by zoning or land use ordinance or law.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1989

However, we will not pay for the increased cost of construction if the building is not repaired or replaced.

The COINSURANCE Additional Condition does not apply to Increased Cost of Construction.

B. We will not pay under this endorsement for the costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants."

C. Under Coverage A -- Coverage for Loss to the Undamaged Portion of the Building:

1. If the Replacement Cost Coverage Option applies and the property is repaired or replaced, on the same or another premises, we will not pay more for loss or damage to Covered Property, including loss caused by enforcement of an ordinance or law, than the lesser of:

   a. The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

   b. The Limit of Insurance applicable to the covered Building property.

2. a. If the Replacement Cost Coverage option applies and the property is not repaired or replaced; or

   b. If the Replacement Cost Coverage option does not apply;

   we will not pay more for loss or damage to Covered Property, including loss caused by enforcement of an ordinance or law, than the lesser of:

(1) The actual cash value of the building at the time of loss; or

(2) The Limit of Insurance applicable to the covered Building property.

D. We will not pay more under Coverage B Demolition Cost Coverage than the lesser of the following:

1. The amount you actually spend to demolish and clear the site of the described premises; or

2. The applicable Demolition Cost Limit of Insurance shown in the Schedule above.

E. 1. We will not pay under Coverage C -- Increased Cost of Construction Coverage:

   a. Until the property is actually repaired or replaced, at the same or another premises; and

   b. Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

2. If the building is repaired or replaced at the same premises or if you elect to rebuild at another premises, the most we will pay under Coverage C is the lesser of:

   a. The increased cost of construction at the same premises; or

   b. The applicable Increased Cost of Construction Limit of Insurance shown in the Schedule above.

3. If the ordinance or law requires relocation to another premises, the most we will pay under Coverage C is the lesser of:

   a. The increased cost of construction at the new premises; or

Copyright, ISO Commercial Risk Services, Inc., 1983, 1989

b. The applicable Increased Cost of Construction Limit of Insurance shown in the Schedule above.

F. The terms of this endorsement apply separately to each building to which this endorsement applies.

* Information required to complete the Schedule, if not shown on this endorsement, will be shown in the Declarations.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1989

IL 09 35
(Ed. 08 98)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY
DIFFERENCE IN CONDITIONS COVERAGE

A. We will not pay for the ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

1. The failure, malfunction or inadequacy of:

a. any of the following, whether belonging to any Insured or to others:

(1) computer hardware, including microprocessors;

(2) computer application software;

(3) computer operating systems and related software;

(4) computer networks;

(5) microprocessors (computer chips) not part of any computer system; or

(6) any other computerized or electronic equipment or components; or

b. any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph A.1.a. of this endorsement;

due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

2. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph A.1. of this endorsement.

B. If an excluded Cause of Loss as described in Paragraph A. of this endorsement results:

1. in a Covered Cause of Loss under the Boiler And Machinery Coverage Part, the Commercial Crime Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

2. under the Commercial Property Coverage Part:

a. in a "Specified Cause of Loss," or in elevator collision resulting from mechanical breakdown, under the Causes of Loss - Special Form; or

b. in a Covered Cause of Loss under the Causes of Loss - Basic Form or the Causes of Loss - Broad Form;

we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss," elevator collision, or Covered Cause of Loss.

C. We will not pay for repair, replacement or modification of any items in Paragraph A.1.a. and A.1.b. of this endorsement to correct any deficiences or change any features.

Copyright, Insurance Services Office, Inc., 1998

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BUSINESS INCOME AND/OR EXTRA EXPENSE COVERAGE FOR YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

This endorsement modifies the insurance provided under the following:

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM
EXTRA EXPENSE COVERAGE FORM
DIFFERENCE IN CONDITIONS COVERAGE

## SCHEDULE

Described Premises

See Paragraph 4. SCHEDULE OF LOCATIONS COVERED: on Page 2 of 10 OF THE ATTACHED DIFFERENCE IN CONDITIONS FORM.

*Information required to complete this Schedule, if not on this endorsement, will be shown in the Declarations.

A. The provisions of Endorsement **IL 09 35** do not apply to the coverage provided under this endorsement.

B. As used in this endorsement, the word Computer and the term Computer Failure have the following meanings:

1. Computer means computer hardware, including microprocessors; computer application software; computer operating systems and related software; computer networks; microprocessors (computer chips) not part of any computer system; or any other computerized or electronic equipment or components.

2. Computer Failure means the failure, malfunction or inadequacy of a Computer due to the inability to correctly recognize, distinguish, interpret or accept the year 2000 and beyond.

C. If this endorsement is attached to the **BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM**, the following apply:

1. Subject to Paragraph I., this endorsement covers actual loss of Business Income you sustain caused by Computer Failure at the premises described in the Schedule, or at another location if the off-premises described in the Schedule, or at another location if the off-premises Computer interfaces with a Computer at the described premises or is otherwise used in the "operations" of the business at the described premises.

Copyright, Insurance Services Office, Inc., 1997

2. Subject to Paragraph I., this endorsement covers the actual and necessary Extra Expense you incur due to Comput Failure at the premises described in th Schedule, or at another location if the off-premises Computer interfaces with a computer at the described premises or is otherwise used in the "operations" of the business at the described premises. Extra Expense means necessary expenses you incur that you would not have incurred if there had been no Computer Failure. Extra Expense includes expenses for repair, modification or replacement of the Computer but only to the extent that such expenses reduce the amount of Business Income loss that otherwise would have been payable under the provisions of this endorsement.

D. If this endorsement is attached to the BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM, the following apply:

1. Subject to Paragraph I., this endorsement covers actual loss of Business Income you sustain caused by Computer Failure at the premises described in the Schedule, or at another location if the off-premises Computer interfaces with a Computer at the described premises or is otherwise used in the "operations" of the business at the described premises.

2. Subject to Paragraph I., this endorsement covers Expenses to Reduce Loss. In the event of a covered loss of Business Income under this endorsement, we will pay actual and necessary expenses you incur to avoid further loss of Business Income, including expenses for repair, modification or replacement of the Computer. The total of our payment for Business Income Loss and Expenses to Reduce Loss will not be more than the Business Income Loss that would have been payable under this endorsement if the Expenses to Reduce Loss had not been incurred.

E. If this endorsement is attached to the EXTRA EXPENSE COVERAGE FORM, the following apply:

Subject to Paragraph I., this endorsement covers the actual and necessary Extra Expense you incur due to Computer Failure at the premises described in the Schedule, or at another location if the off-premises Computer interfaces with a Computer at the described premises or is otherwise used in the "operations" of the business at the described premises. Extra Expense means necessary expenses you incur that you would not have incurred if there had been no Computer Failure. But Extra Expense does not include expenses for repair, modification or replacement of the Computer.

F. The coverage set forth in Paragraphs C., D., and E. does not apply to any loss you sustain or any expense you incur due to the failure of power or other utility service supplied to the described premises, caused by Computer Failure, whether or not this policy includes the Utility Services – Time Element endorsement..

G. The coverage set forth in Paragraph C., D. and E. does not apply to a Computer Failure that affects the business "operations" at the described premises prior to the inception date of this endorsement.

H. With respect to an instance of Computer Failure, coverage under this endorsement ends 30 days after the Computer Failure is corrected, or when there is no further loss or expense caused by that Computer Failure, whichever comes first.

I. The most we will pay under this endorsement for the total of all losses and/or expenses sustained in any one policy year is $25,000, regardless of the number of Computer Failures or the number of Computers involved in any Computer Failure.

The $25,000 limit is not subject to the Coinsurance Condition of the Coverage Form. Nor is payment under this endorsement affected by the Maximum Period Of Indemnity, Monthly Limit Of Indemnity or Business Income Agreed Value coverages or the Loss Condition titled Limits On Loss Payment.

CP 00 30 10 91

# BUSINESS INCOME COVERAGE FORM (AND EXTRA EXPENSE)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION G—**DEFINITIONS**.

**A. COVERAGE**

Coverage is provided as described below for one or more of the following options for which a Limit of Insurance is shown in the Declarations:

**(i)** Business Income including "Rental Value".

**(ii)** Business Income other than "Rental Value".

**(iii)** "Rental Value".

If option **(i)** above is selected, the term Business Income will include "Rental Value". If option **(iii)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the premises described in the Declarations, including personal property in the open (or in a vehicle) within 100 feet, caused by or resulting from any Covered Cause of Loss.

**1. Business Income**

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

**2. Covered Causes Of Loss.**

See applicable Causes of Loss Form as shown in the Declarations.

**3. Additional Coverages**

**a. Extra Expense.**

Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

**(1)** We will pay any Extra Expense to avoid or minimize the suspension of business and to continue "operations":

**(a)** At the described premises; or

**(b)** At replacement premises or at temporary locations, including:

**(i)** Relocation expenses; and

**(ii)** Costs to equip and operate the replacement or temporary locations.

**(2)** We will pay any Extra Expense to minimize the suspension of business if you cannot continue "operations".

**(3)** We will pay any Extra Expense to:

**(a)** Repair or replace any property; or

**(b)** Research, replace or restore the lost information on damaged valuable papers and records;

to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**b. Civil Authority.** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss. This coverage will apply for a period of up to two consecutive weeks from the date of that action.

**c. Alterations and New Buildings.** We will pay for the actual loss of Business Income you sustain due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

**(a)** Used in the construction, alterations or additions; or

Copyright, ISO Commercial Risk Services Inc., 1983, 1990

(b) Incidental to the upancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**d. Extended Business Income.** We will pay for the actual loss of Business Income you incur during the period that:

(1) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

(2) Ends on the earlier of:

(a) The date you could restore your "operations", with reasonable speed, to the condition that would have existed if no direct physical loss or damage occurred; or

(b) 30 consecutive days after the date determined in (1) above.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**4. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

a. You may extend your Business Income Coverage to apply to property at any location you acquire other than fairs or exhibitions.

b. The most we will pay for loss under this Extension is 10% of the Limit of Insurance for Business Income shown in the Declarations, but not more than $100,000 at each location.

c. Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

(1) This policy expires;

(2) 30 days expire after you acquire or begin to construct the property; or

(3) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

This Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

## B. EXCLUSIONS

See applicable Causes of Loss Form as shown in the Declarations.

## C. LIMITS OF INSU ICE

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The limit applicable to the Coverage Extension is in addition to the Limit of Insurance.

Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

1. Alterations and New Buildings;
2. Civil Authority;
3. Extra Expense; or
4. Extended Business Income.

## D. LOSS CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Loss**

a. You must see that the following are done in the event of loss:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when, and where the direct physical loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

(5) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(6) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(7) Cooperate with us in the investigation or settlement of the claim.

(8) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3. Limitation—Electronic Media And Records**

We will not pay for any loss of Business Income caused by direct physical loss of or damage to Electronic Media and Records after the longer of:

**a.** 60 consecutive days from the date of direct physical loss or damage; or

**b.** The period, beginning with the date of direct physical loss or damage, necessary to repair, rebuild or replace, with reasonable speed and similar quality, other property at the described premises due to loss or damage caused by the same occurrence.

Electronic Media and Records are:

(1) Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

(2) Data stored on such media; or

(3) Programming records used for electronic data processing or electronically controlled equipment.

This limitation does not apply to Extra Expense.

**Example No. 1:**

A Covered Cause of Loss damages a computer on June 1. It takes until September 1 to replace the computer, and until October 1 to restore the data that was lost when the damage occurred. We will only pay for the Business Income loss sustained during the period June 1—September 1. Loss during the period September 2—October 1 is not covered.

**Example No. 2:**

A Covered Cause of Loss results in the loss of data processing programming records on August 1. The records are replaced on October 15. We will only pay for the Business Income loss sustained during the period August 1—September 29 (60 consecutive days). Loss during the period September 30—October 15 is not covered.

**4. Loss Determination**

**a.** The amount of Business Income loss will be determined based on:

(1) The Net Income of the business before the direct physical loss or damage occurred;

(2) The likely Net Income of the business if no loss or damage occurred;

(3) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

(4) Other relevant sources of information, including:

(a) Your financial records and accounting procedures;

(b) Bills, invoices and other vouchers; and

(c) Deeds, liens or contracts.

**b.** The amount of Extra Expense will be determined based on:

(1) All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

(a) The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

(b) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

(2) All necessary expenses that reduce the Business Income loss that otherwise

would have been inc .d.

c. **Resumption Of Operations**

We will reduce the amount of your:

(1) Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

(2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

d. If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

5. **Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if:

a. You have complied with all of the terms of this Coverage Part; and

b. (1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

**E. ADDITIONAL CONDITION**

**Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any loss if the Limit of Insurance for Business Income is less than:

a. The Coinsurance percentage shown for Business Income in the Declarations; times

b. The sum of:

(1) The Net Income (Net Profit or Loss before income taxes), and

(2) All operating expenses, including payroll expenses,

that would have been earned (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Instead, we will determine the most we will pay using the following steps:

1. Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

2. Divide the Limit of Insurance for the described premises by the figure determined in step 1; and

3. Multiply the to mount of loss by the figure determined in step 2.

We will pay the amount determined in step 3. or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example No. 1** (Underinsurance):

When: The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been $400,000

The Coinsurance percentage is 50%

The Limit of Insurance is $150,000

The amount of loss is $ 80,000

Step 1: $400,000 x 50% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step 2: $150,000 ÷ $200,000 = .75

Step 3: $ 80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example No. 2** (Adequate Insurance):

When: The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been $400,000

The Coinsurance percentage is 50%

The Limit of Insurance is $200,000

The amount of loss is $ 80,000

Step 1: $400,000 x 50% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step 2: $200,000 ÷ $200,000 = 1.00

Step 3: $ 80,000 x 1.00 = $80,000

We will cover the $80,000 loss. No penalty applies.

This condition does not apply to the Extra Expense Additional Coverage.

**F. OPTIONAL COVERAGES**

If shown in the Declarations, the following Optional Coverages apply separately to each item.

1. **Maximum Period Of Indemnity**

a. The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

b. The most we will pay for loss of Business Income is the lesser of:

**(1)** The amount of loss sustained during the 120 days immediately following the direct physical loss or damage; or

**(2)** The Limit of Insurance shown in the Declarations.

**2. Monthly Limit Of Indemnity**

**a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

**b.** The most we will pay for loss of Business Income in each period of 30 consecutive days after the direct physical loss or damage is:

**(1)** The Limit of Insurance, multiplied by

**(2)** The fraction shown in the Declarations for this Optional Coverage.

**Example:**

When: The Limit of Insurance is $120,000

The fraction shown in the Declarations for this Optional Coverage is ¼

The most we will pay for loss in each period of 30 consecutive days is: $120,000 x ¼ = $30,000

If, in this example, the actual amount of loss is:

| | |
|---|---|
| Days 1-30 | $40,000 |
| Days 31-60 | 20,000 |
| Days 61-90 | 30,000 |
| | $90,000 |

We will pay:

| | |
|---|---|
| Days 1-30 | $30,000 |
| Days 31-60 | 20,000 |
| Days 61-90 | 30,000 |
| | $80,000 |

The remaining $10,000 is not covered.

**3. Agreed Value**

**a.** To activate this Optional Coverage:

**(1)** A Business Income Report/Work Sheet must be made a part of this policy and must show financial data for your "operations":

**(a)** During the 12 months prior to the date of the Work Sheet; and

**(b)** Estimated for the 12 months immediately following the inception of this Optional Coverage.

**(2)** An Agreed Value must be shown in the Declarations or on the Work Sheet. The Agreed Value should be at least equal to:

**(a)** The Coinsurance percentage shown in the Declarations; multiplied by

**(b)** The amount of Net Income and Operating Expenses for the following 12 months you report on the Work Sheet.

**b.** The Additional Condition, Coinsurance, is suspended until:

**(1)** 12 months after the effective date of this Optional Coverage; or

**(2)** The expiration date of this policy;

whichever occurs first.

**c.** We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

**(1)** Within 12 months of the effective date of this Optional Coverage; or

**(2)** When you request a change in your Business Income Limit of Insurance.

**d.** If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

**(1)** The Business Income Limit of Insurance; divided by

**(2)** The Agreed Value.

**Example:**

When: The Limit of Insurance is $100,000

The Agreed Value is $200,000

The amount of loss is $ 80,000

Step (a): $100,000 ÷ $200,000 = .50

Step (b): .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

**4. Extended Period Of Indemnity**

Under paragraph **A.3.d.**, Extended Business Income, the number "30" in subparagraph **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

**G. DEFINITIONS**

**1.** "Finished Stock" means stock you have manufactured.

"Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

"Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

**2.** "Operations" means:

**a.** Your business activities occurring at the described premises; and

**b.** The tenantability of the described premises, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

**3.** "Period of Restoration" means the period of time that:

**a.** Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.** Ends on the date when the property at the

described premises shou be repaired, rebuilt or replaced with reasonable speed and similar quality.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**4.** "Pollutants" means any solid, liquid, gaseous or thermal irrit or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**5.** "Rental Value" means the:

**a.** Total anticipated rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, and

**b.** Amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be your obligations, and

**c.** Fair rental value of any portion of the described premises which is occupied by you.

# Exhibit D

HARPER | HAYES PLLC
ONE UNION SQUARE
600 UNIVERSITY STREET
SUITE 2420
SEATTLE, WASHINGTON 98101

TODD C. HAYES, ESQ.
todd@harperhayes.com

April 28, 2016

**VIA FEDERAL EXPRESS[1]**
**SIGNATURE CONFIRMATION REQUIRED**

Attention: Claims Manager
Agricultural Insurance Company
**n/k/a** Great American Assurance Company
580 Walnut Street
Cincinnati, OH 45202

| **RE:** | **Insured:** | **Westridge Townhomes Owners Association** |
|---|---|---|
| | **Policy No.:** | **CPP 3991966, CPP 3995131 & CPP 5628683** |
| | **Policy Period:** | **08/04/1998-08/04/1999; 08/04/1999-08/04/2000 and 08/04/2000-08/04/2001** |

Dear Claims Manager:

I write on behalf of Westridge Townhomes Owners Association. The Association wishes to make a property damage claim. The Association requests that Agricultural Insurance Company commence a timely investigation; complete that investigation within 30 days, per WAC 284 - 30-370; and identify all coverage benefits available under all applicable policies. If you determine that your investigation cannot reasonably be completed within 30 days, we request that you (a) identify the date by which you can reasonably complete your investigation; and (b) execute the enclosed tolling agreement. Finally, please send us complete copies of all Agricultural Insurance Company policies that have insured Westridge at any time.

Very truly yours,

HARPER | HAYES PLLC

Todd C. Hayes

TCH:nap
Enclosure
c: Client
James Tungsvik

---

1 FedEx Tracking No. 7762 1548 0000

# TOLLING AGREEMENT

This Agreement is executed by and between the Westridge Townhomes Owners Association ("the Association") and Agricultural Insurance Company **n/k/a** Great American Assurance Company ("Agricultural").

## I. RECITALS

A.     On April 28, 2016, the Association submitted a claim to Agricultural, seeking compensation under insurance policies issued by Agricultural for alleged property damage at Westridge Townhomes, a Condominium, in Kent, Washington ("the Property").

B.     The parties wish to preserve all rights and potential claims against one another while allowing Agricultural additional time to investigate the Association's claim.

## II. AGREEMENT

NOW, THEREFORE, in consideration of the actions, forbearances, and mutual promises of the parties contained herein, the receipt and sufficiency of which are hereby acknowledged, the undersigned parties agree as follows:

**1.**     **Tolling**.  As of April 28, 2016 and continuing until termination of this Agreement pursuant to paragraph 9 below, all statutory and contractual limitations periods are tolled, such that any suit commenced by the Association within 14 days of notice of termination of this Agreement shall be deemed commenced as of April 28, 2016.

**2.**     **Reservation of Rights**.  The parties do not waive any claims, third-party claims, counterclaims, or cross-claims that they may have against any person or entity, nor shall anything in this Agreement constitute a waiver of any of the terms, conditions, provisions, limitations, exclusions, requirements, or endorsements of any insurance policies, except as specifically modified herein.  Any claims or defenses existing as of the effective date of this Agreement are preserved and neither party to this Agreement shall assert waiver or estoppel of any existing claim or defenses as of the effective date against the other.  Each party specifically continues to reserve all rights under the Policies.

**3.**     **Warranty of Capacity to Execute Agreement**.  The parties to this Agreement warrant that they have the right and authority to execute this Agreement.

**4.**     **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of Washington.  In any proceedings to enforce the terms of this Agreement, the prevailing party shall be entitled to its reasonable attorneys' fees, costs and expenses.

**5.**     **Binding Effect**.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and the respective legal representatives, predecessors,

successors or assigns. The parties also agree that the signature of a party's attorney binds the party.

**6.** **No Waiver**. Any failure by any party to enforce any of the provisions of this Agreement or to require at any time performance by any other party of any of the provisions hereof during the pendency of this Agreement shall in no way affect the validity of this Agreement, nor any part hereof, and shall not be deemed a waiver of the rights of any party hereafter to enforce any such provision.

**7.** **Free and Voluntary Agreement**. The parties hereto acknowledge that each understands the language and legal effect of this Agreement and knowingly enters into this Agreement freely and without coercion of any kind.

**8.** **Counterparts and Facsimile**. This Agreement may be executed in counterparts and shall be fully binding so long as original authorized signatures are obtained from the parties. A signed facsimile copy of this Agreement shall be recognized as an original.

**9.** **Termination**. Either party may terminate this Agreement upon 14 days' written notice of intent to terminate. Notice shall be made via electronic mail to:

For Agricultural: ____________________
____________________

For the Association: Todd C. Hayes
todd@harperhayes.com

Dated: _____________ Westridge Townhomes Owners Association

BY: ________________________________________
Todd C. Hayes
ITS: Attorney

Dated:_____________ Agricultural Insurance Company n/k/a Great American Assurance Company

BY: ________________________________________

ITS: ________________________________________

# Exhibit E

HARPER | HAYES PLLC
ONE UNION SQUARE
600 UNIVERSITY STREET
SUITE 2420
SEATTLE, WASHINGTON 98101

TODD C. HAYES, ESQ.
todd@harperhayes.com

April 28, 2016

**VIA FEDERAL EXPRESS[1]**
**SIGNATURE CONFIRMATION REQUIRED**

Attention: Claims Manager
Greenwich Insurance Company
1201 North Market Street, Suite 501
Wilmington, DE 19801

| **RE:** | **Insured:** | **Westridge Townhomes Owners Association** |
| --- | --- | --- |
| | **Policy No.:** | **ACG 3395131 and ACG 3328683** |
| | **Policy Period:** | **08/04/1999-08/04/2000 and 08/04/2000-08/04/2001** |

Dear Claims Manager:

I write on behalf of Westridge Townhomes Owners Association. The Association wishes to make a property damage claim. The Association requests that Greenwich Insurance Company commence a timely investigation; complete that investigation within thirty days, per WAC 284- 30-370; and identify all coverage benefits available under all applicable policies. If you determine that your investigation cannot reasonably be completed within thirty days, we request that you (a) identify the date by which you can reasonably complete your investigation; and (b) execute the enclosed tolling agreement. Finally, please send us complete copies of all Greenwich Insurance Company policies that have insured Westridge at any time.

Very truly yours,

HARPER | HAYES PLLC

Todd C. Hayes

TCH:nap
Enclosure
c: Client
James Tungsvik

[1] FedEx Tracking No. 7762 1562 7808

# TOLLING AGREEMENT

This Agreement is executed by and between the Westridge Townhomes Owners Association ("the Association") and Greenwich Insurance Company ("Greenwich").

## I. RECITALS

A. On April 28, 2016, the Association submitted a claim to Greenwich, seeking compensation under insurance policies issued by Greenwich for alleged property damage at Westridge Townhomes, a Condominium, in Kent, Washington ("the Property").

B. The parties wish to preserve all rights and potential claims against one another while allowing Greenwich additional time to investigate the Association's claim.

## II. AGREEMENT

NOW, THEREFORE, in consideration of the actions, forbearances, and mutual promises of the parties contained herein, the receipt and sufficiency of which are hereby acknowledged, the undersigned parties agree as follows:

**1.** **Tolling**. As of April 28, 2016 and continuing until termination of this Agreement pursuant to paragraph 9 below, all statutory and contractual limitations periods are tolled, such that any suit commenced by the Association within 14 days of notice of termination of this Agreement shall be deemed commenced as of April 28, 2016.

**2.** **Reservation of Rights**. The parties do not waive any claims, third-party claims, counterclaims, or cross-claims that they may have against any person or entity, nor shall anything in this Agreement constitute a waiver of any of the terms, conditions, provisions, limitations, exclusions, requirements, or endorsements of any insurance policies, except as specifically modified herein. Any claims or defenses existing as of the effective date of this Agreement are preserved and neither party to this Agreement shall assert waiver or estoppel of any existing claim or defenses as of the effective date against the other. Each party specifically continues to reserve all rights under the Policies.

**3.** **Warranty of Capacity to Execute Agreement**. The parties to this Agreement warrant that they have the right and authority to execute this Agreement.

**4.** **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of Washington. In any proceedings to enforce the terms of this Agreement, the prevailing party shall be entitled to its reasonable attorneys' fees, costs and expenses.

**5.** **Binding Effect**. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and the respective legal representatives, predecessors,

successors or assigns. The parties also agree that the signature of a party's attorney binds the party.

**6.** **No Waiver**. Any failure by any party to enforce any of the provisions of this Agreement or to require at any time performance by any other party of any of the provisions hereof during the pendency of this Agreement shall in no way affect the validity of this Agreement, nor any part hereof, and shall not be deemed a waiver of the rights of any party hereafter to enforce any such provision.

**7.** **Free and Voluntary Agreement**. The parties hereto acknowledge that each understands the language and legal effect of this Agreement and knowingly enters into this Agreement freely and without coercion of any kind.

**8.** **Counterparts and Facsimile**. This Agreement may be executed in counterparts and shall be fully binding so long as original authorized signatures are obtained from the parties. A signed facsimile copy of this Agreement shall be recognized as an original.

**9.** **Termination**. Either party may terminate this Agreement upon 14 days' written notice of intent to terminate. Notice shall be made via electronic mail to:

For Greenwich: ____________________
____________________

For the Association: Todd C. Hayes
todd@harperhayes.com

Dated: _____________ Westridge Townhomes Owners Association

BY: ________________________________________
Todd C. Hayes
ITS: Attorney

Dated:_____________ Greenwich Insurance Company

BY: ________________________________________

ITS: ________________________________________

# Exhibit F

**Nicole Plouf**

**From:** trackingupdates@fedex.com
**Sent:** Monday, May 02, 2016 5:53 AM
**To:** Nicole Plouf
**Subject:** FedEx Shipment 776215480000 Delivered

# Your package has been delivered

## Tracking # 776215480000

Ship date:
Thu, 4/28/2016

**VICTORIA L HEINDEL**
Harper Hayes PLLC
SEATTLE, WA 98101
US

Delivered

Delivery date:
Mon, 5/2/2016 8:49 am

**Claims Manager**
Agricultural Insurance Co
580 Walnut Street
CINCINNATI, OH 45202
US

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| **Tracking number:** | 776215480000 |
| **Status:** | Delivered: 05/02/2016 08:49 AM Signed for By: P.MAUCH |
| **Reference:** | 6045.0000 |
| **Signed for by:** | P.MAUCH |
| **Delivery location:** | CINCINNATI, OH |
| **Delivered to:** | Mailroom |
| **Service type:** | FedEx Express Saver |
| **Packaging type:** | FedEx Envelope |
| **Number of pieces:** | 1 |
| **Weight:** | 0.50 lb. |
| **Special handling/Services:** | Deliver Weekday |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 7:53 AM CDT on 05/02/2016.

To learn more about FedEx Express, please go to fedex.com.

All weights are estimated.


To track the latest status of your shipment, click on the tracking number above, or go to fedex.com.

This tracking update has been sent to you by FedEx at your request. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and terms of use, go to fedex.com.

Thank you for your business.

# Exhibit G

**Nicole Plouf**

**From:** trackingupdates@fedex.com
**Sent:** Wednesday, May 04, 2016 6:49 AM
**To:** Nicole Plouf
**Subject:** FedEx Shipment 776215637808 Delivered

# Your package has been delivered

## Tracking # 776215637808

Ship date:
Thu, 4/28/2016

**VICTORIA L HEINDEL**
Harper Hayes PLLC
SEATTLE, WA 98101
US

Delivered

Delivery date:
Wed, 5/4/2016 9:45 am

**Claims Manager**
Greenwich Insurance Company
1201 North Market Street Suite 501
WILMINGTON, DE 19801
US

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| **Tracking number:** | 776215637808 |
| **Status:** | Delivered: 05/04/2016 09:45 AM Signed for By: N.NICK |
| **Reference:** | 6045.0000 |
| **Signed for by:** | N.NICK |
| **Delivery location:** | WILMINGTON, DE |
| **Delivered to:** | Mailroom |
| **Service type:** | FedEx Express Saver |
| **Packaging type:** | FedEx Envelope |
| **Number of pieces:** | 1 |
| **Weight:** | 0.50 lb. |
| **Special handling/Services:** | Deliver Weekday |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 8:49 AM CDT on 05/04/2016.

To learn more about FedEx Express, please go to fedex.com.

All weights are estimated.


To track the latest status of your shipment, click on the tracking number above, or go to fedex.com.

This tracking update has been sent to you by FedEx at your request. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and terms of use, go to fedex.com.

Thank you for your business.