THE HONORABLE RICARDO S. MARTINEZ

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
### IN SEATTLE

WESTRIDGE TOWNHOMES
OWNERS ASSOCIATION,

        Plaintiff,

      v.

GREAT AMERICAN ASSURANCE
COMPANY, a foreign insurance company,
as successor to AGRICULTURAL
INSURANCE COMPANY; GREENWICH
INSURANCE COMPANY, a foreign
insurance company,

        Defendants.

No.  2:16-cv-01011 RSM

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

**NOTE ON MOTION CALENDAR:
SEPTEMBER 15, 2017**

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

## I.   INTRODUCTION & RELIEF REQUESTED

This is an insurance coverage dispute arising out of damage to the framing and sheathing[1] of the walls of a condominium. Plaintiff is an association of unit owners who live at the condominium. Defendants Great American and Greenwich sold the Association a series of "Difference in Conditions" property insurance policies, including the one at issue in this motion.[2] The Policy affords "all risk" coverage—*i.e.*, it covers any damage that it doesn't exclude: "This policy insures against all risks of direct physical loss or damage from any external cause except as hereinafter excluded . . . ."

The Policy doesn't exclude "faulty construction," "faulty maintenance," or "wet or dry rot." Those omitted exclusions are particularly significant because Defendants both sell other insurance policies that do exclude those perils. "In an all-risk insurance policy, any peril that is not specifically excluded in the policy is an insured peril." Churchill v. Factory Mut. Ins. Co., 234 F. Supp. 2d 1182, 1187 (W.D. Wash. 2002). Thus, because the Policy doesn't exclude "faulty construction," "faulty maintenance," or "wet or dry rot," the Association respectfully requests an order that Defendants' Policy covers those perils.

The Association also requests an order that the Policy is not subject to any temporal limitation. Other property insurance policies—including ones that Defendants sell—state that

---

[1]   "Sheathing" is the plywood or other similar material that is applied to the outer studs, joists, and other framing of a building to strengthen the structure and to serve as a base for the exterior siding.

[2]   *See Declaration of Todd Hayes, Ex. A* (policy number CPP3995131 and ACG3395131). The Policy has two policy numbers because Greenwich and Great American (as Agricultural Insurance Company's successor) underwrote it together, each issuing a separate policy number to represent their respective portions of the Policy's total limits. *See id.* at 3 ("The liability of each insurer on this contract with the insured is limited to the participation amount shown in the schedule below. . . .  This contract shall be construed as a separate contract between the insured and each of the insurers.").

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 1

CASE NO. 2:16-cv-01011 RSM

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

coverage applies only if damage "commences" or "occurs" during the policy period. The Association's Policy, by contrast, simply says it covers non-excluded property damage—with no reference to timing: "This policy insures against all risks of direct physical loss or damage . . . ." At least four courts applying Washington law have held that if a property insurance policy lacks an express temporal limitation, then the policy covers all non-excluded damage—regardless of when it occurs. *See, e.g.*, <u>Greenhouse Condo. Homeowners Ass'n v. Chubb Custom Ins. Co.</u>, Case No. C03-2941L (W.D. Wash. July 8, 2004) (APPENDIX A) (where policy "contain[ed] no temporal limitation on the scope of coverage," insurer was "jointly and severally liable for [insured's] entire loss" from covered damage). Accordingly, the Association respectfully requests an order that Defendants' Policy covers all non-excluded damage, regardless of whether it commenced or occurred during the policy term.

The Association also requests an order that to the extent Defendants contend other insurance policies cover the Association's loss, Defendants have the burden of proving that. Such an order is appropriate because the Policy's reference to other insurance coverage is in the "Perils Excluded" section, and the insurance company has the burden of proving the application of exclusions. *See* <u>Diamaco, Inc. v. Aetna Cas. & Sur. Co.</u>, 983 P.3d 707, 709 (Wash. Ct. App. 1999) ("[T]o avoid responsibility for the loss, the insurer must show that the loss is excluded by specific language in the policy.").

The Court should also rule that because the Policy lacks an "inverse efficient proximate cause" provision—*i.e.*, a clause that states an exclusion applies if an excluded peril simply "initiates a chain of events" that leads to the loss—a loss resulting from the combination of excluded and non-excluded perils will be covered. *See* <u>Greenlake Condo. v. Allstate</u>, 2015

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

WL 11988945, at *10 (W.D. Wash. 2015) (where policy lacked "inverse-efficient proximate cause" language, "[the jury] could . . . find that the damage was caused by a combination of [covered] rain and [excluded] inadequate construction (*which would permit coverage*)") (emphasis added).

Finally, the Association requests an order striking Defendants' "suit limitation clause" and "late notice" defenses. The Association satisfied the Policy's one-year limitation clause because it filed suit within six months of discovering "the occurrence which [gave] rise to the claim." That "occurrence" was the Association's receipt of a January 2016 inspection report that identified previously-hidden damage to the buildings' sheathing and framing. The late notice defense fails because Defendants have the burden of proving they suffered "actual and substantial prejudice" as a result of the allegedly late notice. S & K Motors, Inc. v. Harco Nat. Ins. Co., 213 P.3d 630, 636 (Wash. Ct. App. 2009). But if an insurer denies a claim on grounds it's excluded, then the notice date necessarily caused no prejudice—because the insurer would have denied the claim anyway. *See, e.g.*, Shell Oil Co. v. Winterthur Swiss Ins. Co., 15 Cal. Rptr. 2d 815, 846 (Cal. Ct. App. 1993) (rejecting late notice defense because "earlier notice would only result in earlier denial of coverage"). The late notice defense also fails because Defendants cannot identify any repairs that would not have been needed at an earlier date.

## II.  STATEMENT OF FACTS

### A.  THE POLICY DOESN'T EXCLUDE FAULTY CONSTRUCTION, FAULTY MAINTENANCE, OR WET OR DRY ROT

Plaintiff is an association of unit owners at Westridge Townhomes condominium in Kent, Washington. *Declaration of David Ross ¶ 3.* Defendants Great American and Greenwich

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 3

CASE NO. 2:16-cv-01011 RSM

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

sold the Association a series of "Difference in Conditions" property insurance policies, including the one at issue in this motion. *See Hayes Decl. Ex. A.*

The Policy's "insuring agreement" states that it covers any damage that it doesn't exclude: "This policy insures against all risks of direct physical loss or damage from any external cause except as hereinafter excluded . . . ." *Id* at 6. In a box labeled "Description, Perils and Locations of Insured," the Policy states that it insures against "direct physical loss or damage ***including*** earthquake and flood." *Id*. (emphasis added).

Consistent with the "gap-filling" nature of difference in conditions coverage,[3] the first exclusion states the Policy doesn't cover fire, lightning, "extended coverage perils" (*e.g.*, windstorm and hail[4]), or any peril that the Association's other property insurance *does* cover:

> This policy does not insure against:
>
> (A)(1) fire and lightning as set forth in a standard fire insurance policy, extended coverage perils, vandalism and malicious mischief and sprinkler leakage all as more fully defined and limited in the forms approved by the rating bureau having jurisdiction where the property is located; whether or not insurance for such perils is being maintained by the insured at the time of the loss and whether or not such loss or damage is directly or indirectly caused by or contributed to by a peril covered under this policy;
>
> (2) other perils as defined and limited, and ***to the extent insured*** under policies insuring against perils carried by the insured or under any other more specific insurance arranged for and in the name of the insured;

*Hayes Decl., Ex. A* at 8 (emphasis added).

---

[3] *See, e.g.*, <u>Siena Del Lago Condo. Ass'n v. Am. Fire & Cas. Co.</u>, No. C12-251 TSZ, 2013 WL 2127137, at *4 (W.D. Wash. May 14, 2013) (explaining difference in conditions policy "provides coverage for 'gaps' in the" underlying property policies).

[4] *See Hayes Decl., Ex. B* (International Risk Management Institute insurance glossary entry defining "extended coverage" as insuring "windstorm, hail, explosion (except of steam boilers), riot, civil commotion, aircraft, vehicles, and smoke").

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

The same year the Association purchased the "DIC" policy from Defendants, the Association also bought a basic property insurance policy from St. Paul Fire & Marine Insurance Company. *See Hayes Decl., Ex. C*. The St. Paul policy *doesn't* insure (because it excludes) "faulty . . . construction," "faulty . . . maintenance," and "wet or dry rot":

> We won't cover loss caused by faulty, inadequate or defective:
>
> - planning, zoning, development, surveying, siting;
> - design, specifications, workmanship, repair, ***construction***, renovation, remodeling, grading, compaction;
> - materials used in repair, construction, renovation or remodeling, or
> - ***maintenance***.
>     . . . .
>
> We won't cover loss caused or made worse by:
>
> - Wear and tear;
> - Deterioration, mold, ***wet or dry rot***, rust, or corrosion . . . .

*Id.* at 43, 45.

Defendants' Policy contains a similar list of excluded perils, but omits "faulty construction," "faulty maintenance," and "wet or dry rot":

> This policy does not insure against . . .
>     . . . .
>
> (D) loss or damage caused by or resulting from wear and tear, mechanical breakdown, derangement, inherent vice, latent defect, gradual deterioration, moth, vermin, rodents, termites or other insects including larvae or pupae thereof;
>     . . . .
>
> (O) errors in design, errors in processing, faulty workmanship or faulty materials . . . .

*Hayes Decl., Ex. A* at 8, 10.[5]

---

[5]   The Policy's "computer losses" coverage does exclude "maintenance": "We will not pay for . . . damage caused directly or indirectly by . . . ***maintenance*** . . . provided or done by you [to repair computer hardware]." *Id.* at 25 (emphasis added). The Policy also mentions "construction" (outside the "Perils Excluded" section):

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 5

CASE NO. 2:16-cv-01011 RSM

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

Other policies that Defendants sell do exclude these perils. For example, both Defendants sell property insurance with a "faulty maintenance-construction" exclusion that's materially identical to St. Paul's:

> We will not pay for loss or damage caused by . . .
>
> **c.** Faulty, inadequate or defective:
>
>> **(1)** Planning, zoning, development, surveying, siting;
>>
>> **(2)** Design, specifications, workmanship, repair, ***construction***, renovation, remodeling, grading, compaction;
>>
>> **(3)** Materials used in repair, construction, renovation or remodeling; or
>>
>> **(4)** ***Maintenance*** . . . .

*Hayes Decl., Ex. D* at 25-26; *Ex. E* at 39 (emphasis added). Both Defendants also sell policies with a "wet or dry rot" exclusion: "We will not pay for loss or damage caused directly or indirectly by . . . ***wet or dry rot*** . . . ." *Hayes Decl., Ex. D* at 23-24; *Ex. E* at 36-37.

## B.      THE POLICY HAS NO TEMPORAL LIMITATION

The Policy at issue in this motion has no temporal limitation—it simply states that Defendants insure against non-excluded damage: "This policy insures against all risks of direct physical loss or damage from any external cause except as hereinafter excluded . . . ." *Hayes Decl., Ex. A* at 6. Other property insurance policies that Defendants sell do contain a temporal limitation:

> We cover loss or damage commencing . . . [d]uring the policy period shown in the Declarations . . . .

---

"If a Covered Cause of Loss occurs to covered Building property, we will pay . . . [f]or loss or damage caused by enforcement of any law that [r]egulates the ***construction*** or repair of buildings . . . ." *Id.* at 23 (emphasis added).

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 6

CASE NO. 2:16-cv-01011 RSM

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

*Hayes Decl., Ex. D* at 21; *Ex. E* at 29. The earthquake coverage in the Association's Policy has a similar provision: "This company shall not be liable for any loss caused by any earthquake shock occurring before the effective date and time of this policy, nor for any loss occurring after the expiration date and time of this policy." *Hayes Decl., Ex. A* at 10. But nowhere does the Association's Policy state that non-earthquake damage must "commence" or "occur" during the policy period (or that Defendants aren't liable for non-earthquake damage occurring before or after the policy period).

## C.   DEFENDANTS DENY THE ASSOCIATION'S CLAIM

On April 28, 2016, the Association submitted a claim to Defendants. *Hayes Decl., Ex. F*. The Association sent the Great American notice to the address that Washington's Office of the Insurance Commissioner instructed the Association to use. *See Hayes Decl., Ex. G; Ex. H*. The Association sent the Greenwich notice to the "registered address" that Greenwich had given to the Office of the Insurance Commissioner. *See Hayes Decl., Ex. I*.

The Association's notice letter asked the insurers to investigate the Association's claim and, if the investigation would take longer than the 30 days prescribed by WAC 284-30-370,[6] to sign a tolling agreement that had been enclosed with the letter. *See Hayes Decl., Ex. F*. Neither insurer responded within 30 days. *Hayes Decl. ¶ 12*. They later claimed the Association sent its notice letters to the "wrong" addresses. *See Hayes Decl., Ex. J* at 2.

On June 13, 2016, the Association's counsel sent a follow-up letter stating that because the insurers hadn't substantively responded to the Association's claim or executed the tolling

---

[6]   "Every insurer shall complete investigation of a claim within thirty days after notification of claim, unless such investigation cannot reasonably be completed within such time."

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 7

CASE NO. 2:16-cv-01011 RSM

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

1  agreement, the Association intended to file a lawsuit. *See Hayes Decl., Ex. K*. On June 29,

2  2016—after Defendants' counsel refused to sign a tolling agreement—the Association filed

3  this lawsuit. *See Dkt. 1; see also Hayes Decl. ¶ 15.*

4        Soon after, Great American and Greenwich successfully moved to stay the lawsuit,

5  claiming they needed time to investigate the Association's claim. *See Dkt. 29.* The insurers

6  hired an engineer—James Perrault—who inspected the condominium. *See Hayes Decl., Ex. L.*

7  Mr. Perrault also reviewed photographs of areas where the Association's forensic architect,

8  Keith Soltner, had removed exterior siding to expose the underlying wall framing and

9  sheathing. *Id.* Mr. Perrault concluded that the framing and sheathing was damaged in places,

10 and that the damage was the result of faulty construction and faulty maintenance. *See id.* at 14

11 ("[T]he conditions observed that have led to water intrusion occurring are all the result of the

12 inadequate and faulty construction of the buildings and/or the failure to maintain the

13 buildings . . . .").

14       On April 12, 2017, Great American and Greenwich denied the Association's claim.

15 *See Hayes Decl., Ex. J.* The denial letter alleged, among other things, that the Association had

16 failed to comply with the Policy's one-year "suit limitation clause": "No suit . . . under this

17 policy shall be sustainable in any court of law or equity unless the same be commenced within

18 twelve (12) months next after discovery by the Insured of the occurrence which gives rise to

19 the claim." *Id.* at 27. The event that gave rise to the Association's insurance claim was its

20 receipt of a January 2016 report from Mr. Soltner, which described the framing and sheathing

21 damage that had previously been hidden behind the condominium's exterior siding. *Ross Decl.*

22 *¶ 5.* The Association received the report in late January 2016—less than six months before

23

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 8

CASE NO. 2:16-cv-01011 RSM

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

filing this lawsuit in June 2016. *See id.; Dkt. 1.* The denial letter also alleged the Association

failed to give Defendants timely notice. *See Hayes Decl., Ex. J* at 26.

### III. <u>STATEMENT OF ISSUES</u>

The issues are (1) whether the Policy doesn't exclude, and therefore covers, "faulty

construction," "faulty maintenance," and "wet or dry rot"; (2) whether the Policy covers non-

excluded damage regardless of when that damage occurs; (3) whether Defendants have the

burden of proving that other insurance covers the Association's loss; (4) whether damage

resulting from the combination of excluded and non-excluded perils will be covered; and

(5) whether the Court should strike Defendants' suit limitation clause and late notice defenses.

### IV. <u>EVIDENCE RELIED UPON</u>

This motion is based on the pleadings and other papers previously filed in this lawsuit,

together with the declarations of Todd Hayes and David Ross.

### V. <u>ARGUMENT</u>

**A.    SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if there is no genuine issue as to any material fact

and the moving party is entitled to judgment as a matter of law. *See* FRCP 56(c). While

evidence must be construed in favor of the non-movant, summary judgment is nevertheless

appropriate if no rational fact finder could decide for the nonmoving party. <u>Maynard v. Ferno-

Washington, Inc.</u>, 22 F. Supp. 2d 1171, 1180 (E.D. Wash. 1998).

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

**B.    WASHINGTON'S[7] RULES OF INSURANCE POLICY INTERPRETATION**

"Insurance policy interpretation is a question of law." Indian Harbor Ins. Co. v. Transform LLC, 2010 WL 3584412, at *3 (W.D. Wash. 2010). An insurance policy should receive a fair, reasonable, and sensible construction, "as would be given to the contract by the average person purchasing insurance." Roller v. Stonewall Ins. Co., 801 P.2d 207, 209 (Wash. 1990). Undefined policy terms are to be given their "'plain, ordinary, and popular' meaning." Boeing Co. v. Aetna Cas. & Sur. Co., 784 P.2d 507, 511 (Wash. 1990).

If policy language is unambiguous, a court must enforce it as written. Weyerhaeuser Co. v. Commercial Union Ins. Co., 15 P.3d 115, 122 (Wash. 2000). But if policy language is susceptible to more than one reasonable interpretation, then ambiguity exists and the court must apply the interpretation that most favors the insured. The Insurers Ins. Co. v. Peasley, 932 P.2d 1244, 1246 (Wash. 1997). This rule applies "with added force" if the ambiguity is in an exclusion or other coverage-limiting provision. Queen City Farms, Inc. v. Aetna Casualty & Surety Co., 882 P.2d 703, 721 (Wash. 1994). "It is the burden of the insurer to draft an exclusion in clear and unequivocal terms." Lynott v. Nat'l Union Fire Ins. Co., 871 P.2d 146, 154 (Wash. 1994).  In that sense, courts do not construe insurance policies the way the insurer *could have* written it, but didn't:

> [T]he *contra proferentem* rule is followed in all fifty states and the District of Columbia, and with good reason.  Insurance policies are almost always drafted by specialists employed by the insurer.  In light of the drafters' expertise and experience, the insurer should be expected to set forth any limitations on its liability clearly enough for a common layperson to understand; if it fails to do

---

[7]    This is a diversity action involving insurance coverage for a property in Washington, so Washington substantive law applies. *See, e.g.*, Sirius America Ins. Co. v. Young's Capital Co., LLC, C05-338JLR, 2005 WL 1287965, at *2 (W.D. Wash. 2005).

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

1    this, it should not be allowed to take advantage of the very ambiguities that it
     could have prevented with greater diligence.

2    Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534, 540 (9th Cir. 1990).

3
     C.      **THE POLICY DOESN'T EXCLUDE, AND THEREFORE COVERS, FAULTY**
4            **CONSTRUCTION, FAULTY MAINTENANCE, AND WET OR DRY ROT**

5            Defendants' Policy affords "all risk" coverage: "This policy insures against all risks of

6    direct physical loss or damage from any external cause except as hereinafter excluded . . . ."

7    *Hayes Decl., Ex. A* at 6. "An 'all-risk' policy covers any peril that is not specifically excluded

8    in the policy." Northwest Bedding Co. v. Nat'l Fire Ins. Co. of Hartford, P.3d 484, 487 (Wash.

9    Ct. App. 2010); *see also* Findlay v. United Pac. Ins. Co., 917 P.2d 116, 121 (1996) ("[A]ny

10   peril *that is not specifically excluded* in the policy is an insured peril."). Because an all-risk

11   policy covers anything it doesn't exclude, the insurer assumes more risk than when it issues a

12   so-called "specific perils" policy. *See* Vision One, LLC v. Philadelphia Indem. Ins. Co., 276

13   P.3d 300, 306 (Wash. 2012) ("All-risk policies generally allocate risk to the insurer, while

14   specific peril policies place more risk on the insured.").

15           Here, the Policy doesn't exclude—and therefore covers—"faulty construction,"

16   "faulty maintenance," or "wet or dry rot." The Policy does exclude faulty "workmanship," but

17   "'workmanship' must mean something distinct from 'construction' . . . or else it would be

18   superfluous." City of Oak Harbor v. St. Paul Mercury Ins. Co., 159 P.3d 422, 425 (Wash. Ct.

19   App. 2007). The omission of these exclusions is particularly significant because Great

20   American and Greenwich both sell other policies that exclude "faulty construction," "faulty

21   maintenance," and "wet or dry rot": "We will not pay for loss or damage [caused by] . . . wet

22   or dry rot . . . [or] [f]aulty, inadequate or defective . . . construction [or] maintenance." *Hayes*

23

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

*Decl., Ex. D* at 23-26; *Ex. E* at 36-39. The fact that Defendants could have used this same exclusionary language in the Association's policy is something this Court should construe against them: "In evaluating the insurer's claim as to meaning of language used, courts necessarily consider whether alternative or more precise language, if used, would have put the matter beyond question." Lynott, 871 P.2d at 151.

**D.      THE POLICY COVERS NON-EXCLUDED DAMAGE REGARDLESS OF WHEN THE DAMAGE OCCURS**

The Policy's property damage coverage has no temporal limitation; it simply states that if loss or damage results from a non-excluded peril, then Great American and Greenwich insure that loss or damage: "This policy insures against all risks of direct physical loss or damage from any external cause except as hereinafter excluded . . . ." *Hayes Decl., Ex. A* at 6. Thus, the Court should rule the Policy covers all non-excluded damage regardless of when that damage occurs.

Two other points support this plain-language reading.

First, the earthquake coverage in the Association's policy does have a temporal limitation: "This Company shall not be liable for any loss caused by any earthquake shock occurring before the effective date and time of this policy, nor for any loss occurring after the expiration date and time of this policy." *Hayes Decl., Ex. A* at 10. Likewise, both Defendants sell other property insurance policies that contain a temporal limitation: "We cover loss or damage commencing. . . [d]uring the policy period." *Hayes Decl., Ex. D* at 21; *Ex. E* at 29. According to Lynott, Defendants' failure to include this same language in the Association's non-earthquake coverage is something the Court should construe against them.

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

<u>Second</u>, courts applying Washington law have repeatedly held that if an insurer does not expressly state that its policy covers damage that occurs or commences during a particular policy period, then the insurer is jointly and severally liable for the entirety of an ongoing loss. In <u>Greenhouse Condo. Homeowners Ass'n v. Chubb Custom Ins. Co.</u>, Case No. C03-2941L (W.D. Wash. July 8, 2004) (APPENDIX A), a condominium association sued its insurer (Chubb) over ongoing damage to the condominium building. Like here, Chubb's policy said it covered non-excluded damage, but didn't say the damage had to occur or commence during the policy period.[8] Also like here, another part of the Chubb policy contained a temporal limitation.[9]

Noting these distinctions, Judge Lasnik ruled that Chubb was jointly and severally liable for all covered damage, regardless of whether it occurred during the policy period:

> The language of the Policy contains no temporal limitation on the scope of coverage. A court may "not add language to the policy that the insurer did not include." Because the Policy does not limit liability to damages incurred during the coverage period, the Court finds that if Greenhouse's loss is covered by the Policy and not excluded, Chubb is jointly and severally liable for that entire loss.

APPENDIX A at 7 (citations omitted).

Judge Coughenour issued a similar order in <u>Windsong Condominium Ass'n v. Bankers Standard Insurance Co.</u>, Case No. C08-0162-JCC (W.D. Wash. Dec. 12, 2008) (attached as APPENDIX B):

> If the insurer intends to be liable solely on a pro rata basis, such that it is only liable for the amount of damages commensurate with the damage that occurred during the insured years, the insurer must include that language in its

---

[8]  *See* APPENDIX A at 4 ("The Policy . . . provides that Chubb 'will pay for direct physical loss or damage . . . except as stated in Limitations or Exclusions. . . .  [T]he Policy does not limit liability to damages incurred during the coverage period . . . .").

[9]  *See* APPENDIX A at 4 ("In contrast, the liability insurance portion of the Policy expressly limits the scope of coverage to damage occurring during the policy period . . . .").

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

policy.  The Court finds no authority distinguishing between first-party property insurance and third-party liability insurance coverage with respect to this principle.

APPENDIX B at 11. Judge Zilly and Judge Rothstein recently followed suit.[10] Because these decisions comport with Washington law, the Association respectfully requests an order that Defendants' Policy insures all covered damage, regardless of whether the damage occurred or commenced during the policy period.

**E.  GREAT AMERICAN AND GREENWICH HAVE THE BURDEN OF PROVING DAMAGE IS COVERED UNDER OTHER INSURANCE**

Although "DIC" policies typically cover certain enumerated perils (*e.g.*, earthquake, flood), they also provide so-called "gap" coverage—*i.e.*, coverage for damage that the underlying property insurance doesn't cover. *See, e.g.*, Siena Del Lago, 2013 WL 2127137, at *4 (DIC policy "provides coverage for 'gaps' in the" underlying property policies); Sherwin-Williams Co. v. Ins. Co. of Pennsylvania, 105 F.3d 258, 259 (6th Cir. 1997) (DIC policies typically provide coverage "to the extent that a loss is not covered by or exceeds the limits of the primary [property] insurance"). Consistent with that, the first exclusion in Defendants' Policy bars coverage for anything that a standard fire insurance policy would insure, or that the Association's other property insurance actually does insure. *See Hayes Decl., Ex. A* at 8 ("This policy does not insure against . . . fire and lightning as set forth in a standard fire insurance policy, extended coverage perils [or] other perils . . . to the extent insured under policies insuring against perils carried by the insured . . . .").

---

[10] *See* Siena Del Lago, 2013 WL 2127137, at *4 n.9 ("Because the Mt. Hawley Policy does not contain a commencing condition, Mt. Hawley would be required to cover any non-excluded damage commencing prior to the Policy period."); Greenlake, 2015 WL 11988945, at *12 (because policy contained "no temporal restrictions," insurers who "provide insurance during the period in which there is damage are jointly and severally liable for the total damage").

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 14

CASE NO. 2:16-cv-01011 RSM

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

1       Under Washington law, determining coverage "is a two-step process." <u>Diamaco</u>, 983

2   P.3d at 709. "The insured must first establish that the loss falls within the 'scope of the policy's

3   insured losses.' Then, to avoid responsibility for the loss, ***the insurer must show that the loss***

4   ***is excluded*** by specific language in the policy." <u>Id.</u> (citations omitted, emphasis added). Thus,

5   the insurance company has the burden of proving that an exclusion applies. *See also* <u>Findlay</u>

6   <u>v. United Pacific Ins. Co.</u>, 917 P.2d 116, 120, (Wash. 1996) ("[B]ecause the structure of an

7   all-risk . . . policy consists of a grant of coverage counterbalanced by coverage exclusions, an

8   interpretation of provisions contained in such a policy must acknowledge this structure . . . .").

9   Accordingly, to the extent Defendants contend their Policy doesn't cover the Association's

10  loss because another policy covers it, Defendants should have the burden of proving that.

11  **F.      DAMAGE CAUSED BY A COMBINATION OF EXCLUDED AND NON-
         EXCLUDED PERILS IS COVERED**

12

13      Washington's courts have adopted the so-called "efficient proximate cause rule": "The

14  efficient proximate cause rule states that where a peril specifically insured against sets other

15  causes into motion which, in an unbroken sequence, produce the result for which recovery is

16  sought, the loss is covered, even though other events within the chain of causation are excluded

17  from coverage." <u>McDonald v. State Farm Fire and Cas. Co.</u>, 837 P.2d 1000, 1004 (Wash.

18  1992). Thus, regardless of what a policy's causation language says, "where an insured risk

19  itself sets into operation a chain of causation in which the last step may have been an excepted

20  risk, the excepted risk will not defeat recovery." <u>Villella v. Public Employees Mut. Ins. Co.</u>,

21  725 P.2d 957, 962 (Wash. 1986); *see also* <u>Safeco Ins. Co. of Am. v. Hirschmann</u>, 773 P.2d

22  413, 416 (Wash. 1989) (policy language cannot circumvent efficient proximate cause rule).

23

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

But as the Washington Supreme Court recently explained in <u>Vision One</u>, 276 P.3d 300, the efficient proximate cause rule doesn't operate in reverse:  if an *excluded* peril initiates a chain of causation that includes covered perils, the loss will be excluded only if the policy expressly says so—*i.e.*, the *common law* will not deem the excluded peril to be the cause of the loss:

> [T]he efficient proximate cause rule operates as an interpretive tool to establish coverage when a covered peril "sets other causes into motion which, in an unbroken sequence, produce the result for which recovery is sought."
>
> The opposite proposition, however, is not a rule of law. When an *excluded peril* sets in motion a causal chain that includes covered perils, the efficient proximate cause rule does *not* mandate exclusion of the loss. We explained in [<u>Key Tronic Corp. v. Aetna (CIGNA) Fire Underwriters Ins. Co.</u>, 881 P.2d 201, 206 (Wash. 1994)]:
>
> > The insurer here reasons that the converse of this rule should apply, *i.e.,* where an excluded risk sets in motion a causal chain, coverage should be precluded as to all the causal events in the chain. As Key Tronic aptly points out, however, the efficient proximate cause rule operates in favor of coverage. A converse rule would, of course, operate in favor of no coverage. Other than maintaining that the efficient proximate cause rule should apply to excluded acts which are the efficient proximate cause, and that it is "settled law", the insurer offers no other reasoning why the rule should be applied to preclude coverage. Because policies should normally be construed in favor of coverage, because there is no settled law favoring this argument, contrary to the insurer's claim, and because the insurer does not offer any further justification or authority supporting such a rule, we decline to adopt the rule urged by the insurer.
>
> *Id.*
>
> We have left open the possibility that an insurer may draft policy language to deny coverage when an excluded peril initiates an unbroken causal chain. But a policy provision is not the same as a controlling rule of insurance contract interpretation. . . .

<u>Vision One</u>, 276 P.3d at 309 (citations omitted).

In <u>Vision One</u>, the policy effectively lacked the kind of language the Court said insurers could draft—so-called "inverse efficient proximate cause" language—because the

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

insurer failed to cite it in the denial letter (the policy stated a loss would be deemed caused by an excluded peril if it either "directly and solely" caused the loss or it "[i]nitiate[d] a sequence of events that results in loss or damage," but the trial court ruled the insurer was estopped from using the latter definition).[11] The Vision One court held that because the policy in effect lacked a provision to "deny coverage when an excluded peril initiates an unbroken causal chain," and because the efficient proximate cause rule does not operate to exclude coverage in that situation, a loss that resulted from a combination of excluded and non-excluded perils would be covered. See Vision One, 276 P.3d at 310 (affirming trial court instruction stating, "If it is found that the loss was caused by one or more non-excluded event(s) in combination with one or more excluded event(s); the loss is covered").

Judge Rothstein recently applied the Vision One holding in Greenlake, 2015 WL 11988945. The policy in that case excluded damage "caused by" inadequate construction. The policy didn't exclude (and therefore covered) "rain." In an order addressing what the policy covered, Judge Rothstein explained that because the "EPC" rule operates only in favor of coverage, an insurer must "include an inverse EPC-rule provision" if it intends to exclude a loss where an excluded peril sets in motion a causal chain that leads to a covered peril:

> [T]he EPC rule operates only in favor of coverage. "When an *excluded peril* sets in motion a causal chain that includes covered perils, the efficient proximate cause rule does *not* mandate exclusion of the loss."
>
> Accordingly, should an insurer wish to exclude otherwise-covered losses that result from a causal chain set into motion by an excluded peril (*i.e.*, include an inverse EPC-rule provision) the insurer must include specific language in the policy to this effect. *Id.* The *Vision One* court provided an example of what such inverse EPC language might look like. The court stated

---

[11]  *See* Vision One, 276 P.3d at 310 ("Philadelphia is precluded from arguing the second prong of causation, *i.e.*, that defective design may have initiated a sequence of events resulting in loss or damage.").

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

that language that excluded all damage when a particular excluded peril "[i]nitiates a sequence of events that results in loss or damage" might be sufficient to "permit the sort of inverse efficient proximate cause" rule that is not mandated by case law.

Greenlake, 2015 WL 11988945, at *10.

Judge Rothstein then concluded that because the faulty construction exclusion did not include this kind of inverse-EPC language (*i.e.*, it merely said "caused by," as opposed to "[i]nitiates a sequence of events that results in loss or damage"), then if the jury decided the loss resulted from the combination of (non-excluded) rain and (excluded) inadequate construction, the loss would be covered:

> [The jury] could . . . find that the damage was caused by a combination of [covered] rain and [excluded] inadequate construction (***which would permit coverage***) . . . .

Greenlake, 2015 WL 11988945, at *10 (emphasis added). She then denied the policyholder's summary judgment motion on grounds the jury could still decide the loss resulted solely from excluded perils (*e.g.*, excluded faulty construction leading to excluded "decay").  In doing so, however, she explained that if the jury decided a covered peril even contributed to the loss, then because of the missing inverse-EPC language, "the loss would be covered":

> [T]o reach this outcome [a finding of no-coverage], the jury would also have to find that the damage in this case was solely an excluded loss, such as deterioration, rot, and mold, and not a combination of an excluded loss and a covered loss such as 'water damage' or 'hidden decay' leading to collapse.  *If the jury finds concurrent sources of damage, this loss would be covered by the policy* . . . ."

Greenlake, 2015 WL 11988945, at *11, n.11 (emphasis added).

Here, as in Vision One and Greenlake, the Policy lacks inverse-EPC language—it simply states, "This policy does not insure against . . . ."  The Policy doesn't state that a loss

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

1   will be excluded if an excluded peril "[i]nitiates a sequence of events that results in loss or

2   damage." That omission is particularly significant because, once again, both Defendants sell

3   other property insurance policies that do contain that language:

4         We will not pay for loss or damage caused by any of the excluded events
          described below. Loss or damage will be considered to have been caused by an
5         excluded event if the occurrence of that event:

6         a.   directly and solely results in loss or damage; or

7         b.   initiates a sequence of events that results in loss or damage, regardless of
               the nature of any intermediate or final event in that sequence.

8   *Hayes Decl., Ex. E* at 13; *Ex. M* at 2. Thus, because Defendants did not in this case "draft

9   policy language to deny coverage when an excluded peril initiates an unbroken causal chain,"

10  <u>Vision One</u>, 276 P.3d at 309, if the jury finds the damage to the Association's condominium

11  resulted from a combination of excluded and covered perils, the damage should be covered.

12  **G.   THE COURT SHOULD STRIKE DEFENDANTS' SUIT LIMITATION
         CLAUSE DEFENSE**

13        The suit limitation clause in this case states the Association had to file a lawsuit against

14  Defendants within one year of the date the Association discovered "the occurrence which gives

15  rise to the claim." *Hayes Decl., Ex. A* at 12 (requiring suit "within twelve (12) months next

16  after discovery by the Insured of ***the <u>occurrence</u> which [gave] rise to the claim***.") (emphasis

17  added). Although the Policy doesn't define "occurrence," the dictionary says that word means

18  "something that takes place." *See Hayes Decl., Ex. N*. Here, the "something that took place"

19  which gave rise to the claim was the Association's January 2016 receipt of the Soltner report,

20  stating previously-hidden sheathing and framing was damaged and needed replacement.

21        This interpretation is particularly reasonable because other insurance policies run the

22  limitation period from the date that *damage* occurred. *See, e.g.*, <u>Equity Funding LLC v. Illinois</u>

23

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

Union Ins. Co., 2013 WL 1012396, at *1 (W.D. Wash. 2013) (requiring suit "within 2 years after the date on which the direct physical loss or **_damage_** occurred") (emphasis added). Great American and Greenwich themselves issue policies with that kind of damage-referencing limitation clause. *See Hayes Decl., Ex. D* at 21; *Ex. E* at 29 (requiring suit "within 2 years after the date on which the direct physical loss or **_damage_** occurred") (emphasis added). If Defendants intended the suit limitation clause in the Association's policy to run from the date that *damage* occurred—as opposed to the date of the "occurrence" that made the Association decide to file an insurance claim—they could have used this alternative suit limitation clause language.

## H.    THE COURT SHOULD STRIKE DEFENDANTS' "LATE NOTICE" DEFENSE

A "late notice" defense requires the insurer to prove it suffered "actual and substantial prejudice" as a result of the late notice. *See, e.g.*, S & K Motors, Inc. v. Harco Nat. Ins. Co., 213 P.3d 630, 636 (Wash. Ct. App. 2009) (explaining insurer "must perform under its insurance contract unless it can show actual and substantial prejudice due to the late notice"). The insurer has the burden of proof, which must demonstrate "an advantage lost or disadvantage suffered as a result of the delay." Canron, Inc. v. Fed. Ins. Co., 918 P.2d 937, 943 (Wash. Ct. App. 1996). Courts "reject speculation, and require evidence of concrete detriment resulting from delay, together with some specific harm to the insurer caused thereby." Canron, 918 P.2d at 941.

Defendants cannot sustain this burden of proof for several reasons.

First, they cannot prove the Association knew of the **_damage_** at issue here any earlier than when the Association gave Defendants notice. This is significant because the Policy

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 20

CASE NO. 2:16-cv-01011 RSM

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

requires the policyholder to give notice of "loss or damage"[12]—not notice of leaks or building conditions that might lead to damage. The Association had earlier building inspections, but it was not until Mr. Soltner opened up the walls that the Association actually knew about the previously-hidden damage that is the subject of this lawsuit. *See Ross Decl. ¶ 6; see also* <u>Olds-Olympic, Inc. v. Commercial Union Ins. Co.</u>, 918 P.2d 923, 931 (Wash. 1996) (dismissing late notice defense where insured gave notice as soon as practicable after actual knowledge of the loss, "even though the events producing the loss occurred much earlier").

Also, Defendants denied the Association's claim because they contend it isn't covered. *See Hayes Decl., Ex. J.* Thus, no matter when the Association gave notice, Defendants still wouldn't have paid, and nothing would have changed:

> Q. It's your position that the kind of damage that's out there is excluded by the policy, right?
>
> A. That is correct.
>
> Q. Had they given notice earlier, do you think that would have changed your position on whether the kind of damage was excluded or not?
>
> A. I don't think that the position would have changed.

*Hayes Decl., Ex. O* at 3-4. In other words, the notice date couldn't have prejudiced Defendants because they weren't going to pay on coverage grounds anyway. *See* <u>Shell Oil Co. v. Winterthur Swiss Ins. Co.</u>, 15 Cal. Rptr. 2d 815, 846 (Cal. Ct. App. 1993) (no late notice defense where insurer denied claim was covered because "earlier notice would only result in earlier denial of coverage").

---

[12]   *See Hayes Decl., Ex. A* at 4 ("The Insured shall as soon as practicable report to this Company or its agent every loss or damage which may become a claim under this policy.").

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 21

CASE NO. 2:16-cv-01011 RSM

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

Finally, Defendants cannot establish any "specific harm" because they cannot prove the damage to the condominium—or the resulting repairs—would have been different had the Association given notice earlier. For example, Defendants claim the Association should have given notice when it received a "Visual Condition Assessment Study" back in 2012. *See Hayes Decl., Ex. L* at 13. But when Mr. Perrault was asked during his deposition if the condominium would have needed less repairs back in 2012, he conceded he didn't know:

> Q. So there is a certain amount of framing and sheathing that needs to be replaced now because it's damaged, correct?
>
> A. Correct.
>
> Q. Are you aware of any of that damage that needs to be replaced now that you don't think needed to be replaced back in February of 2012?
>
> A. What was discovered in Soltner's investigation I think probably needed— was rotted also in 2012—
>
> Q. Okay. So—
>
> A. —and needed to be replaced.
>
> Q. So similar question, you're not aware of any repairs that need to be done now that wouldn't have also needed to be done back in February of 2012?
>
> A. Yeah, I don't, yeah.

*Hayes Decl., Ex. P* at 3.

Churchill v. Factory Mut. Ins. Co., 234 F. Supp. 2d 1182 (W.D. Wash. 2002), is instructive. In that case, the policyholder filed a claim for damage several months after becoming aware of it. The insurer asserted a late notice defense, claiming the property wouldn't have been as damaged if the policyholder had addressed it earlier. Judge Zilly ruled that such an assertion was "insufficient to support a showing of prejudice":

> Defendant's reliance on the Declaration of Brian Daly, docket no. 61, is insufficient evidence to support a showing of prejudice to FM. At most, Mr. Daly states that in his opinion, if repair work had been done earlier to correct the causes of the water intrusion, deterioration and fungal growth could have

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

1    been precluded or significantly reduced. Id. ¶ 8. Accordingly, Defendant's late
2    notice defense in paragraph 74 of its Answer should be dismissed.

3    Churchill, 234 F. Supp. 2d at 1190. This Court should similarly dismiss Defendants' late notice
     defense.

4

5                            VI.  **CONCLUSION**

6            The Association respectfully requests an order that (1) the Policy doesn't exclude, and

7    therefore covers, "faulty construction," "faulty maintenance," and "wet or dry rot"; (2) the

8    Policy covers non-excluded property damage regardless of when the damage occurred;

9    (3) Defendants have the burden of proving that other insurance applies; (4) if the jury decides

10   that damage resulted from the combination of excluded and non-excluded perils, then the

11   damage will be covered; and (5) Defendants' suit limitation clause and late notice defenses

12   are stricken.

13           DATED this 24th day of August 2017.

14                            HARPER | HAYES PLLC

15

16                            By: s/ *Todd C. Hayes*
                              Todd C. Hayes, WSBA No. 26361
17                            600 University Street, Suite 2420
                              Seattle, WA  98101
18                            **Tel**.   206.340.8010
                              **Fax**.  206.260.2852
19                            **Email**: todd@harperhayes.com
                              Attorneys for Plaintiff

20

21

22

23

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852

# CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury under the laws of the United States that on the below date I served this document on the following parties and counsel of record in the manner indicated:

| | |
|---|---|
| **Attorneys for Great American Assurance Company and Greenwich Insurance Company** | **Attorneys for Great American Assurance Company and Greenwich Insurance Company** |
| Daniel R. Bentson<br>Owen R. Mooney<br>Bullivant Houser Bailey PC<br>1700 Seventh Avenue, Suite 1810<br>Seattle, WA  98101 | Douglas G. Houser<br>Bullivant Houser Bailey PC<br>888 SW Fifth Avenue, Suite 300<br>Portland, OR  97204 |
| ☒  Via USDC CM-ECF system<br>☐  Via U.S. Mail<br>☐  Via Messenger<br>☐  Via email: dan.bentson@bullivant.com<br>☐  Via email: owen.mooney@bullivant.com | ☒  Via USDC CM-ECF system<br>☐  Via U.S. Mail<br>☐  Via Messenger<br>☐  Via email: doug.houser@bullivant.com |
| **Attorneys for Greenwich Insurance Company (Admitted Pro Hac Vice)** | **Attorneys for Great American Assurance Company** |
| Kevin F. Buckley<br>Mound, Cotton, Wollan & Greengrass, LLP<br>One New York Plaza, 44th Floor<br>New York, NY  10004 | Joseph D. Hampton<br>Betts Patterson Mines PS<br>701 Pike Street, Suite 1400<br>Seattle, WA  98101 |
| ☒  Via USDC CM-ECF system<br>☐  Via U.S. Mail<br>☐  Via Messenger<br>☐  Via email: kbuckley@moundcotton.com | ☒  Via USDC CM-ECF system<br>☐  Via U.S. Mail<br>☐  Via Messenger<br>☐  Via email: jhampton@bpmlaw.com |

DATED *August 24, 2017* in Seattle, Washington.

Grace Kimm

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 24

CASE NO. 2:16-cv-01011 RSM

**HARPER | HAYES PLLC**
One Union Square
600 University Street, Suite 2420
Seattle, Washington 98101
Telephone: 206-340-8010
Facsimile: 206-260-2852